## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| EARTH FARE, INC., *et al.*,[1] | Case No. 20-10256 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket No. 14** |

## INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (II) MODIFYING AUTOMATIC STAY; AND (III) SCHEDULING A FINAL HEARING

This matter coming before this Court on the *Debtors' Motion for Interim and Final Orders (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection, (C) Scheduling a Final Hearing Pursuant To Bankruptcy Rule 4001(b), and (D) Granting Related Relief* (the "**Motion**")[2] at an interim hearing on February 6, 2020 (the "**Interim Hearing**"), the Court has reviewed the Motion and the *Declaration of Charles Goad In Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**").  The Motion requests entry of this order (the "**Interim Order**"):

(a)    authorizing the Debtors' use of Cash Collateral (as defined below) and granting adequate protection to the Prepetition Revolving Loan Lenders (each as defined below) in respect of their asserted rights under the Secured Credit Documents, as applicable (each as defined below), and their asserted interests in the Collateral pursuant to Bankruptcy Code sections 105, 361, 362

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084).  The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

and 363 with respect to any diminution in value of such rights and interests on and after the Petition Date (as defined below);

(b)        modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(c)        scheduling a final hearing (the "**Final Hearing**") pursuant to Bankruptcy Rule 4001(b)(2) to be held before this Court to consider entry of an order authorizing and granting the relief requested in the Motion on a final basis (such order, in form and substance acceptable to the Prepetition Revolving Loan Lenders, the "**Final Order**");

(d)        waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

(e)        subject to entry of the Final Order, except to the extent of the Carve-Out and the Consultant Carve-Out (defined below) (solely to the extent expressly set forth herein), the waiver by the Debtors of any right to surcharge against or recover from the Prepetition Revolving Loan Lenders or the Collateral (defined below) pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law;

(f)        subject to entry of the Final Order, the waiver of the "equities of the case" exception under Section 552(b) of the Bankruptcy Code with respect to the Prepetition Revolving Loan Lenders and the proceeds of any of the Prepetition Collateral; and

(g)        granting certain related relief.

The Court having considered the Motion, the First Day Declaration, the other filings and pleadings in the above-captioned consolidated chapter 11 cases (each individually a "**Case**" and collectively, the "**Cases**"), and the evidence submitted or adduced and the arguments of counsel

made at the Interim Hearing; and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b)(c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtors, their estates, and their creditors and equity holders, and essential for the continued operation of the Debtors' remaining businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS AND DECLARATIONS AND REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Petition Date</u>.  On February 4, 2020 (the "**<u>Petition Date</u>**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**<u>Bankruptcy Court</u>**" or this "**<u>Court</u>**").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B.    <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over these Cases, this Motion and the parties and property affected hereby pursuant to 28 U.S.C. sections 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409.  The

---

[3] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

statutory bases for the relief set forth in this Interim Order are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

C.     Notice.  Upon the record presented to the Court at the Interim Hearing, and under the exigent circumstances set forth therein, requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(1) to (a) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) the Office of the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (e) the Prepetition Revolving Loan Lenders (as defined below); (f) all parties known to the Debtors who hold any liens or security interests in the Debtors' assets who have filed UCC-1 financing statements against the Debtors; (g) the Debtors' landlords; and (h) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), which notice was appropriate under the circumstances; and no further notice of, or hearing on, the entry of this Interim Order is necessary or required.

D.     Debtors' Stipulations.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 7 below) the Debtors admit, stipulate, and agree that, with respect to the Debtors' obligations to Fifth Third Bank, National Association (formerly known as Fifth Third Bank) ("**Fifth Third**") as Administrative Agent, Swing Line Lender, L/C Issuer, and Sole Lead Arranger and the other participating lenders thereunder (collectively with Fifth Third, the "**Prepetition Revolving Loan Lenders**" and such agreement, the "**Prepetition Revolving Loan Agreement**"):

(1)     On April 16, 2010, Debtor Earth Fare, Inc. ("**Borrower**") and the Prepetition Revolving Loan Lenders entered into the Prepetition Revolving Loan Agreement, pursuant to which the Prepetition Revolving Loan Lenders provided a revolving line of credit to finance the Company's operations with initial commitments of $40,000,000 in the aggregate.   On April 9, 2012, the Prepetition Revolving Loan Agreement was amended and restated to provide for, among other things, an increase in the Prepetition Revolving Loan Lenders' aggregate lending commitments to $65,000,000, and a guaranty of Earth Fare's obligations under the Prepetition Revolving Loan Agreement (the "**Guaranty**") by EF Investment Holdings, Inc. (the "**Guarantor**").

(2)     On May 15, 2017, Earth Fare executed revolving notes under the terms of the Prepetition Revolving Loan Agreement with (i) Fifth Third, in the original principal of $43,333,333.33, and (ii) Wells Fargo Bank, National Association ("**Wells Fargo**"), in the original principal amount of $21,666,666.67.  As of the Petition Date, the outstanding principal balance owed to the Prepetition Revolving Loan Lenders under the Prepetition Revolving Loan Agreement was $62,992,438.86, of which $41,994,959.24 was owed to Fifth Third and $20,997,479.62 was owed to Wells Fargo, respectively, plus interest, fees, costs and expenses (all such amounts, along with all other "Obligations" as defined in the Prepetition Revolving Loan Agreement, the "**Prepetition Revolving Loan Obligations**" and all agreements entered into in connection with such Prepetition Revolving Loan Obligations, including the "Loan Documents" as defined in the Prepetition Revolving Loan Agreement, the "**Secured Credit Documents**").   The Prepetition Revolving Loan Obligations under the Secured Credit Documents matured on December 31, 2019.

