## <u>EXHIBIT 1</u>

**SALE GUIDELINES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EARTH FARE, INC., *et al.*,[1] | ) | Case No. 20-10256 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

## SALE GUIDELINES[2]

1.      The Closing Sales shall be conducted so that the Closing Stores will remain open no longer than during the normal hours of operation maintained at each Closing Store by the Earth Fare, Inc. ("**Earth Fare**") prior to the filing of their bankruptcy petitions.

2.      The Closing Sales shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Closing Sale shall be conducted on Sunday unless Earth Fare had been operating such Closing Store on a Sunday prior to the commencement of the Closing Sales.

3.      On "shopping center" property, the Consultant shall not distribute handbills, leaflets, or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Consultant may solicit customers in the Closing Stores themselves.  On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Closing Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.      At the conclusion of the Closing Sales, the Consultant shall, subject to the Store Closing Agreement, vacate the Closing Stores in broom clean condition; *provided* that Earth Fare and the Consultant may abandon any furniture, fixtures, and equipment (including, but not limited to, machinery, rolling stock, office equipment, and personal property, and conveyor systems and racking) ("**FF&E**") not sold in the Closing Sales at the conclusion of the Closing Sales, without cost or liability of any kind to the Consultant.  The Consultant shall notify Earth Fare of its intention to abandon any

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084).  The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Emergency Motion for Interim and Final Orders (A)(1) Confirming, on an Interim Basis, that the Store Closing Agreement Is Operative and Effective and (2) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (B) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, (C) Approving Dispute Resolution Procedures, and (D) Approving the Debtors' Store Closing Plan* [Docket No. 16].

FF&E at least two (2) days prior to the Sale Termination Date.  Earth Fare will have the option to remove the FF&E at its own cost prior to the Sale Termination Date.  Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned by Earth Fare with the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against Earth Fare.  For the avoidance of doubt, as of the Sale Termination Date, Earth Fare and the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

5.      The Consultant and Earth Fare may advertise each Closing Sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," "winter clearance outlet," "winter clearance entire store on sale," or similar themed sale.  The Consultant and Earth Fare may also have "countdown to closing" signs prominently displayed in a manner consistent with these Sale Guidelines.  All signs, banners, ads, and other advertising collateral, promotions, and campaigns will be approved by Earth Fare in accordance with these Sale Guidelines.

6.      The Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Closing Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  Earth Fare and Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners if prohibited by the applicable lease or applicable law.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.  In addition, Earth Fare and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Closing Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store.  In addition, Earth Fare and Consultants shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Interim Order or the Final Order, as applicable.  Nothing contained in these Sale Guidelines shall be construed to create or impose upon Earth Fare or the Consultant any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

9.      The Consultant shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Closing Sales.  The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

10.      The Consultant shall keep Closing Store premises and surrounding areas clean and orderly consistent with present practices.

11.    Subject to the provisions of the Store Closing Agreement, the Consultant shall have the right to use all FF&E and sell all Offered FF&E.  The Consultant may advertise the sale of the Offered FF&E in a manner consistent with these guidelines.  The purchasers of any Offered FF&E sold during the Closing Sales shall be permitted to remove the Offered FF&E through the delivery entrances, services areas, or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* Offered FF&E sales made whereby the item can be carried out of the Closing Store in a shopping bag or shopping cart.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant and Earth Fare may abandon, in place and without further responsibility, any Offered FF&E and all Retained FF&E.

12.    At the conclusion of the Closing Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  Earth Fare, the Consultant, and their agents and representatives shall continue to have access to the Closing Stores as provided for in the Store Closing Agreement.

13.    The rights of landlords against Earth Fare for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

14.    If and to the extent that the landlord of any Closing Store affected hereby contends that the Earth Fare or the Consultant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery to Earth Fare and the Consultant as follows:

If to Earth Fare:

(a)    Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  M. Blake Cleary, Esq.; Sean T. Greecher, Esq., and Ian J. Bambrick, Esq. (mbcleary@ycst.com, sgreecher@ycst.com, and ibambrick@ycst.com); and

(b)    Malfitano Partners, Joseph A. Malfitano, PLLC, 747 Third Ave. 2nd Floor, New York, NY 10017, Attn:  Joseph Malfitano (jm@malfitanopartners.com).