(3)     The Prepetition Revolving Loan Obligations are secured by a first-priority lien on and security interest in substantially all of Earth Fare's assets, including accounts receivable, cash and cash equivalents, chattel paper, deposit accounts, equipment and fixtures, general intangibles, goods, inventory, investment property, contract rights and other rights to payment, software, trademarks, copyrights, and the proceeds and products thereof (the "**Prepetition Collateral**").  The Prepetition Revolving Loan Lenders' security interests in the Prepetition Collateral (the "**Secured Prepetition Liens**") are duly perfected.  The Guarantor has no defenses to or offsets against their obligations under the Guaranty, and is obligated to the Prepetition Revolving Loan Lenders as set forth in the Guaranty.

(4)     On July 16, 2019, the Borrower entered into a second lien credit and guaranty agreement with the lender party thereto (the "**Prepetition Term Loan Lender**" and such agreement, the "**Prepetition Term Loan Agreement**"), pursuant to which the Prepetition Term Loan Lender extended to Earth Fare a loan in the original principal amount of $14,800,000 and incremental capacity for an additional $4,000,000.  As of the Petition Date, the obligations owed by the Debtors under the Prepetition Term Loan Agreement are approximately $14,800,000, inclusive of accrued but unpaid interest (all such amounts the "**Prepetition Term Loan Obligations**").  The Prepetition Term Loan Obligations mature on June 30, 2020, and are secured by a second-priority lien on and security interest in the Prepetition Collateral, subject to the Intercreditor Agreement (as defined below).

(5)     Earth Fare, Fifth Third, as lender and agent under the Prepetition Revolving Loan Agreement, and the Prepetition Term Loan Lender are parties to that certain

Subordination and Intercreditor agreement dated as of July 18, 2019 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Intercreditor Agreement**"), that governs the respective rights, obligations, and priorities of the Prepetition Revolving Loan Lenders and the Prepetition Term Loan Lender with respect to the matters referred to therein, including the lenders' relative rights in the Prepetition Collateral.  Pursuant to, and in accordance with, the terms and conditions of the Intercreditor Agreement, including Section 3.10 thereof, the Prepetition Term Loan Lender is deemed to have consented to the use of Cash Collateral and such other terms of this Interim Order to the extent provided in the Intercreditor Agreement.

(6)    All of the Debtors' existing cash that constitutes property of the estates and all cash (i) constituting Prepetition Collateral; (ii) constituting proceeds, products, rents, or profits of property of Prepetition Collateral; or (iii) subject to the Secured Parties' rights of setoff constitutes cash collateral (the "**Cash Collateral**").

E. <u>Release</u>.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 7 below), the Debtors forever and irrevocably (i) release, discharge, and acquit the Prepetition Revolving Loan Lenders, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations of every type, including, without limitation, any claims arising from any actions relating to any aspect of any relationship between the Prepetition Revolving Loan Lenders and the Debtors and their affiliates, including without limitation any equitable

subordination claims or defenses, with respect to or relating to the Prepetition Revolving Loan Obligations, the Prepetition Revolving Loan Lenders, the Debtors' attempts to restructure the Prepetition Revolving Loan Obligations, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the Prepetition Revolving Loan Lenders and any funds and payments received by the Prepetition Revolving Loan Lenders; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and non-avoidability of the Prepetition Revolving Loan Obligations. Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Revolving Loan Lenders any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

F. <u>Creditors' Committee</u>.  As of the date hereof, the U.S. Trustee has not appointed an official committee of unsecured creditors (a "**Committee**") in accordance with Bankruptcy Code section 1102.

G. <u>Cash Collateral</u>.  The Prepetition Revolving Loan Lenders assert interests in any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Prepetition Collateral existing as of the Petition Date or arising or acquired after the Petition Date on which the Prepetition Revolving Loan Lenders have been granted replacement liens pursuant to the terms of this Interim Order, together with all proceeds of any of the foregoing (the "**Secured Replacement Liens**"), as cash collateral within the meaning of section 363(a) of the Bankruptcy Code.  Pursuant to section

363(c)(2) of the Bankruptcy Code, Debtors are not able to use Cash Collateral without the Prepetition Revolving Loan Lenders' consent or this Court's authorization after notice and a hearing.

H. <u>Necessity for Relief Requested; Immediate and Irreparable Harm</u>.    The Debtors requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) on the terms described herein.    The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the assets of each Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "**<u>Estate</u>**"), absent which immediate and irreparable harm will result to the Debtors, their Estates, and their stakeholders.    Absent the Debtors' ability to use Cash Collateral, the Debtors would not have sufficient available sources of working capital or financing and would be unable to pay their payroll and other operating expenses, or maintain their assets to the detriment of their Estates and creditors.    Accordingly, the relief requested in the Motion and the terms provided herein are (i) critical to the Debtors' ability to maximize the value of the Estates, (ii) in the best interests of the Debtors and their Estates, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and the Debtors' Estates, stakeholders, assets, goodwill, reputation, and employees.

I. <u>Adequate Protection</u>.    On account of their Secured Prepetition Liens, the Prepetition Revolving Loan Lenders are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Collateral (as defined below), including the Cash Collateral, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.

J.  <u>Good Cause</u>.  Good cause has been shown for immediate entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, the Estates, and their stakeholders.  Among other things, the relief granted herein will minimize disruption of the Debtors' business and permit the Debtors to meet payroll and other expenses necessary to maximize the value of the Estates.  The terms of the Debtors' use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

K.  Subject to the entry of the Final Order, the Prepetition Revolving Loan Lenders are entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply to any of the Prepetition Revolving Loan Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

**BASED UPON THE TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.  <u>Motion Granted</u>.  The Motion is GRANTED to the extent provided herein.  Any objection to the Motion, to the extent not withdrawn, waived or resolved, is hereby overruled.