If to the Consultant:

(a)    Gordon Brothers Retail Partners, LLC, 800 Boylston Street, 27th Floor, Boston, MA 02199, Attn: Mackenzie Shea (mshea@gordonbrothers.com); and

(b)    Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Attn: Ian Fredericks (ifredericks@hilcoglobal.com).

With copies to Consultant's counsel (which shall not constitute notice):

(a)    Pepper Hamilton LLP, 1313 Market Street, Suite 5100, P.O. Box. 1709, Wilmington, DE 19899-1709, Attn: Douglas Herrmann, Esq. and Marcy McLaughlin Smith, Esq. (herrmannd@pepperlaw.com, mclaughlinm@pepperlaw.com.

## **EXHIBIT 2**

### **STORE CLOSING AGREEMENT**

25965694.14

 

January 30, 2020

To:       Earth Fare, Inc. ("Merchant")
          220 Continuum Drive
          Fletcher, North Carolina 28732
          Attn: Mindy Harvey


From:     Gordon Brothers Retail Partners, LLC
          800 Boylston Street
          27th Floor
          Boston, MA 02199

          -and

          Hilco Merchant Resources, LLC
          5 Revere Drive
          Suite 206
          Northbrook, IL 60062

          Attn: Ian Fredericks

Re:       Store Closing Program – Consulting Agreement


Ladies and Gentlemen:

This letter shall serve as the agreement (the "Agreement") of a contractual joint venture comprised of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (together, "Consultant") and Merchant pursuant to which Consultant shall serve as the consultant to Merchant to conduct a "going out of business," "store closing," "everything must go," "sale on everything," or other mutually agreed upon themed sale (the "Sale") at Merchant's retail stores identified on Exhibit A attached hereto (each a "Store" and collectively the "Stores"), subject to the terms and conditions set forth herein.

On or about February 3, 2020, the Merchant intends to file for protection under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 by commencing a chapter 11 case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Pending approval of the Sale by the Bankruptcy Court,

the Sale shall only be conducted using a "sale on everything," or other mutually agreed upon theme at the Stores.

1.  **RETENTION**

(A)    Merchant hereby retains Consultant as its independent consultant to conduct the Sale at the Stores during the Sale Term, and in connection therewith, Consultant shall, throughout the Sale Term:

   (i)    Recommend appropriate discounting to effectively sell all of Merchant's goods located at or to be delivered to the Stores in accordance with a "going out of business," "store closing," "everything must go," "sale on everything," or other mutually agreed upon themed sale, and recommend appropriate point-of-purchase, point-of-sale, and other internal and external advertising in connection therewith.

   (ii)    Provide qualified supervision to oversee the conduct of the Sale, which supervisors, once identified to Merchant, shall not be removed from the Sale event unless Merchant otherwise agrees or requests removal.

   (iii)    Maintain focused and constant communication with Store-level employees and managers to keep them abreast of strategy and timing and to properly effect Store-level communication by Merchant's employees to customers and others about the Sale.

   (iv)    Establish and monitor accounting functions for the Sale, including evaluation of sales of Merchant's goods located at the Stores by category, sales reporting and expense monitoring, all of which shall be shared with the Merchant's advisors monitoring the Sale.

   (v)    Meet with the Merchant and its advisors, on at least a weekly basis, to review sales, sales reporting and expenses in an effort to minimize expenses and maximize overall net recovery of the Sale.

   (vi)    Recommend loss prevention strategies.

   (vii)    Coordinate with Merchant so that the operation of the Stores are being properly maintained including ongoing customer service and housekeeping activities.

   (viii)    Recommend appropriate staffing levels for the Stores and appropriate bonus and/or incentive programs (to be funded by Merchant) for Store employees.

   (ix)    Recommend loss prevention strategies.

   (x)    Recommend appropriate levels of DSD Merchandise (hereinafter defined) to be included in the Sale.

2

(xi)    Subject to the approval of the Bankruptcy Court, assist Merchant to commence the Sale as a "going out of business," "store closing," "sale on everything," "everything must go," or such other themed sale.

## 2.    **SALE TERM; VACATING STORES**

(A)    The term "Sale Term" with respect to each Store shall commence on February 3, 2020 (the "Sale Commencement Date") and shall end with respect to each respective Store no later than February 29, 2020 (the "Sale Termination Date"); provided, however, that Merchant may decide on an earlier or later "Sale Commencement Date" or "Sale Termination Date" with respect to any one or more Stores (on a Store-by-Store basis).