2.  <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized on an interim basis to use the Cash Collateral solely in accordance with and to the extent set forth in the Budget (as defined below) and this Interim Order during the period commencing on the date of this Interim Order through to the Termination Date (as defined below) (the "**Cash Collateral Period**").

3.  <u>Budget</u>.

(a)  The Debtors may use Cash Collateral during the Cash Collateral Period only to pay the expenses set forth in the cash collateral budget attached hereto as **Exhibit 1** (as the same

may be updated from time to time with the prior written consent of the Prepetition Revolving Loan Lenders, the "**Budget**") during the periods covered by the Budget in which such expenses are projected to be paid, in amounts not exceeding those set forth in each line item of the Budget subject to the Permitted Variance (as defined below).

(b)     Not later than 7:00 p.m. (Eastern time) on the Thursday of each week commencing on February 10, 2020, the Debtors shall furnish to the Prepetition Revolving Loan Lenders a weekly report (the "**Budget Compliance Report**") that sets forth as of the preceding Sunday of each such week, on a weekly basis from the Petition Date (each such period referred to herein as a "**Measurement Period**"), the actual results for "Total Receipts," "Total Operating Disbursements," "Total GOB Costs," and all other line items set forth in the Budget.

(c)     The Debtors hereby covenant and agree that (i) the actual results comprising "Total Receipts" as set forth in the Budget from the Petition Date through the conclusion of any Measurement Period shall not be less than eighty-five percent (85%) of the amount projected in the "Total Receipts" line item of the Budget for such Measurement Period starting for the week ending February 16, 2020 and each Measurement Period thereafter; and (ii) the actual results comprising "Operating Disbursements" and "GOB Costs" as set forth in the Budget, shall not be more than one hundred and ten percent (110%) of the amount projected in the "Operating Disbursements" and "GOB Costs" sections of the Budget, respectively, from the Petition Date through the conclusion of the applicable Measurement Period (the "**Permitted Variance**").

(d)     Under no circumstance shall Debtors:

(i)     Use any Cash Collateral for any purpose other than those authorized by this Interim Order and as outlined in the Budget without the written consent of the Prepetition Revolving Loan Lenders; or

(ii)        Use Cash Collateral to the extent that expenses listed in the Budget are not actually incurred.

4.        <u>Carve-Out</u>.

(a)        As used in this Interim Order, the "Carve-Out" means the sum of: (i) all allowed administrative expenses pursuant to 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, as determined by agreement of the U.S. Trustee or by final order of the Bankruptcy Court (without regard to the notice set forth in paragraph 5 below); (ii) all reasonable fees and expenses up to $5,000 incurred by a Trustee under Section 726(b) of the Bankruptcy Code; (iii) subject to the terms and conditions of this Interim Order, all Allowed Professional Fees (as defined below) of attorneys, accountants and other professionals retained by the Debtors and any Committee(s), under § 327 or § 1103(a) of the Bankruptcy Code (collectively, the "**Professionals**") incurred prior to the Termination Date in an aggregate amount not to exceed at any time the Professional Fee Escrow (as defined below), and (iv) allowed professional fees and disbursements following the Termination Date by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Debtors and the Committee not to exceed the aggregate amount of $125,000 (clauses (iii) and (iv), collectively, the "**Professional Fee Carve-Out**").  For purposes of this Interim Order, the term "**Allowed Professional Fees**" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the Petition Date and (ii) allowed at any time by a final order of the Court pursuant to §§ 326, 328, 330 or 331 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, no Cash Collateral or any portion of the Carve-Out may be used to assert any claims or causes of

action against the Prepetition Revolving Loan Lenders or object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, or enforceability of the Prepetition Revolving Loan Obligations, the Secured Prepetition Liens, or the Secured Replacement Liens granted herein; provided, however, that up to $25,000 may be used by the Committee, if any, to investigate any such claims or causes of action. Nothing herein allows the payment of any fees or expenses of professionals absent approval of the same by the Court pursuant to a fee application on notice, or such other procedures that may be approved by the Court.

(b)     Notwithstanding anything to the contrary in this Interim Order or the Secured Credit Documents, any and all fees, costs and/or expenses payable, at any time, to the Consultant (as defined in the Interim Order (A) Confirming, On An Interim Basis, That The Store Closing Agreement Is Operative And Effective; (B) Authorizing And Approving Store Closing Sales Free And Clear Of All Liens, Claims And Encumbrances; (C) Approving Dispute Resolution Procedures; And (D) Approving The Debtors' Store Closing Plan (the "**Interim Store Closing Order**")) pursuant to the Interim Store Closing Order shall constitute the "Consultant Carve-Out" and have priority over, and be paid before, any amounts included in the Prepetition Revolving Loan Obligations.

(c)     The Secured Prepetition Liens, the Secured Replacement Liens, and the Secured Adequate Protection Superpriority Claim shall be subordinate to the Carve-Out and the Consultant Carve-Out.  All recourse for claims relating to the Professional Fee Carve-Out shall be exclusively limited to the aggregate amount of funds delivered to and held in the Young Conaway Stargatt & Taylor, LLP Client Trust Account as the Professional Fee Escrow (as hereinafter defined) that are funded into such account in accordance with the terms and conditions of this Interim Order.  Other than the aggregate amount held in the Professional Fee Escrow that is funded into the Professional

Fee Escrow in accordance with the terms and conditions of this Interim Order, none of the Prepetition Revolving Loan Lenders' liens and claims in or against the Collateral, the Debtors, and the Estates shall be subordinate to the Professional Fee Carve-Out.  For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described herein.