(B)    Upon the conclusion of the Sale Term at each Store, Consultant shall leave such Store in broom clean condition, subject to Consultant's right pursuant to Section 6 below to abandon in a neat and orderly manner all unsold Offered FF&E and all Retained FF&E.

## 3.    **EXPENSES**

(A)    All expenses incident to the conduct of the Sale and the operation of the Stores during the Sale Term (including without limitation all Consultant Controlled Expenses and all other Store-level and corporate expenses associated with the Sale) shall be borne by Merchant; except solely for any of the specifically enumerated "Consultant Controlled Expenses" that exceed the aggregate budgeted amount (as provided in Section 3(B) below) for such Consultant Controlled Expenses.

(B)    Attached hereto as Exhibit B is an expense budget for the "Consultant Controlled Expenses." Upon approval of the assumption of this Agreement by the Bankruptcy Court, after taking the Advance (as defined herein) into account, Consultant will advance funds for the Consultant Controlled Expenses, and Merchant shall reimburse Consultant therefor (up to the aggregate budgeted amount) in connection with each weekly reconciliation contemplated by Section 5(B) upon presentation of reasonable documentation for such actually-incurred expenses. Upon execution of this Agreement, Merchant shall advance Consultant the sum of $350,000 for Consultant Controlled Expenses that may be incurred from the Sale Commencement Date through the approval of the assumption of this Agreement by the Bankruptcy Court (the "Advance"). All Consultant Controlled Expenses shall be billed at cost, without markup, and evidence of incurrence shall be provided, if requested. The parties may from time to time mutually agree in writing to increase or decrease the budget of Consultant Controlled Expenses based upon circumstances of the Sale and the removal of any Stores from the Sale. The expense incident to acquiring and selling the DSD Merchandise shall be an expense of Merchant, including DSD Merchandise sourced by Consultant for inclusion in the Sale, regardless of whether the costs and expenses incurred by Consultant to source such DSD Merchandise are included in the budget.

3

4.    **CONSULTANT COMPENSATION**

(A)    As used herein, the following terms shall have the following meanings:

　　　(i)    "Cost Value" shall be agreed upon by the Consultant and Merchant based on the Merchant's books and records.

　　　(ii)    "<u>DSD Merchandise</u>" shall mean the "direct store delivery" inventory that Consultant may include, subject to Merchant's consent, to maximize the return on the Merchandise.

　　　(iii)    "<u>Gross Proceeds</u>" shall mean the sum of gross proceeds of all sales of Merchandise and DSD Merchandise made in the Stores (including, as a result of the redemption of any gift card, gift certificate, or merchandise credit as provided for in the Approval Order) during the Sale Term, net only of sales taxes. All sales will be made only for cash, government subsidiary programs, WIC, food stamps and similar currencies, or nationally recognized bank credit cards.

　　　(iv)    "<u>Merchandise</u>" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date or delivered thereto after the Sale Commencement Date. "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "<u>FF&E</u>"); (3) damaged or defective merchandise that cannot be sold for any price; (4) goods held by Merchant on memo, on consignment, or as bailee; (1)-(4), collectively without the FF&E, the "<u>Non-Inventory</u>"); or (5) gift cards (third party and Merchant branded).

　　　(v)    "Recovery Percentage" shall mean the Gross Proceeds, calculated using the "gross rings" method, divided by the Cost Value of the Merchandise sold, calculated using the "gross rings" method.

(B)    In consideration of its services hereunder, Merchant shall pay Consultant a "Base Fee" equal to one percent (1.0%) of Gross Proceeds. In addition to the "Base Fee", Consultant may also earn an "Incentive Fee" (together with the Base Fee, the "Consulting Fee") equal to the aggregate sum of the percentages shown in the following table, based upon the following thresholds of Recovery Percentage (e.g., in each case, as calculated back to first dollar):

| Gross Recovery Percentage on Cost | Consulting Fee |
|---|---|
| Up to 95.0% | 1.0%   of Gross Proceeds |
| 95.1% to 98.0% | 1.25%  of Gross Proceeds |
| 98.1% to 101.0% | 1.50%  of Gross Proceeds |
| Above 101% | 1.75%  of Gross Proceeds |

4

(C)     Subject to Bankruptcy Court approval, Consultant shall sell Non-Inventory during the Sale at the Stores, and in consideration of such services, Consultant shall earn a fee equal to the Consulting Fee percentage earned on sales of Merchandise as set forth above multiplied by the aggregate gross receipts, net only of sales taxes, from the sale of Non-Inventory at the Stores.