(d)      Prior to the Termination Date, the Debtors are authorized to wire transfer funds, on a weekly basis, to the Young Conaway Stargatt & Taylor, LLP Client Trust Account in an amount equal to, but not to exceed, the amount forth in the Budget for each such week (the "**Professional Fee Escrow**").  The Prepetition Revolving Loan Lenders shall not have any responsibility, liability, or obligation whatsoever to ensure that the Debtors fund the Professional Fee Escrow or that the Professional Fee Escrow has funds equal to the aggregate amounts set forth in the Budget for any applicable period.  The Debtors may only fund the Professional Fee Escrow (i) prior to the Termination Date, up to, but not to exceed, the amounts set forth in the "Professional Fee Escrow" line item of the Budget for each week prior to the Termination Date and (ii) after the Termination Date, up to, but not to exceed, an amount equal to (x) the "Professional Fee Escrow" line item of the Budget for the week in which the Termination Date occurs (but only to the extent not previously funded) plus (y) $125,000.  No Cash Collateral shall be transferred to or deposited into the Professional Fee Escrow in a manner or amount that is inconsistent with the Budget or other than in accordance with the terms of this Interim Order.  Except as specifically provided in this Interim Order, on and after the Termination Date, no funds of the Debtors (including Cash Collateral) shall be transferred or deposited into the Professional Fee Escrow.

(e)      Termination Date.  The Debtors' authorization to use Cash Collateral pursuant to this Interim Order shall terminate immediately upon written notice by the Prepetition Revolving

Loan Lenders to the Debtors, the U.S. Trustee and, if appointed, any Committee of the earliest to occur of the following (the earliest such date, herein defined as the "**Termination Date**"): (i) May 3, 2020, subject to entry of an Order of the Court extending the Debtors' rights to use Cash Collateral; (ii) the date of the Final Hearing, to the extent this Interim Order is not replaced by the Final Order; (iii) the entry of an order of this Court terminating the right of any Debtor to use Cash Collateral; (iv) the dismissal of any of the Cases or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code; (v) the appointment in any of the Cases of a trustee or an examiner with expanded powers; (vi) an order of this Court shall be entered reversing, staying, vacating, or otherwise modifying this Interim Order or any provision contained herein without the prior written consent of the Prepetition Revolving Loan Lenders; (vii) any Debtors' failure to correct any material misrepresentation by any Debtor in the financial reporting to be provided by the Debtors to the Prepetition Revolving Loan Lenders under either or both the Prepetition Revolving Loan Agreement and this Interim Order, after three (3) business days' written notice of such alleged material misrepresentation; (viii) any Debtor's failure to provide any additional adequate protection ordered by the Court, if such failure continues unremedied for more than three (3) business days after written notice thereof; (ix) any Debtor's failure to perform, in any respect, any of its obligations under this Interim Order (other than a failure that constitutes a Termination Event), if such failure continues unremedied for more than three (3) business days after written notice thereof; (x) the date that is thirty-five (35) calendar days following the date of entry of this Interim Order if the Final Order, in form and substance acceptable to the Prepetition Revolving Loan Lenders, has not been entered by the Court on or prior to such date; (xi) the Debtors' exclusive right to file and solicit acceptance of a chapter 11 plan of reorganization terminates; (xii) April 10, 2020 or such later date as consented to by the Prepetition Revolving Loan Lenders, unless

on or before such date the Debtors propose a chapter 11 plan that is acceptable to the Prepetition Revolving Loan Lenders in their sole discretion;  and (xiii) the occurrence of a Termination Event (defined below).

      5.    <u>Adequate Protection</u>.

      (a)    <u>Secured Replacement Liens</u>.  As adequate protection for the amount of diminution in value of its interests in the Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor (on a dollar-for-dollar basis), the imposition of the automatic stay, and any other act or omission that causes diminution in the value of its interests in the Collateral (collectively, the "**<u>Diminution in Value</u>**"), the Prepetition Revolving Loan Lenders are hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, the Secured Replacement Liens as valid, binding, enforceable, and perfected replacement liens upon and security interests in all of each Debtor's presently owned or hereafter acquired property and assets to the extent that such property and assets would constitute such Prepetition Revolving Loan Lenders' Collateral if acquired before the Petition Date (such collateral together with the Prepetition Collateral and the Cash Collateral, the "**<u>Collateral</u>**") to the extent of any Diminution in Value; <u>provided</u>, however, that, for the avoidance of doubt, the Secured Replacement Liens shall not attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code (the "**<u>Avoidance Actions</u>**"); <u>provided further</u>, that such Secured Replacement Liens shall, upon entry of the Final Order, attach to all proceeds of Avoidance Actions; and <u>provided further</u>, however, with respect to the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or extend to such leases themselves under this Interim Order, except as permitted in the applicable lease, but rather any liens granted shall extend

only to the proceeds realized upon the sale, assignment, termination or other disposition of such leases, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds.  The Secured Replacement Liens shall be junior and subordinate only to (A) each Prepetition Revolving Loan Lender's Secured Prepetition Liens on the Collateral, (B) the Carve-Out, and (C) the Consultant Carve-Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties.  Other than as set forth herein, the Secured Replacement Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest hereinafter granted in any case under chapter 7 of the Bankruptcy Code (collectively, "**Successor Cases**").  The Secured Replacement Liens shall be deemed automatically valid and perfected with such priority as provided in this Interim Order without any further notice or act by any party that may otherwise be required under any other law.  Notwithstanding the foregoing, the Debtors shall, upon request of a Prepetition Revolving Loan Lender, execute and deliver such documents as may be reasonably requested by such Prepetition Revolving Loan Lender to create and perfect the security interest and liens described herein under applicable non-bankruptcy law, and each Prepetition Revolving Loan Lender shall be authorized to file and record such documents and take such other actions as may be necessary to perfect such security interests and liens under all such laws and to correctly describe the collateral subject thereto. The Secured Replacement Liens shall be valid, binding, and enforceable (i) against any trustee or other estate representative appointed in any Case, (ii) upon the conversion of any of the Cases to a Successor Case, and (iii) upon the dismissal of any Case or Successor Case.