(D)     Gross Rings. For purposes of calculating Gross Proceeds, Recovery Percentages, and the Consulting Fee, the parties shall use the "Gross Rings" method, wherein Consultant and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within each Store. Register receipts shall show for each item sold the retail price (as reflected on Merchant's books and records) for such item, and the markdown or other discount granted in connection with such sale. All such records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(E)     On a weekly basis in connection with each weekly reconciliation contemplated by Section 5(B) below, Merchant shall pay Consultant an amount equal to the sum of one percent (1.0%) of Gross Proceeds on account of the prior week's sales as an advance on account of the fees payable hereunder; and (2) any FF&E Commission earned during the prior week.  The parties shall determine the definitive Consulting Fee (including the applicable Incentive Fee) in connection with the Final Reconciliation.   Immediately thereafter (and as part of the Final Reconciliation), Merchant shall pay any additional amount owed on account of such fee.

5.     **CONDUCT OF SALE; OTHER SALE MATTERS**

(A)     Unless otherwise agreed to by Merchant and Consultant, Merchant shall have control over the personnel in the Stores and shall handle the cash, debit and charge card payments for all Merchandise in accordance with Merchant's normal cash management procedures, subject to Consultant's right to audit any such items in the event of a good faith dispute as to the amount thereof.  Merchant (and not Consultant) shall be responsible for ensuring that the Sale, and the operation of the Stores (before, during, and after the Sale Term) shall be conducted in compliance with all applicable laws and regulations.

(B)     The parties will meet on each Wednesday during the Sale Term to review any Sale matters reasonably requested by either party; and all amounts payable or reimbursable to Consultant for the prior week (or the partial week in the case of the first and last weeks) shall be reconciled and paid immediately thereafter. No later than twenty (20) days following the end of the Sale, the parties shall complete a final reconciliation and settlement of all amounts contemplated by this Agreement (the "Final Reconciliation"). From time to time upon request, each party shall prepare and deliver to the other party such other reports as either party may reasonably request. Each party to this Agreement shall, at all times during the Sale Term and during the one (1) year period thereafter, provide the other with access to all information, books and records reasonably relating to the Sale and to this Agreement. All

records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(C)     Merchant shall be solely responsible for computing, collecting, holding, reporting, and paying all sales taxes associated with the sale of Merchandise during the Sale Term, and Consultant shall have no responsibilities or liabilities therefor.

(D)     Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the recovery to the Merchant, Merchant expressly acknowledges that Consultant is not guaranteeing the results of the Sale.

(E)     Merchant acknowledges that (i) the parties are not conducting an inventory of Merchant's goods located at the Stores; (ii) Consultant has made no independent assessment of the beginning levels of such goods; and (iii) Consultant shall not bear any liability for shrink or other loss to Merchant's goods located at the Stores unless such shrink or loss is primarily attributed to the actions of Consultant.  Merchant may, at its election, conduct an inventory at some or all of the Stores and Consultant agrees to cooperate with such inventory taking if and when done.

(F)     All sales of Merchandise and DSD Merchandise during the Sale shall be made in the name, and on behalf, of Merchant.

(G)     All sales of Merchandise during the Sale Term shall be "final sales" and "as is," and all advertisements and sales receipts will reflect the same.

(H)     Consultant shall, during the Sale Term, cooperate with Merchant in respect of Merchant's procedures governing returns of goods otherwise sold by Merchant (e.g., not in the Stores during the Sale Term).

(I)     Subject to compliance with any applicable laws and, from and after any insolvency proceedings, any order of the Bankruptcy Court, as applicable, Merchant hereby permits the Sale to be, and shall ensure that the Sale otherwise may be, advertised as a "going out of business," "store closing" or other mutually agreed upon handle throughout the term of the Sale.

6.     **FF&E**

(A)     Following the Sale Commencement Date, Merchant shall inform Consultant of those items of FF&E located at the Stores which are not to be sold (because Merchant does not have the right to sell such items, because Merchant wishes to retain such items for itself, or otherwise) (collectively, "Retained FF&E").

(B)     With respect to all FF&E located at the Stores as of the Sale Commencement Date which is not Retained FF&E (collectively the "Offered FF&E"), Consultant shall have the right to sell such Offered FF&E during the Sale Term on a commission basis equal to thirteen and

6

one-half percent (13.5%) of the gross sales of Offered FF&E, net only of sales tax ("FF&E Commission").