(b)      Section 507(b) Priority Claims.

(i)      Secured Adequate Protection Superpriority Claim.  As further adequate protection for the Diminution in Value, the Prepetition Revolving Loan Lenders are hereby granted, as and to the extent provided by Sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor  Case (the "**Secured Adequate Protection Superpriority Claim**").  The Secured Adequate Protection Superpriority Claim shall be subordinate to the Carve-Out and the Consultant Carve-Out, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(ii) Payment and Review of Lender Fees and Expenses.  The Debtors shall pay, up to the aggregate amounts set forth in the Budget, the reasonable attorneys' fees and expenses and any other professional fees and expenses of the Prepetition Revolving Loan Lenders incurred before or after the Petition Date in connection with the Secured Credit Documents, the Collateral, or the Cases; provided, that the Debtors shall pay all such reasonable fees and expenses within ten (10) business days of delivery of a monthly statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in any particular format and may be redacted to protect privileged, confidential, or proprietary information, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek the Court's approval of any such payments) to the Debtors, the U.S. Trustee, and the Committee (if one is appointed), unless, within such ten (10) business day period, the Debtors, the U.S. Trustee, or the Committee (if one is appointed) serve a

written objection upon the requesting party, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid.

(c)      Prepetition Term Loan Lender.  The Prepetition Term Loan Lender shall be permitted to seek adequate protection for the amount of any Diminution in Value of its interest in the Collateral in accordance with the Intercreditor Agreement.

(d)      Cash Management.  Until the Prepetition Revolving Loan Lenders receive Payment in Full (as defined below), the Prepetition Revolving Loan Lenders shall have, and continue to have, exclusive dominion and control on all deposit accounts and other accounts of Debtors, and all banks, depository entities, securities intermediaries, and commodities intermediaries that are parties to any control agreements shall be authorized and directed to continue affording the Prepetition Revolving Loan Lenders with exclusive dominion and control over such accounts in accordance with the terms and conditions of the applicable control agreements.  Prior to the Termination Date, the Debtors shall maintain all Cash Collateral actually received in their accounts, and shall utilize such Cash Collateral so received solely in accordance with the Budget and this Interim Order.  The term "Payment in Full" or "Paid in Full" means (i) all of the Prepetition Revolving Loan Obligations have been paid in full in cash; and (ii) that the Prepetition Revolving Loan Lenders shall receive a release from each Debtor and the Committee (if any) of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities in form and substance acceptable to the Prepetition Revolving Loan Lenders.

(e)     Notwithstanding anything to the contrary set forth herein, the adequate protection granted by this Interim Order is without prejudice to the Prepetition Revolving Loan Lenders' right to seek additional adequate protections from this Court, or the rights of any party in interest to oppose such request.  The use of Cash Collateral pursuant to the terms and conditions this Interim Order and in accordance with the Budget shall not be deemed to be a consent by the Prepetition Revolving Loan Lenders to any other or further use of Cash Collateral.

6.     <u>Insurance.</u>  At all times the Debtors shall maintain casualty and loss insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date. The Debtors shall provide the Prepetition Revolving Loan Lenders with proof of the foregoing within five (5) days of written demand and give the Prepetition Revolving Loan Lenders reasonable access to the Debtors' records in this regard.

7.     <u>Stipulation</u>.  The stipulations contained in Paragraph D and the release in Paragraph E of this Interim Order (the "**Stipulations**") shall be binding upon all parties in interest, including without limitation, the Debtors, their successors (including any chapter 7 or chapter 11 trustee), the Estates, and the Committee, if any.  All parties in interest, the Debtors, their successors (including any chapter 7 or chapter 11 trustee), the Estates, and the Committee, if any, are deemed to have irrevocably waived and relinquished all claims and right to challenge any of such stipulations or any portion of the release, unless the Committee, if any, or any other party in interest except for the Debtors has filed an adversary proceeding or contested matter (subject to the limitation set forth in paragraph 4(a) of this Interim Order) challenging the validity, enforceability, or priority of the Prepetition Revolving Loan Obligations or the Secured Prepetition Liens or otherwise asserting any claims or causes of action against any of the Prepetition Revolving Loan Lenders on behalf of the Estates (a "**Challenge Action**"), (i) with respect to any Committee, the

earlier of (a) sixty (60) calendar days from the date the U.S. Trustee appoints such Committee and (b) seventy-five (75) calendar days following the entry of the Interim Order, or (ii) with respect to all other parties, seventy-five (75) calendar days following the entry of the Interim Order (the "**Challenge Deadline**"); provided, however, that if the case converts to a Chapter 7, or if a Chapter 11 trustee is appointed, prior to the Challenge Deadline, that the Challenge Deadline shall be extended for the Chapter 7 or Chapter 11 trustee to forty-five (45) days after their appointment, and (b) the Court rules in favor of the plaintiff in any such adversary proceeding or contested matter. If no such adversary proceeding or contested matter is commenced as of the Challenge Deadline, the Prepetition Revolving Loan Obligations shall constitute allowed claims, in the amount acknowledged herein, not subject to subordination and otherwise unavoidable, for all purposes in the Cases and any subsequent chapter 7 cases, the Secured Prepetition Liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, and first-priority liens not subject to subordination and otherwise unavoidable, and the Prepetition Revolving Loan Obligations and the Secured Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto.  To the extent the Stipulations (or any of them) are (a) not subject to a Challenge Action timely and properly commenced prior to the Challenge Deadline or (b) subject to a Challenge Action timely and properly commenced prior to the Challenge Deadline, to the extent any such Challenge Action does not result in a final and non-appealable judgment or order of the Court that is inconsistent with such Stipulations, then, in each case, without further notice, motion or application to, or order of, or hearing before, the Court and without the need or requirement to file any proof of claim: (x) any and all such Challenge Actions by any party shall be deemed to be forever waived, released, and barred; and (y) all of the