(C)    Merchant shall reimburse Consultant for its reasonable expenses associated with the sale of the Offered FF&E and any removal costs based upon a mutually agreed upon budget.

(D)    Consultant shall have the right to abandon any unsold Offered FF&E (and all Retained FF&E) at the Stores at the conclusion of the Sale Term without liability to Merchant or any third party.

7.    **INSURANCE; RISK OF LOSS**

During the Sale Term: (a) Merchant shall maintain (at its expense) insurance with respect to the Merchandise in amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, and (b) each of Merchant and Consultant shall maintain (at each party's respective expense) comprehensive auto liability for owned and non-owned autos and general liability insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Consultant shall add Merchant as an additional insured with respect to its insurance policies covering Consultant and its supervisors, and (c) each of Merchant and Consultant shall maintain statutory worker's compensation, statutory disability and Employer's Liability coverage of at least $500,000 covering its own employees. Consults shall produce evidence of such by the Sale Commencement Date.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Consultant shall not be deemed to be in possession or control of the Stores or the Merchandise or other assets located therein or associated therewith, or of Merchant's employees located at the Stores; and Consultant does not assume any of Merchant's obligations or liabilities with respect thereto.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Merchant shall bear all responsibility for product liability relating to the products sold under this Agreement, before, during and after the Sale Term.

8.    **INDEMNIFICATION**

(A)    Consultant shall indemnify and hold Merchant and its affiliates, and their respective officers, directors, employees, consultants, and independent contractors (collectively, the "Merchant Indemnified Parties") harmless from and against all third-party claims, demands, penalties, losses, liabilities and damages, including, without limitation, reasonable and documented attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

(i)    Consultant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

7

(ii)    any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Merchant by Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives (including without limitation any supervisors);

(iii)   any claims by any party engaged by Consultant as an employee or independent contractor (including without limitation any non-Merchant employee supervisor) arising out of such employment or engagement; or

(iv)    the negligence, willful misconduct or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, Consultants, independent contractors or representatives, *provided that* Consultant shall not be obligated to indemnify any Merchant Indemnified Party from or against any claims, demands, penalties, losses, liabilities or damages arising primarily from any Merchant Indemnified Party's gross negligence, willful misconduct, or unlawful act.

(B)    Merchant shall indemnify and hold Consultant, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Consultant Indemnified Parties") harmless from and against all third-party claims, demands, penalties, losses, liabilities and damages, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

(i)     Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii)    any claims by any party engaged by Merchant as an employee or independent contractor arising out of such engagement;

(iii)   any consumer warranty or products liability claims relating to any Merchandise; and/or

(iv)    the negligence, willful misconduct or unlawful acts of Merchant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives, *provided that* Merchant shall not be obligated to indemnify any Consultant Indemnified Party from or against any claims, demands, penalties, losses, liabilities or damages arising primarily from any Consultant Indemnified Party's gross negligence, willful misconduct, or unlawful act.

9.    **MISCELLANEOUS**

(A)    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to conflict of law's provisions.

(B)    After the commencement of the Chapter 11 Case, this Agreement, including engagement of Consultant and conduct of the Sale set forth herein, is subject to the approval of the Bankruptcy Court.  Merchant shall promptly seek to have this Agreement, and the transactions contemplated by this Agreement, approved and assumed by the Bankruptcy Court pursuant to an order and terms acceptable to both Merchant and Consultant (the "Approval Order"), which Approval Order shall be in form and substance reasonably acceptable to Consultant and shall provide, among other things, for commercially reasonable protections for the payment of Consultant's fees and expenses contemplated by this Agreement notwithstanding the liens or claims of the Merchant's secured lenders, including any debtor in possession financing lender.  The Bankruptcy Court shall have exclusive jurisdiction to resolve any issues arising under this Agreement.

(C)    This Agreement constitutes the entire agreement between the parties with respect to the matters contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto. This Agreement may not be modified except in a written instrument executed by each of the parties hereto. No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. The failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder. Nothing contained in this Agreement shall be deemed to create any relationship between Merchant and Consultant other than that of Consultant as an independent contractor of Merchant, and it is stipulated that the parties are not partners or joint venturers in any way. Unless expressly set forth herein to the contrary, to the extent that either party's consent is required/requested hereunder, such consent shall not be unreasonably withheld or delayed. This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; *provided however*, that this Agreement may not be assigned by either party without the prior written consent of the other. Written notices contemplated by this Agreement shall be sent by email (i) if to Merchant at the address set forth above with a copy to Malfitano Advisors, LLC, 747 Third Ave. 2nd Floor, New York, NY 10017, Attention:  Joseph Malfitano; and (ii) if to Consultant at the address set forth above.