Stipulations and all other stipulations, waivers, releases, admissions, agreements, and affirmations set forth in this Interim Order that are not properly and timely challenged, including, without limitation, those set forth in paragraphs D and E of this Interim Order, shall be of full force and effect and shall be binding, conclusive, and final (A) on any person, entity, or party in interest, including any Committee, in the Cases, and their successors and assigns, and (B) in any Successor Case for all purposes and shall not be subject to challenge or objection by the Committee or any other party in interest, including, without limitation, any trustee, responsible individual, examiner, or other representative of the Estates.  If any such adversary proceeding or contested matter is commenced on or prior to the Challenge Deadline, the stipulations contained in paragraph D of this Interim Order shall nonetheless remain binding and preclusive except to the extent that such stipulations were expressly challenged in such adversary proceeding or contested matter, subject to such adversary proceeding or complaint being amended. Nothing in this Interim Order vests or confers on any person, including the Committee (if any), standing or authority to pursue any cause of action belonging to the Debtors or the Estates.  For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the termination of the Challenge Deadline (and thereafter, if a Challenge is commenced on or prior to the Challenge Deadline) for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph with respect to a Challenge Action (whether commenced by such trustee or commenced by any other party-in-interest on behalf of the Estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, and stipulations of the Debtors in this Order.

8.     <u>Termination Events</u>.  Each of the following shall constitute a "**<u>Termination Event</u>**" under this Interim Order:

(a)     The use of Cash Collateral for any purpose not authorized by this Interim Order or in excess of the limitations set forth in this Interim Order;

(b)     Appointment of a Chapter 11 trustee or the appointment of an examiner with expanded powers;

(c)     Conversion of one or more of the Cases to cases under Chapter 7 of the Bankruptcy Code;

(d)     One or more of the Cases are dismissed;

(e)     The entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Interim Order;

(f)     Any Debtor files any plan of reorganization or plan of liquidation that is not acceptable in form and substance to the Prepetition Revolving Loan Lenders;

(g)     The Debtors cease pursuing going-out-of-business sales that are supported by the Prepetition Revolving Loan Lenders, or the Debtors conduct any liquidation that is not supported by the Prepetition Revolving Loan Lenders;

(h)     This Interim Order (unless replaced by the Final Order, in which case, the Final Order) ceases to be in full force and effect for any reason; and

(i)     Debtors seek to obtain financing that does not provide for Payment in Full of the Prepetition Revolving Loan Obligations, unless the Prepetition Revolving Loan Lenders provide prior written consent to such financing.

Upon the Debtors' receipt of notice of the occurrence of a Termination Event (a "**Default Notice**") from any of the Prepetition Revolving Loan Lenders, the Debtors are prohibited from using the Cash Collateral until further order of this Court; provided, however, that: (a) Debtors shall be

25970107.1

-23-

entitled to pay expenses actually incurred by Debtors that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates, in the Budget category "Salaries and Bonuses" budgeted for payment in the Measurement Period and in which the Default Notice is received; and (b) any other expenses expressly authorized to be paid after a Termination Event in this Interim Order.  For the avoidance of doubt, notwithstanding the foregoing, the Debtors shall be permitted to make payments from the Consultant Carve-Out and as expressly authorized by this Interim Order from the Professional Fee Escrow.

9.      Remedies Upon a Termination Event.  Five (5) business days after the delivery of a Default Notice, absent entry of an order of the Court to the contrary, the automatic stay imposed by 11 U.S.C. § 362 shall be immediately modified to permit the Prepetition Revolving Loan Lenders take any and all actions and remedies that the Prepetition Revolving Loan Lenders may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and any other property of any of the Debtors' Estates in which the Prepetition Revolving Loan Lenders have a lien or security interest (other than the Carve-Out and the Consultant Carve-Out), including, without limitation, (i) exercise any right or remedy that the Prepetition Revolving Loan Lenders may have under applicable non-bankruptcy law to proceed against, take possession of, foreclose upon, sell (in whole or in part), protect, and realize upon the Collateral or any other property of any of the Estates on which the Prepetition Revolving Loan Lenders have been granted liens or security interests, (ii) commence actions for either or both specific performance and the foreclosure upon any Collateral or Cash Collateral, (iii) the sale of the Collateral or any portion thereof, either in whole or in part, at private or public auction, (iv) the receipt of proceeds from the sale of any of the Collateral, and (v) the right of setoff and recoupment as to any funds of the Estates held by any Prepetition Revolving Loan Lenders. Notwithstanding anything to the contrary

herein, the Prepetition Revolving Loan Lenders may only enter upon a leased premises of the Debtors after a Termination Event in accordance with (i) a separate written agreement among the Prepetition Revolving Loan Lenders and the applicable landlord for the leased premises, (ii) pre-existing rights of the Prepetition Revolving Loan Lenders under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

10.     <u>Relief from the Automatic Stay</u>.