Very truly yours,

**Hilco Merchant Resources, LLC**

By: _____

Print Name and Title:  VP & AGC, Managing Member

-and-

**Gordon Brothers Retail Partners, LLC**

By: _____

Print Name and Title:

TIMOTHY J SHILLING

MANAGING DIRECTOR

Agreed and Accepted:
**Earth Fare, Inc.**

By: _____

Print Name and Title:

Mindy Harvey, CFO

Exhibits:

A        Stores

B        Budget of Consultant Controlled Expenses

10

**Exhibit A**

**Stores**

Earth Fare
Exhibit A

| Store List | | | | | | | |
|---|---|---|---|---|---|---|---|

| Store # | Name | Address | City | State | Zip | Gross Sq. Ft. | Selling Sq. Ft. |
|---|---|---|---|---|---|---|---|
| **Stores** | | | | | | | |
| 100 | Asheville | 66 Westgate Parkway | Asheville | NC | 28806 | 28,880 | 18,017 |
| 105 | Asheville-South | 1856 Hendersonville Rd. | Asheville | NC | 28803 | 38,000 | 23,118 |
| 110 | Greensboro | 2965 Battleground Avenue | Greensboro | NC | 27408 | 27,887 | 18,599 |
| 115 | High Point | 4105 Brian Jordan Place | High Point | NC | 27265 | 24,046 | 14,663 |
| 120 | Charlotte | 12235 N. Community House Road | Charlotte | NC | 28277 | 26,072 | 17,240 |
| 125 | Charlotte | 721 Governor Morrison Ste 110 | Charlotte | NC | 28211 | 25,200 | 17,329 |
| 130 | Boone | 178 West King Street | Boone | NC | 28607 | 21,240 | 13,888 |
| 140 | Raleigh | 10341 Moncreiffe Rd | Raleigh | NC | 27617 | 26,196 | 17,258 |
| 145 | Cary | 951 Morrisville Parkway | Morrisville | NC | 27560 | 24,151 | 15,042 |
| 160 | Huntersville | 14021 Boren St. | Huntersville | NC | 28078 | 24,989 | 17,327 |
| 165 | Concord | 8885 Christenbury Pkwy | Concord | NC | 28027 | 24,110 | 16,180 |
| 167 | Steele Creek | 14124 Steele Creek Road | Charlotte | NC | 28273 | 24,250 | 14,338 |
| 180 | Wilmington | 943 Military Cutoff Rd | Wilmington | NC | 28405 | 23,340 | 14,638 |
| 200 | Charleston | 74 Folly Road Blvd | Charleston | SC | 29407 | 25,480 | 18,582 |
| 205 | Summerville | 1101 North Main St | Summerville | SC | 29483 | 23,961 | 14,979 |
| 220 | Columbia | 3312-B Devine Street | Columbia | SC | 29205 | 22,394 | 15,213 |
| 240 | Greenville | 3620 Pelham Road | Greenville | SC | 29615 | 30,793 | 20,352 |
| 250 | Rock Hill | 725 Cherry Rd Suite 110 | Rock Hill | SC | 29732 | 25,538 | 17,527 |
| 257 | Fort Mill, SC (Baxter) | 2351-103 Len Patterson Rd | Fort Mill | SC | 29708 | 23,588 | 14,921 |
| 300 | Athens | 1689 South Lumpkin Street | Athens | GA | 30606 | 16,965 | 11,805 |
| 310 | Augusta | 368 Fury's Ferry Road | Martinez | GA | 30907 | 34,469 | 20,344 |
| 325 | Cumming | 3140 Ronald Reagan Blvd | Cumming | GA | 30041 | 23,800 | 15,710 |
| 400 | Knoxville | 10903 Parkside Drive | Knoxville | TN | 37922 | 25,642 | 17,603 |
| 405 | Knoxville | 140 N Forest Park Blvd. | Knoxville | TN | 37919 | 28,191 | 18,951 |
| 410 | Johnson City | 1735 W State of Franklin Road | Johnson City | TN | 37604 | 27,935 | 19,497 |
| 420 | Chattanooga | 1814 Gunbarrel Road, Ste 100 | Chattanooga | TN | 37421 | 26,841 | 18,257 |
| 425 | Hixson Pike | 5414 Hixson Pike | Hixson | TN | 37343 | 32,370 | 19,109 |