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtors to implement and perform the terms of this Interim Order, and (ii) the Debtors to create, and the Prepetition Revolving Loan Lenders to perfect, the Liens granted hereunder.  The Prepetition Revolving Loan Lenders shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Secured Replacement Liens granted by this Interim Order or to take any other actions to perfect such Secured Replacement Liens, which shall be deemed automatically perfected by the docketing of this Interim Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the Prepetition Revolving Loan Lenders shall elect for any reason to file, record, or serve any such financing statements or other documents with respect to such Secured Replacement Liens, then the Debtors shall execute same upon request and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of the Cases on the Petition Date.

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified

without further notice, application or order of the Court to the extent necessary to permit the

Prepetition Revolving Loan Lenders to perform any act authorized or permitted under or by virtue

of this Interim Order or the Prepetition Revolving Loan Agreement, as applicable, including,

without limitation, (i) to implement the arrangements authorized by this Interim Order, (ii) to take

any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in

the Collateral, and (iii) to assess, charge, collect, advance, deduct, and receive payments with

respect to the Prepetition Revolving Loan Obligations authorized herein.

11.    <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or

stay of any or all of the provisions of this Interim Order (other than in accordance with the Final

Order) shall not affect the validity or enforceability of any Secured Replacement Liens, Secured

Adequate Protection Superpriority Claim, or any claim, lien, security interest, or priority

authorized or created hereby with respect to any Secured Replacement Lien or Secured Adequate

Protection Superpriority Claim incurred prior to the effective date of such reversal, modification,

vacatur, or stay.  Notwithstanding any reversal, modification, vacatur, or stay (other than in

accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of

Cash Collateral and the Secured Replacement Liens or Secured Adequate Protection Superpriority

Claim incurred by the Debtors prior to the effective date of such reversal, modification, vacatur,

or stay, and (b) the applicable Prepetition Revolving Loan Lenders shall be entitled to all the

benefits and protections granted by this Interim Order with respect to any such use of Cash

Collateral and such Secured Replacement Liens or Secured Adequate Protection Superpriority

Claim incurred by the Debtors.

12.    <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the Prepetition

Revolving Loan Lenders to seek relief or otherwise exercise any of their rights and remedies under

this Interim Order, the Prepetition Revolving Loan Agreement, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the applicable Prepetition Revolving Loan Lenders.

13.     Section 507(b) Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the applicable Prepetition Revolving Loan Lenders hereunder is insufficient to compensate for any Diminution in Value during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Revolving Loan Lenders, that the adequate protection granted herein does in fact adequately protect the applicable Prepetition Revolving Loan Lenders, against any diminution in value of its interests in the Collateral (including the Cash Collateral).

14.     Rights of Prepetition Revolving Lien Lenders.  Without limiting the rights of the Prepetition Revolving Loan Lenders contained in this Interim Order, the Prepetition Revolving Loan Lenders shall have the right, upon three (3) business days written notice to the Debtors, at any time during the Debtors' normal business hours, to inspect, audit, examine, check, make copies of, or extract from the non-privileged books, accounts, checks, orders, correspondence, and other records of the Debtors, and to inspect, audit, and monitor all or any part of the Collateral, and the Debtors shall make all of the same reasonably available to the Prepetition Revolving Loan Lenders and each of their representatives for such purposes.

15.     Use of Cash Collateral.  The Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtors or the Estates except for those operating expenses (including the statutorily required fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. §1930 and any interest due thereon) that are set forth in the Budget or with

the prior written consent of the Prepetition Revolving Loan Lenders, or pursuant to a separate order of the Court, upon reasonable notice to the Prepetition Revolving Loan Lenders and an opportunity of the Prepetition Revolving Loan Lenders to object thereto.

16.    <u>Binding Effect</u>.  This Interim Order shall be binding upon and inure to the benefit of the Prepetition Revolving Loan Lenders, the Debtors, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.  No rights are entered under this Interim Order for the benefit of any creditor of the Debtors (other than the Prepetition Revolving Loan Lenders, any other party in interest in the Cases, or any other person or entities, or any direct, indirect, or incidental beneficiaries thereof.

17.    <u>Reporting</u>.  During the Cash Collateral Period, Debtors shall provide the Prepetition Revolving Loan Lenders with all financial and other information required under the Prepetition Revolving Loan Agreement and this Interim Order and such other information as the Prepetition Revolving Loan Lenders, as applicable, may from time to time reasonably request.

18.    <u>Effectiveness</u>.  The terms and conditions of this Interim Order shall be (a) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(g), 7062, 9014 or otherwise; and (b) not be stayed absent (i) an application by a party in interest for such stay in conformance with such Fed. R. Bankr. P. 8005, and (ii) a hearing upon notice to the Notice Parties.

19.    <u>Section 552</u>.  Subject to and effective upon the entry of a Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Revolving Loan Lenders with respect to (i) proceeds, products, offspring, or profits of

any of the Prepetition Collateral, including the Cash Collateral, or (ii) the extension of the Secured Replacement Liens to cover proceeds of the Prepetition Collateral.

20.     <u>Section 506(c) Claims</u>.  Subject to and effective upon the entry of the Final Order, except to the extent of the Carve-Out and the Consultant Carve-Out (solely to the extent expressly set forth herein), as a further condition of the Debtors' authorization to use the Cash Collateral, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged or assessed against or recovered from the Prepetition Revolving Loan Lenders or the Collateral pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law.  No action, inaction, or acquiescence by the Prepetition Revolving Loan Lenders, including permitting the use of Cash Collateral to fund the Debtors' Cases, shall be construed as consent to a charge, lien, assessment, or claim against, or in respect of, the Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise.