| 500 | Auburn | 1550 Opelika Road, Ste 14 | Auburn | AL | 36830 | 32,000 | 19,254 |
| 510 | Huntsville | 5900 – C University Dr NW | Huntsville | AL | 35806 | 26,998 | 18,816 |
| 550 | Tallahassee | 2425 Apalachee Parkway | Tallahassee | FL | 32301 | 25,000 | 16,501 |
| 555 | Jacksonville | 11901 Atlantic Blvd Suite 250 | Jacksonville | FL | 32225 | 23,800 | 14,894 |
| 557 | Mandarin | 11700 San Jose Blvd - Unit 12 | Jacksonville | FL | 32223 | 27,638 | 19,442 |
| 559 | St Johns | 120 Shops Blvd | St Johns | FL | 32259 | - | - |
| 562 | Ocala | 2405 SW 27th Avenue | Ocala | FL | 34474 | 28,264 | 17,568 |
| 565 | Tampa-Seminole | 7774 113th Street N | Seminole | FL | 33772 | 24,026 | 15,809 |
| 567 | Tampa-OldsMar, FL | 3136 Tampa Road | Oldsmar | FL | 34677 | 24,232 | 15,873 |
| 568 | Lutz (Outlet) | 25535 Sierra Center Blvd | Lutz | FL | 33559 | 24,254 | 15,628 |
| 569 | Lakewood Ranch, FL | 11525 SR70 E | Lakewood Ranch | FL | 34202 | 24,034 | 14,938 |
| 570 | Palm Beach Gardens | 4925 PGA Boulevard | Palm Beach Gardens | FL | 33418 | 24,034 | 15,440 |
| 572 | Boynton Beach | 8855 Boynton Beach Blvd, Ste 310 | Boynton Beach | FL | 33472 | | |
| 580 | Orlando Health | 9 W Gore St | Orlando | FL | 32801 | - | - |
| 582 | Orlando-Lake Nona | 13024 Narcoosee Rd | Orlando | FL | 32832 | 23,598 | 14,921 |
| 583 | Viera (Mural) | 5410 Murrell Road, Suite 135 | Rockledge | FL | 32955 | 27,153 | 16,243 |
| 600 | Akron | 3737 West Market Street, Unit N | Fairlawn | OH | 44333 | 27,196 | 19,451 |
| 605 | Canton | 3939 Everhard Road NW | North Canton | OH | 44709 | 23,800 | 15,710 |
| 620 | Cleveland | 3450 Westgate | Fairview Park | OH | 44126 | 27,246 | 16,214 |
| 680 | Ft. Wayne | 704 East Dupont Road | Fort Wayne | IN | 46825 | 27,146 | 15,626 |
| 700 | Kalamazoo | 5070 S. Westnedge Ave. | Portage | MI | 49002 | 23,828 | 13,399 |
| 770 | Roanoke | 2203 Franklin Rd SW | Roanoke | VA | 24014-1109 | 24,124 | 14,839 |
| 780 | Williamsburg | 208 Monticello Avenue | Williamsburg | VA | 23185 | 23,885 | 16,899 |
| 50 | | | | | | 25,928 | 16,765 |

<u>Exhibit B</u>

**Consultant Controlled Expenses**

12

## Earth Fare
### Exhibit B

| Expense Budget (1) | |
| --- | --- |

| | |
| --- | --- |
| **Advertising** (6) | |
| Media | 25,000 |
| Signs (2) | 246,732 |
| Sign Walkers | 136,875 |
| Subtotal Advertising | 408,607 |
| | |
| **Supervision (5)** | |
| Fees / Wages / Expenses (3) | 408,632 |
| Subtotal Supervision | 408,632 |
| | |
| Miscellaneous/Corporate Travel | 25,000 |
| Legal (4) | 15,000 |
| | |
| Total Expenses | 857,240 |

Note(s):

1. This Expense Budget contemplates a sale term of February, 3, 2020 through February 25, 2020.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Legal includes expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters.

5. Supervision includes one operations lead, one financial lead, and sixteen full time field supervisors.

6. Any media expenditures are subject to the approval and consent of the Merchant.