21.     <u>Proofs of Claim</u>.  None of the Prepetition Revolving Loan Lenders or the Prepetition Term Loan Lender shall be required to file proofs of claim in any of the Cases or any Successor Cases for any claim allowed herein.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or any Successor Cases shall not apply to the Prepetition Revolving Loan Lenders or the Prepetition Term Loan Lender.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the Prepetition Revolving Loan Lenders or the Prepetition Term Loan Lender are hereby authorized and entitled, in their sole and absolute discretion, but not required, to file (and either or both amend and supplement) either or both a proof of claim and aggregate proofs of claim in each of the Cases

or any Successor Cases for any claim allowed herein.  For the avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by a Prepetition Revolving Loan Lender or the Prepetition Term Loan Lender shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any other Prepetition Revolving Loan Lender or the Prepetition Term Loan Lender respectively.

22.   PACA / PASA.  Nothing in this Interim Order shall impair or impact any valid and documented trust claims under (i) the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499t ("**PACA**") and (ii) the Packers and Stockyards Act of 1921 as amended, 7 U.S.C. §§ 181-229 ("**PASA**").  Pending Debtors' reconciliation and payment of PACA and PASA claims, the Debtors shall be permitted to establish an escrow (the "**PACA/PASA Escrow**") with an escrow agent reasonably acceptable to the Prepetition Revolving Loan Lenders to hold any amounts set forth in the "PACA/PASA Claims" line item of the Budget for each week.  After Debtors' reconciliation and payment of all PACA and PASA claims, any funds remaining in the PACA/PASA Escrow shall be paid over to the Prepetition Revolving Loan Lenders.  No Cash Collateral shall be transferred to or deposited into the PACA/PASA Escrow in a manner or amount that is inconsistent with the Budget or other than in accordance with the terms of this Interim Order.  Except as specifically provided in this Interim Order, on and after the Termination Date, no funds of the Debtor (including Cash Collateral) shall be transferred or deposited into the PACA/PASA Escrow. Other than the aggregate amount held in the PACA/PASA Escrow as of the Termination Date that were funded into the PACA/PASA Escrow in accordance with the terms of this Interim Order, none of the Prepetition Revolving Loan Lenders' Collateral shall be available to satisfy PACA/PASA claims absent further Court order.

23.    <u>Miscellaneous</u>.

(a)    <u>Good Faith</u>.  Each of the Prepetition Revolving Loan Lenders have acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Interim Order and their reliance on this Interim Order has been and is in good faith.

(b)    <u>No Release of Guarantors</u>.  Nothing contained in this Interim Order shall be deemed to terminate, modify, or release any obligations of any non-debtor guarantor with respect to their obligations under any of the Loan Documents, if any.

(c)    <u>No Waiver</u>.  The failure of any Prepetition Revolving Loan Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Secured Credit Documents, or otherwise, as applicable, shall not constitute a waiver of any of the Prepetition Revolving Loan Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses, or remedies of the Prepetition Revolving Loan Lenders under the Bankruptcy Code or under nonbankruptcy law against any other person or entity in any court.

(d)    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct or indirect third party or incidental beneficiary.

(e)    <u>No Marshaling</u>.  Subject to and effective upon the entry of a Final Order, none of the Prepetition Revolving Loan Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

25970107.1

(f)　　Enforceability.　This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order.

24.　　Survival.　The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Cases, (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of the Cases or Successor Cases, or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.　The terms and provisions of this Interim Order, as well as the Secured Adequate Protection Superpriority Claim, the Secured Replacement Liens, and all other claims and liens granted by this Interim Order, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner. or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Interim Order until the Prepetition Revolving Loan Obligations are Paid in Full.

25.　　Rights Preserved.　Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Prepetition Revolving Loan Lenders' rights to seek any other relief in respect of the Debtors (including the right to seek additional adequate protection); or (b) any rights of the Prepetition Revolving Loan Lenders under the Bankruptcy Code or under non-bankruptcy law. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Revolving Loan Lenders are preserved.

25970107.1

26.    <u>Payment of Compensation</u>.  Nothing herein or in the Budget shall be construed as consent to the allowance of any professional fees or expenses of any Professionals or shall affect the right of any party to object to the allowance or payment of such fees and expenses.  The Prepetition Revolving Loan Lenders shall not be responsible for the funding, direct payment, or reimbursement of any fees or expenses of any Professionals incurred in connection with the Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Revolving Loan Lenders in any way to pay compensation to or reimburse expenses of any Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

27.    <u>Final Hearing</u>.  A hearing on the Debtors' request for a Final Order approving the Motion is scheduled for February 27, 2020, at 2:00 p.m. (Eastern time) before this Court.  Within three (3) business days after entry of this Interim Order, the Debtors shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not previously served on a party) and this Interim Order on (i) the Notice Parties and (ii) counsel to any Committee.  Any responses or objections to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local Rules, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than February 20, 2020, at 4:00 p.m. (ET).  Objections must be served on:  (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary, Esq. (mbcleary@ycst.com) and Sean T. Greecher, Esq. (sgreecher@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Jane M. Leamy, Esq. (jane.m.leamy@usdoj.gov); (iii) counsel to the Prepetition Revolving Loan Lenders, Chapman

and Cutler LLP, Attn: Stephen R. Tetro II, Esq. (stetro@chapman.com) and Womble Bond

Dickinson (US) LLP, Attn: Matthew Ward, Esq. (Matthew.Ward@wbd-us.com); and

(iv) counsel to any statutory committee appointed in these chapter 11 cases.

28.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce

this Interim Order in accordance with its terms and to adjudicate any and all matters arising from

or related to the interpretation or implementation of this Interim Order.

**Dated: February 6th, 2020**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

25970107.1