**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 20-10256 (KBO) |
| EARTH FARE, INC., *et al.*,[1] | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | **Ref. Docket Nos. 33, 58, 62, & 70** |

**CERTIFICATION OF COUNSEL SUBMITTING
REVISED ORDER (A) APPROVING DE MINIMIS ASSET SALE
PROCEDURES; (B) APPROVING CERTAIN BIDDING PROCEDURES,
ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM
AND MANNER OF NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS TO
ENTER INTO ASSET PURCHASE AGREEMENTS WITH STALKING HORSE
BIDDERS; AND (D) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE
OF THE DEBTORS' REMAINING ASSETS FREE AND CLEAR OF ALL
ENCUMBRANCES AS WELL AS THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

On February 4, 2020, the above-captioned debtors and debtors in possession

(collectively, the "**Debtors**") filed the *Debtors' Motion for Entry of: (I) an Order (A) Approving*

*De Minimis Asset Sale Procedures; (B) Approving Certain Bidding Procedures, Assumption and*

*Assignment Procedures, and the Form and Manner of Notice Thereof; (C) Authorizing the*

*Debtors to Enter into Asset Purchase Agreements with Stalking Horse Bidders; and*

*(D) Scheduling a Hearing on the Approval of the Sale of the Debtors' Remaining Assets Free*

*and Clear of All Encumbrances as Well as the Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases (II) an Order (A) Authorizing the Sale of the Debtors'*

*Remaining Assets Free and Clear of All Encumbrances, (B) Approving Asset Purchase*

*Agreements, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084). The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

*and Unexpired Leases, and (D) Waiving Stay Provisions Pursuant to Bankruptcy Rules 6004(H)*

*And 6006* [Docket No. 33].[2]

On February 14, 2020, the United States Bankruptcy Court for the District of Delaware (the "**Court**") held a hearing (the "**Hearing**") to consider certain of the requested by the Motion on an initial basis. At the Hearing, the Court indicated that it would grant the relief requested in the Motion on an initial basis subject to the inclusion of certain revisions to the De Minimis Asset Sale/Bidding Procedures Order based on the Court's ruling on the record at the Hearing.

A revised form of the proposed De Minimis Asset Sale/Bidding Procedures Order (the "**Revised Order**") is attached hereto as **Exhibit A**. A blackline comparing the De Minimis Asset Sale/Bidding Procedures Order to the Revised Order is attached hereto as **Exhibit B**.

Accordingly, the Debtors respectfully request that the Court enter the Revised Order at its earliest convenience without further notice or hearing.

Dated: Wilmington, Delaware  
    February 14, 2020

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ian J. Bambrick*
Pauline K. Morgan (No. 3650)
M. Blake Cleary (No. 3614)
Sean T. Greecher (No. 4484)
Ian J. Bambrick
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
EF@ycst.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

---

[2] Capitalized terms used herein, but not otherwise defined, have the meanings given to them in the Motion.

## **EXHIBIT A**

**Revised Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EARTH FARE, INC., *et al.*,[1] | ) | Case No. 20-10256 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Docket Ref. Nos. 33, 58, 62, & 70** |
| | ) | |

**ORDER (A) APPROVING DE MINIMIS ASSET SALE**
**PROCEDURES; (B) APPROVING CERTAIN BIDDING PROCEDURES,**
**ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND**
**MANNER OF NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS TO**
**ENTER INTO ASSET PURCHASE AGREEMENTS WITH STALKING HORSE**
**BIDDERS; AND (D) SCHEDULING A HEARING ON THE APPROVAL OF THE**
**SALE OF THE DEBTORS' REMAINING ASSETS FREE AND CLEAR OF ALL**
**ENCUMBRANCES AS WELL AS THE ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon consideration of the motion (the "**Motion**")[2] of Earth Fare, Inc. and EF Investment

Holdings, Inc. (each a "**Debtor**" and, collectively, the "**Debtors**") for the entry of this Order,

among other things: (a) approving the De Minimis Asset Sale Procedure; (b) authorizing and

approving the Bidding Procedures, attached hereto as **EXHIBIT A**, and the Assumption and

Assignment Procedures, and the form and manner of notice thereof; (c) authorizing, but not

directing, the Debtors to enter into Purchaser Agreements with one or more Stalking Horse

Purchasers subject to Court approval of any Bid Protections; and (d) scheduling the Sale Hearing

for the Court's consideration of the sale of the applicable Assets free and clear of the

Encumbrances, and authorizing the assumption and assignment of the Selected Target Contracts

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084).  The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

[2] Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion.

in connection therewith; and this Court having reviewed the Motion; and upon the First Day Declaration and upon the record of the hearing and all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B.    Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

C.    The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

D.    The Debtors have demonstrated that good and sufficient notice of the relief granted by this Bidding Procedures/De Minimis Asset Sale Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Bidding Procedures/De Minimis Asset Sale Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.    The Stalking Horse Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of:  (a) the identity of the Stalking Horse Purchaser or Stalking Horse Purchasers, including any affiliations with the Debtors; (b) the Assets that are the subject of each Stalking Horse Agreement; (c) a

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

copy of each Stalking Horse Agreement(s); (d) the purchase price provided in each Stalking Horse Agreement; (e) any proposed Bid Protections; and (f) the deposit paid by the Stalking Horse Purchaser(s)

F.    The De Minimis Asset Sale Notice, as described in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of:  (i) the identity of the applicable De Minimis Asset Purchaser, including any affiliations with the Debtors; (ii) the Assets that are the subject of each De Minimis Asset Sale Notice; (iii) significant terms of the proposed De Minimis Asset sale; and (iv) the purchase price to provided by each De Minimis Asset Purchaser.  No other or further notice will be required of the foregoing.

G.    The Bidding Procedures and the De Minimis Asset Sale Procedures are (i) fair, reasonable, and appropriate and (ii) designed to maximize recovery with respect to the Assets.

H.    The Assumption and Assignment Procedures and the De Minimis Asset Sale Procedures provided for herein and the Assumption Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures, the De Minimis Asset Sale Procedures, and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties to assert any Contract Objections.

I.    Entry of this Bidding Procedures/De Minimis Asset Sale Order is in the best interests of the Debtors, their estates, their creditors, and all other interested parties, and the legal and factual bases set forth in the Motion, the First Day Declaration, and at the hearing on the Motion establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     Those portions of the Motion seeking approval of (a) the De Minimis Asset Sale Procedures, (b) the Bidding Procedures, (c) the Assumption and Assignment Procedures, (d) the date and time of the Sale Hearing, (e) the procedures regarding entry into Stalking Horse Agreements, and (f) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Stalking Horse Notice, the Assumption Notice, the De Minimis Asset Sale Notice, substantially in the form attached to the Motion as **EXHIBIT IV**, and the Sale Notice, substantially in the form attached to the Motion as **EXHIBIT III** (subclauses (a)–(e) above, collectively, the "**Bidding and Auction Process/De Minimis Asset Sale Procedures**"), are hereby GRANTED to the extent set forth herein.

2.     Any objections to the Motion as it pertains to the Bidding and Auction Process/De Minimis Asset Sale Procedures or the relief granted by this Bidding Procedures/De Minimis Asset Sale Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

## I.     DE MINIMIS ASSET SALE PROCEDURES

3.     With regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers (each a "**De Minimis Asset Purchaser**") with an aggregate selling price equal to or less than $100,000, the following De Minimis Asset Sale Procedures are hereby approved:

   a.  The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party (other than notice to the De Minimis Notice Parties as set forth herein).

   b.  Any such transaction(s) shall be free and clear of all liens, with such liens attaching to the sale or transfer proceeds, if any, with the same validity,

extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer.

c.    At least eight (8) calendar days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached to the Motion as **EXHIBIT IV** (the "**De Minimis Asset Sale Notice**") by email, if available, and overnight delivery to (i) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases, Pachulski Stang Ziehl &Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Colin R. Robison, Esq. (bsandler@pszjlaw.com, rfeinstein@pszj law.com, and crobinson@pszj law.com); (ii) counsel to the administrative agent for the Debtors' prepetition lenders, Chapman & Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080, Attn: Stephen R. Tetro II, Esq., and Aaron M. Krieger, Esq. (stetro@chapman.com and akrieger@chapman.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward and Morgan L. Patterson (matthew.ward@wbd-us.com and morgan.patterson@wbd-us.com); (iii) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov); (iv) any known affected creditor asserting a lien on the De Minimis Asset subject to sale; (v) any Counterparty to an executory contract or unexpired lease (each, a "**Target Contract**," and collectively, the "**Target Contracts**") the Debtors seek to assume and assign pursuant to the De Minimis Asset Sale Notice and their counsel if known by the Debtors; and (vi) parties known by the Debtors, Streambank, or A&G to have an interest in the applicable Asset (collectively, the "**De Minimis Notice Parties**").

d.    The content of the De Minimis Asset Sale Notice shall consist of (i) identification of the De Minimis Assets being sold or transferred, (ii) identification of the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (iii) the selling price, (iv) any liabilities assumed in such De Minimis Asset Sale, and (v) the significant terms of the sale or transfer agreement, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators.

e.    For each of the Target Contracts to be sold pursuant to these procedures, a "**De Minimis Asset Sale Adequate Assurance Package**" will be sent to the applicable Counterparty, and their counsel if known by the Debtors, contemporaneously with the service of the De Minimis Asset Sale Notice via email, where available, and overnight mail to the applicable Counterparties without the need for any applicable Counterparty to execute a confidentiality agreement, provided that such Counterparty

agrees to keep the De Minimis Adequate Assurance Package confidential and only use or disclose the information as may be necessary to conduct due diligence on the proposed De Minimis Asset Purchaser or object to a proposed assignment of its Target Contract. The De Minimis Adequate Assurance Package must include financial statements, tax returns, bank account statements (to the extent such financial statements, tax returns, and bank account statements exist), any other information related to the proposed business to be conducted at the premises and any other documentation that the Debtors deem appropriate.

f.    If (i) no objections from the De Minimis Notice Parties are received by the Debtors or filed with the Court within seven (7) days after service of such De Minimis Asset Sale Notice (or such longer period as agreed to by the Debtors) and, (ii) to the extent the sale involves a Target Contract, no objections from the Counterparties to the Target Contracts are received by the Debtors or filed with the Court within seven (7) calendar days after service of the De Minimis Asset Sale Adequate Assurance Package (or such longer period as agreed to by the Debtors), then the Debtors are authorized to immediately consummate such sale or transfer; provided that in the event a De Minimis Asset Purchaser requests an order of the Court approving an assumption and assignment, the Debtors shall be permitted to obtain such order through the filing of a certification of counsel.

g.    If (i) any De Minimis Notice Party timely gives notice of an objection to the De Minimis Asset Sale or files an objection to any such sale or transfer with the Court within seven (7) days after service of such De Minimis Asset Sale Notice (or such longer period as agreed to by the Debtors) or (ii) any Counterparty timely gives notice of an objection to the De Minimis Asset Purchaser's adequate assurance of future performance or files an objection to the De Minimis Asset Purchaser's adequate assurance of future performance with the Court within seven (7) calendar days after service of the De Minimis Asset Sale Adequate Assurance Package (or such longer period as agreed to by the Debtors), then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing. Any filed objection or notice of an objection shall be served via email on the Objection Notice Parties, as defined below.

h.    In the event a hearing is required to resolve an objection and a written objection has not otherwise been filed with the Court, the objecting party shall file an objection within seven (7) calendar days of a demand by the Debtors and such objection shall be heard at the next scheduled omnibus hearing date that is at least seven (7) calendar days from the date of the filing of such objection or such other date set by the Court based upon the exigencies of the circumstances surrounding such assignment.

4.      The Debtors shall provide a written report or reports, within thirty (30) days after each calendar month (to the extent De Minimis Asset Sales were consummated for the relevant month), concerning any such sales or transfers made in accordance with the relief requested in this Motion (including the names of the purchasing parties and the types of amounts of the sales) to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

5.      The Debtors may withdraw from any De Minimis Sale prior to the consummation of the assumption and assignment of a Target Contract, in their sole discretion, in the event that there is a dispute regarding a cure amount or adequate assurance of future performance, which cannot be resolved in a manner that is satisfactory to the Debtors.

6.      Notwithstanding anything set forth to the contrary in a sale or transfer agreement, all De Minimis Asset Purchasers understand and agree that the Debtors are conveying their rights to the Target Contract as is, without warranties or representations of any kind, whether express or implied.

## II.      BIDDING PROCEDURES & AUCTION

7.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures/De Minimis Asset Sale Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety as if fully set forth in this Bidding Procedures/De Minimis Asset Sale Order.  The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Bidding Procedures/De Minimis Asset Sale Order.

8.      Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information,

the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures or the Sale, provided that the information was provided in accordance with this Bidding Procedures/De Minimis Asset Sale Order.

9.      For all purposes under the Bidding Procedures:  (a) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and any Stalking Horse Agreement shall be considered a Qualifying Bid; (b) should they decide to credit bid, Secured Creditors shall be deemed Qualifying Bidders and may seek to credit bid some or all of their claims within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by their Secured Claim Documentation; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured and may only credit bid claims secured by a first lien unless the bid is accompanied by a cash bid in an amount sufficient to satisfy all senior liens in such collateral; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets and subsets thereof.

10.      The Bidding Procedures shall apply to the Potential Bidders; the Qualifying Bidders; the submission, receipt, and analysis of all bids relating to the Sale; and the conduct of the Sale and the Auction.

11.      A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in **both** PDF and MS-WORD

format to the Objection Notice Parties so as to be received on or before **February 21, 2020, at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) may not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.**

12.     All persons or entities submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the applicable Purchase Agreement.

13.     If only one Qualifying Bid is submitted for certain Assets on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that this Court approve such Qualifying Bid and the transactions contemplated thereunder for those Assets. In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall conduct the Auction for the subject Assets on **February 25, 2020, at 10:00 a.m. (ET)**, at Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, or such other date and time as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids; *provided* that such other date and time is no earlier than one (1) business day following the delivery of such notice.

14.     Each Auction Bidder shall confirm in writing that:  (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction; and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

15.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best bid for the Assets or subsets thereof.

16.     The Debtors, subject to the terms of this Bidding Procedures/De Minimis Asset Sale Order and the Bidding Procedures, shall have the right as they may reasonably determine, in consultation with the Consultation Parties, to carry out the Bidding Procedures, including, without limitation, to:  (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine the Baseline Bids; (d) determine which bids are the Successful Bids and Back-Up Bids, each as it relates to the Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an Auction and the Sale Hearing in open court without further notice (other than the filing of a notice of such adjournment or cancellation on the docket of these Chapter 11 Cases, which notice may be the hearing agenda in the case of a Sale Hearing) or as provided in this Bidding Procedures/De Minimis Asset Sale Order and in the Bidding Procedures; (g) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion as it relates to a Sale at any time with or without prejudice.

### III.    DESIGNATION OF STALKING HORSE PURCHASERS

17.    In the event that the Debtors, with the consent of the administrative agent for the Debtors' prepetition lenders, enter into a Stalking Horse Agreement on or prior to the Stalking Horse Designation Deadline of **February 19, 2020,** the Debtors shall file with the Court and serve on the Motion Notice Parties a Stalking Horse Notice.  If the Stalking Horse Agreement satisfies the following conditions—(a) the Break-Up Fee does not exceed three percent (3.0%) of the cash purchase price; (b) the Expense Reimbursement does not exceed the lesser of $50,000 and one and a half percent (1.5%) of the cash purchase price (c) the Consultation Parties have provided their affirmative consent to the stalking horse designation; and (d) the Stalking Horse is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel approving the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse without the need for further hearing, which shall be accompanied by a declaration in support of the Debtors' designation.  If a Stalking Horse Purchaser and Stalking Horse Agreement are designated that do not satisfy each of the conditions (a) through (d) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. the day prior to such hearing.

### IV.    ASSUMPTION AND ASSIGNMENT PROCEDURES

18.    The following Assumption and Assignment Procedures are hereby approved:

a.    On or before **February 14, 2020** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to a Target Contract, and their counsel if known by the Debtors, a notice, substantially

in the form attached to the Motion as **EXHIBIT II** (the "**Assumption Notice**").

b.      The Assumption Notice shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts.

c.      If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "**Additional Contracts**"), as soon as practicable thereafter and in no event less than one (1) business day before the commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within two (2) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than two (2) days after the Assumption Notice Deadline.  In either case, service of an Assumption Notice after the Assumption Notice Deadline shall be via overnight mail.

d.      Within four (4) hours of the conclusion of the Auction, the Debtors shall file with the Court, serve via email where available, and post to the Claims Agent Website a notice identifying the Successful Bidder(s) (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Target Contracts (as defined below), and (iii) the proposed assignee(s) of such Selected Target Contracts.

e.      No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty, and their counsel if known by the Debtors, and all parties requesting notice under Bankruptcy Rule 2002.

f.      If a Counterparty objects to (i) the Cure Amount for its Target Contract or (ii) the Debtors' ability to assume and assign the Target Contract, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**"). Any Contract Objection shall:  (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on February 21, 2020** (the "**Contract Objection Deadline**"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the

Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto.  Any objections to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Purchaser and a De Minimis Asset Purchaser must be raised **at the commencement of, or prior to, the Sale Hearing**.  Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures set forth below.

g.    The "**Objection Notice Parties**" are as follows: (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary, Esq., Sean T. Greecher, Esq., and Ian J. Bambrick, Esq. (mbcleary@ycst.com, sgreecher@ycst.com, and ibambrick@ycst.com); (ii) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases, Pachulski Stang Ziehl &Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Colin R. Robison, Esq. (bsandler@pszjlaw.com, rfeinstein@pszj law.com, and crobinson@pszj law.com); (iii) counsel to the administrative agent for the Debtors' prepetition lenders, Chapman & Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080, Attn: Stephen R. Tetro II, Esq., and Aaron M. Krieger, Esq. (stetro@chapman.com and akrieger@chapman.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward and Morgan L. Patterson (matthew.ward@wbd-us.com and morgan.patterson@wbd-us.com); (iv) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov); and (v) counsel to each Stalking Horse Purchaser, if any.

h.    At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "**Selected Target Contract**," and collectively, the "**Selected Target Contracts**").  The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately selected as Selected Target Contracts.

i.    If no Contract Objection is timely received with respect to a Selected Target Contract, then upon the closing of the Sale and payment of any Cure Amounts set forth in the Assumption Notice: (i) the Counterparty to

such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Target Contract and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling notwithstanding anything to the contrary in such Selected Target Contract or any other related document and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

j.      To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that any undisputed portion of the cure amount is paid upon the effective date of the assumption and assignment of the Selected Target Contract and any disputed portion of the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.  To the extent the parties are unable to consensually resolve a Cure Dispute, the Debtors shall file and serve a notice for a hearing for the Court to consider the applicable Cure Dispute at the next scheduled omnibus hearing, which shall be at least fourteen (14) days from the date of the filing of the notice unless the Debtors and the objecting Counterparty agree to an earlier hearing.  The disputed portion of a cure amount shall be paid to the applicable Counterparty within seven (7) calendar days of the resolution of the Cure Dispute.

k.      Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts, as soon as

practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the impacted Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than seven (7) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order and paragraph 14(i) above.

19.     Other than as provided by the De Minimis Asset Sale Procedures, the Debtors' decision to assume and assign any Target Contract is subject to this Court's further approval and the closing of the Sale.  Accordingly, other than as provided by the De Minimis Asset Sale Procedures, absent this Court's approval and the closing of the Sale, no Target Contracts shall be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

20.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties.  The Assumption Notice is:  (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to any Successful Bidder some or all of the Target Contracts and (ii) afford the Counterparties the opportunity to exercise any rights impacted by the Motion and the relief granted by this Bidding Procedures/De Minimis Asset Sale Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

21.     The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of all parties with respect thereto shall be reserved.

22.    As part of its bid, each Qualifying Bidder must provide the Debtors information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to such potential bidder; (b) the name of the proposed counterparty that will act as the assignee of any Target Contract; and (c) a contact person for the proposed assignee that the Counterparty may directly contact in connection with the adequate assurance of future performance.  To the extent available, the Adequate Assurance Information may also include (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns, and annual reports.  Furthermore, given that the Debtors will submit evidence at the Sale Hearing that all requirements for the assumption and assignment of the Selected Target Contracts have been satisfied, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

23.    The Debtors, the Consultation Parties, and the Counterparties to any Target Contracts included in an applicable bid shall keep confidential all Adequate Assurance Information provided to them and shall be permitted to use and disclose such Adequate Assurance Information only as provided in this Bidding Procedures/De Minimis Asset Sale Order unless the Qualifying Bidder that provided such Adequate Assurance Information otherwise consents in writing.  Each Counterparty in receipt of Adequate Assurance Information shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Paragraph.

Such Counterparty may not use or disclose, except to representatives, attorneys, advisors, and financing sources (collectively, "**Representatives**"), any confidential Adequate Assurance Information for any purpose other than:  (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; (b) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance; and (c) if the proposed assignee is successful and becomes a party to the Target Contract, on a confidential basis, in the ordinary course of the contractual relationship.  Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). This Bidding Procedures/De Minimis Asset Sale Order authorizes the filing of any such Assignment Objections under seal, and on the docket with such non-public information redacted, without further order of this Court; *provided*, that unredacted versions of such Assignment Objections shall be served upon the Debtors, Consultation Parties, and the U.S. Trustee, with a copy to the Court's chambers; *provided, further*, that parties shall have a period of ten (10) business days after the filing of any redacted Assignment Objection to object to the sealing of any information.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Bidding Procedures/De Minimis Asset Sale Order.

## V.    NOTICE PROCEDURES FOR THE SALE AND DE MINIMIS ASSET SALES

24.    The Stalking Horse Notice, the Assumption Notice, the Sale Notice, the Bidding Procedures, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the De Minimis Asset Sale Notice, the De Minimis Asset Sale Procedures, and the objection periods

associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the De Minimis Asset Sale Procedures.

25.    The assumption and assignment to the Successful Bidder of the Target Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and such notice and objection periods are hereby approved.

26.    Within two (2) business days of the entry of this Bidding Procedures/De Minimis Asset Sale Order, the Debtors shall serve the Sale Notice on: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to the administrative agent for the Debtors' prepetition lenders; (3) all parties known by the Debtors to assert a lien on any of the Assets; (4) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets in the Debtors within the twelve (12) months prior to the Petition Date; (5) the Office of the United States Attorney for the District of Delaware; (6) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (7) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (8) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (9) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (10) all of the Debtors' other known creditors and equity security holders, including the Counterparties; (11) all other parties that had filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date; and (12) proposed counsel to the Official Committee of Unsecured Creditors (collectively, the "**Sale Notice Parties**").

27.     The Debtors shall post any Stalking Horse Notice, the Sale Notice, De Minimis Asset Sale Notice, and this Bidding Procedures/De Minimis Asset Sale Order on the website of the Debtors' claims and noticing agent, at https://dm.epiq11.com/case/EFI/.

## VI.    SALE HEARING

28.     The Debtors will file and serve a proposed Sale Order **on or before 4:00 p.m. (ET) on February 20, 2020**.  Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on February 24, 2020** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Objection Notice Parties.

29.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and to the consummation and performance of the Sale contemplated by a Purchase Agreement with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

30.     The Debtors shall have until **5:00 p.m. (ET) on the day prior to the Sale Hearing** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

31.     The Sale Hearing shall be held before this Court on **February 27, 2020, at 2:00 p.m.** (prevailing Eastern Time) before the Honorable Karen B. Owens, United States Bankruptcy

Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

## VII.   **MISCELLANEOUS**

32.   The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

33.   In the event that there is a conflict between this Bidding Procedures/De Minimis Asset Sale Order and the Bidding Procedures, this Bidding Procedures/De Minimis Asset Sale Order shall control and govern.

34.   Prior to mailing the Assumption Notice, the Sale Notice, and any De Minimis Asset Sale Notice, as applicable, the Debtors may fill-in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Bidding Procedures/De Minimis Asset Sale Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

35.   All persons or entities that participate in the Sale or a De Minimis Asset Sale shall be deemed to have knowingly and voluntarily:  (a) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures/De Minimis Asset Sale Order (including any disputes relating to the bidding process, the Auction, or any Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

36.   For the avoidance of doubt, the Assets shall not include any of the Rejected Leases or Personal Property addressed by, and defined in, that certain *Debtors' First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Unexpired Leases* Nunc

Pro Tunc *to the Petition Date* [Docket No. 11] and this Order does not govern or control, in any way, such Rejected Leases and Personal Property.

37.     For purposes of section 363(b)(1) of the Bankruptcy Code, if the Debtors seek to transfer any personally identifiable information about individuals through or in connection with a Sale or De Minimis Asset Sale, the Debtors will promptly alert the United States Trustee appointed in these Chapter 11 Cases, who will determine whether appointment of a consumer privacy ombudsman is required.

38.     This Bidding Procedures/De Minimis Asset Sale Order shall be effective immediately upon entry and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules is expressly waived.   The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Bidding Procedures/De Minimis Asset Sale Order and may, in their reasonable discretion and without further delay, take any action and perform any act authorized or approved under this Bidding Procedures/De Minimis Asset Sale Order.   Further, to the extent applicable, the requirements of Bankruptcy Rule 6006(e) are hereby waived.

39.     The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

40.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

**EXHIBIT A**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EARTH FARE, INC., *et al.*,[1] | ) | Case No. 20-10256 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Docket Ref. Nos. 33, 58, 62, 70, & {●}** |
| | ) | |

## BIDDING PROCEDURES

On February 4, 2020 (the "**Petition Date**"), Earth Fare, Inc. ("**Earth Fare**") and EF Investment Holdings, Inc. (each a "**Debtor**" and, collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On February 14, 2020, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. {●}] (the "**Bidding Procedures/De Minimis Asset Sale Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**") to be employed by the Debtors in connection with a sale of substantially all of their assets, including but not limited to the tradename and related intellectual property, non-residential real property leases (the "**Real Property Leases**"), executory contracts, furniture, fixtures and equipment, liquor licenses, and any other miscellaneous assets (collectively, the "**Assets**"), or components thereof.

**Any party interested in bidding on the Assets should contact (i) for real-property, Joseph M. McKeska at A&G Real Estate Partners at (630) 366-2304 or by email at jmckeska@agrep.com, (ii) for furniture, fixtures, and equipment, Kevin Pangrcic at Hilco Fixtures at 248-631-9346 or by email at kpangrcic@gmail.com and (iii) for intangible property Richelle Kalnit at Hilco Streambank at 212.993.7214 or by email at rkalnit@hilcoglobal.com.**

### 1.    Summary of Important Dates

| | |
|---|---|
| Deadline to Serve Assumption Notice | February 14, 2020 |
| Stalking Horse Designation Deadline | February 19, 2020 |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084).  The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

| Deadline to file proposed Sale Order | February 20, 2020, at 4:00 p.m. (ET) |
|---|---|
| Bid Deadline | February 21, 2020, at 5:00 p.m. (ET) |
| Deadline to Object to Assumption Notice | February 21, 2020, at 4:00 p.m. (ET) |
| Deadline to Serve Adequate Assurance Information | February 22, 2020 |
| Deadline to Object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | February 24, 2020, at 4:00 p.m. (ET) |
| Auction Commencement | February 25, 2020, at 10:00 a.m. (ET) |
| Deadline to Object to Adequate Assurance of Stalking Horse Purchaser | February 26, 2020, at 4:00 p.m. (ET) |
| Deadline to Object to Conduct of Auction, Designation of Successful Bidders, and Adequate Assurance | At the commencement of the Sale Hearing |
| Sale Hearing | February 27, 2020, at 2:00 p.m. (ET) |

### 2.      Assets to be Sold

The Debtors are offering for sale all of the Assets.[2]  Potential Bidders (as defined below) may bid on all or any number or combination of the Assets.

### 3.      Participation Requirements

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder.**"   To become a Qualifying Bidder, a Potential Bidder must submit to the Debtors and their advisors:

(a)      documentation identifying the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Sale;

(b)      an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

---

[2]   The Debtors may withdraw any Asset for sale or provide a different process if the Debtors, in consultation with the Consultation Parties, reasonably believe that the recovery on such assets may be meaningful improved if sold pursuant to different procedures than the ones set forth herein.

(c)     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a bona fide interest in consummating a Sale; and

(d)     sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a Sale; and

(e)     a non-binding written indication of interest identifying the Stores in which the party is interest in purchasing.

Notwithstanding the foregoing, a counterparty to a Real Property Lease (each a "**Lease Counterparty**") bidding thereon (a "**Landlord Lease Bid**") shall not be required to comply with subparagraph (b) above.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, each of the Consultation Parties (as defined below), or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated Sale.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any designated Stalking Horse Purchaser (as defined below) shall be considered a Qualifying Bidder and a Stalking Horse Agreement (as defined below) shall be considered a Qualifying Bid (as defined below); and (ii) the Debtors may consider a combination of bids for the Assets in determining whether the Potential Bidders constitute Qualifying Bidders.

### 4.     Stalking Horse Designation

On or prior to **February 19, 2020** (the "**Stalking Horse Designation Deadline**"), the Debtors may, in consultation and with consent of the Consultation Parties, enter into an agreement or agreements (each a "**Stalking Horse Agreement**") with an interested bidder or interested bidders to serve as stalking horse bidders (each a "**Stalking Horse Purchaser**") to acquire applicable Assets without the need for further notice and hearing; *provided, however*, that (a) any break-up fee (a "**Break-Up Fee**") does not exceed three percent (3.0%) of the cash purchase price; (b) any expense reimbursement (an "**Expense Reimbursement**" and collectively with any associated Break-Up Fee, the "**Bid Protections**") does not exceed the lesser of $50,000 and one and a half percent (1.5%) of the cash purchase price; and (c) the Stalking Horse Purchaser is not an insider (as defined in Section 101(31) of the Bankruptcy Code). If the Debtors designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, in accordance with the proviso at the end of the prior sentence, they shall file for each Stalking Horse Purchaser a Stalking Horse Notice in accordance with the Bidding Procedures/De Minimis Asset Sale Order, submit an order approving the same under certification of counsel, and file a declaration in support of the designation. In addition, within one (1) day of the entry of any order approving a Stalking Horse Purchaser, the Debtors shall serve via email where available and overnight mail the Adequate Assurance Information (as

defined below) for the Stalking Horse Purchaser on any counterparties to any contracts or leases to be assumed and assigned (or assumed) in connection with the proposed Sale.

The Debtors, however, reserve the right, with the consent of the administrative agent for the Debtors' prepetition lenders, to file a Stalking Horse Notice, on or before the Stalking Horse Designation Deadline, to designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, that do not meet the qualifications in the immediate prior paragraph and seek a hearing on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. the day prior to such hearing. Notwithstanding anything herein to the contrary and for the avoidance of doubt, the designation of any Stalking Horse (i) that is an insider, (ii) that has not otherwise been consented to by each of the applicable Consultation Parties, or (iii) to which clauses (i) and (ii) apply, shall only be authorized and approved after the notice and a hearing provided for in the prior sentence.

5. **Bankruptcy Court Jurisdiction**

Any Potential Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated Sale documents of the Auction Bidders (as defined below), (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

6. **Form of Agreement**

Potential Bidders intending to submit bids must include with their bids an asset purchase agreement (a "**Purchase Agreement**"). The Purchase Agreement shall be: (i) if a Stalking Horse Purchaser has been designated for the applicable Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in a Stalking Horse Agreement, if applicable and include a redline marked against the Stalking Horse Agreement, and (ii) otherwise, in the form of the Purchase Agreement to be provided by the Debtors and include a redline marked against the form Purchase Agreement.

7. **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (i) for real-property, Joseph M. McKeska at A&G Real Estate Partners at (630) 366-2304 or by email at jmckeska@agrep.com, (ii) for furniture, fixtures, and equipment, Kevin Pangrcic at Hilco Fixtures at 248-631-9346 or by email at kpangrcic@gmail.com and (iii) for intangible property Richelle Kalnit at Hilco Streambank at 212.993.7214 or by email at rkalnit@hilcoglobal.com.

The due diligence period shall extend through and include the Bid Deadline (as defined below).  The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.  The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is not appropriate for disclosure to a Qualifying Bidder.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and a contemplated Sale.

8. **Bid Requirements**

Other than in the case of a bid submitted by a Stalking Horse Purchaser, to be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "**Bid Requirement**"):

(a)     be in writing;

(b)     fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)     set forth the purchase price to be paid by such Qualifying Bidder for the Assets in question;

(d)     if a bid includes a credit bid under section 363(k), evidence of the amount of the claim, the Assets constituting the collateral securing the claim, and evidence of the grant, perfection, priority, and validity of the lien (the "**Secured Claim Documentation**");

(e)     not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures, such as in section 12 below, and the Bidding Procedures/De Minimis Asset Sale Order);

(f)     state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(g)     specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase the applicable Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement, as applicable;

(h)     state that such Qualifying Bidder's offer is formal, binding, and unconditional and is irrevocable until two (2) business days after the closing of the sale of the Assets;

(i)     state that such Qualifying Bidder is financially capable of consummating the Sale contemplated by the bid and provide written evidence in support thereof, which, in the case of a Landlord Lease Bid, such wherewithal shall be limited to any cash consideration included in the Lease Counterparty's bid;

(j)     contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the Sale contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve via email where available and overnight mail, **within one (1) day after such receipt**, such information on any counterparties to any contracts or leases being assumed and assigned (or assumed) in connection with the Sale, which shall be provided to each affected counterparty, and their counsel if known by the Debtors, on a confidential basis (the "**Adequate Assurance Information**");

(k)     identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the contemplated Sale;

(l)     a commitment to close the Sale by **February 28, 2020**, or such other date as agreed to by the Debtors in consultation with the Consultation Parties;

(m)     not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment;

(n)     in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, (B) any Break-Up Fee, (C) any Expense Reimbursement, and (D) the greater of $25,000 and ten percent (10%) of the purchase price under the Stalking Horse Agreement;

(o)     not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

(p)     contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets in question, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements,

representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the proposed Sale;

(q) provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest or best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below) for the applicable Assets;

(r) include written evidence of authorization and approval with respect to the submission, execution, and delivery of the subject term sheet;

(s) provide a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be held in a noninterest-bearing escrow account to be identified and established by the Debtors, **provided that with respect to a Landlord Lease Bid, the landlord may deduct from its Deposit the amount of any undisputed monetary obligations that constitute the cure cost for the applicable real property lease (the "<u>Cure Cost</u>")**; and

(t) provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit.

**Notwithstanding the foregoing, if a Landlord Lease Bid is submitted by a Lease Counterparty, such Lease Counterparty need not comply with subparagraph 8(j) above.**

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is initially deemed not a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and a Sale.

## 9. <u>Bid Deadline</u>

A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in **both** PDF and MS-WORD format to the Objection Notice Parties so as to be received on or before **February 21, 2020, at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these

Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) may not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.**

### 10.    Evaluation of Qualifying Bids

The Debtors will deliver by no later than 6:00 p.m. (ET) on the day of the Bid Deadline, copies of all bids from Qualifying Bidders to each of the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than 8:00 p.m. (ET) on the day before the commencement of the Auction.  In the event that a bid is determined not to be a Qualifying Bid, including with respect to any proposed credit bid amount, the Qualifying Bidder shall be notified by the Debtors and shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors and to provide additional Secured Claim Documentation; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to commencing the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid as to the applicable Assets for purposes of constituting the opening bid of the Auction (each a "**Baseline Bid**" and the Qualifying Bidder submitting each such Baseline Bid, a "**Baseline Bidder**") and shall notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid or Baseline Bids no later than the opening of the Auction.

### 11.    No Qualifying Bids

If no timely Qualifying Bids—other than any Stalking Horse Purchaser's Qualifying Bid—are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that the Stalking Horse Purchaser (if any) be deemed the Successful Bidder (as defined below) and that the Court approve the Stalking Horse Agreement (if any) and the Sales contemplated thereunder.

### 12.    Right to Credit Bid

Any party who has a valid, perfected, and enforceable lien on any Assets of the Debtors' estates that is not subject to an objection by the commencement of the Auction (a "**Secured Creditor**") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by the Secured Claim Documentation, provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided, further*, that, if the Secured Creditor's lien is subsequently avoided, then such Qualified Bidder shall be subject to disgorgement.  **Each Lease Counterparty to a Real Property Lease proposed to be sold or transferred at the Auction (as defined below) may credit bid all or a portion of the applicable Cure Cost.  If such Lease Counterparty is the**

**Successful Bidder on the applicable Real Property Lease and it is later determined by this Court or agreement by and among the Debtors and Lease Counterparty that the actual Cure Cost is a lesser amount, then the Lease Counterparty shall pay the difference in cash within seven (7) business days of the entry of the decision of the Court or effective date of the agreement between the Debtors and the Lease Counterparty.**

13.     <u>Auction</u>

If the Debtors timely receive one or more Qualifying Bids for any of the Assets (inclusive of any Stalking Horse Purchaser's Qualifying Bid), then the Debtors shall conduct an auction (the "**Auction**"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets or subsets thereof, which will be determined by considering, among other things, the following non-binding factors:

      i.       the terms of the Purchase Agreement requested by each Auction Bidder;

      ii.       the extent to which such terms are likely to delay closing of a Sale, the cost to the Debtors and their estates of such modifications or delay, and any incremental financing being offered to accommodate any delay;

      iii.       the total consideration to be received by the Debtors and their estates;

      iv.       the Sale structure and execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval;

      v.       the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in any applicable Stalking Horse Agreement;

      vi.       the impact on interested parties, including, but not limited to, employees, landlords, and vendors; and

      vii.       any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

      i.       the Auction shall commence on **February 25, 2020, at 10:00 a.m. (ET)** (the "**Auction Date**"), at Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801;

      ii.       only a Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (collectively, the "**Auction Bidders**") shall be entitled to make any bids at the Auction;

iii.    the Auction Bidders shall appear in person at the Auction or through a duly authorized representative;

iv.    only the Debtors, the Auction Bidders, the Consultation Parties, and the Debtors' creditors and equity holders, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any creditors and equity holders desiring to attend the Auction must provide counsel for the Debtors one (1) business day's written notice of their intent to attend the Auction;

v.    the Debtors and their professional advisors shall direct and preside over the Auction in consultation with the Consultation Parties.  The Auction shall be transcribed;

vi.    the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

vii.    bidding shall commence at the amount of the Baseline Bid or Baseline Bids, and the Auction Bidders may submit successive bids in increments of at least the greater of $25,000 and ten percent (10%) of the current highest or best bid (or Baseline Bid for the first round) (the "**Bid Increment**"); provided that:  (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest or best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of, if applicable, (A) any Break-Up Fee and (B) any Expense Reimbursement; (iii) any successive bid made by any Stalking Horse Purchaser shall only be required to equal the sum of the amount of (A) the applicable Baseline Bid or the then-highest or best bid, as applicable, plus (B) the Bid Increment, less (C) the sum of the amount of, if applicable, (X) any Break-Up Fee and (Y) any Expense Reimbursement; and (iv) the Debtors, in consultation with the Consultation Parties, reserve the right to modify the Bid Increment during the course of the Auction and shall do so on the record at the Auction;

viii.    the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

ix.    all material terms of the bid that is deemed to be the highest or best bid for the Assets or a specific subset thereof for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest or best bid or bids;

x.    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional

procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures/De Minimis Asset Sale Order, and (ii) disclosed to the Auction Bidders;

xi.     any Potential Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated Sale documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xii.    Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

xiii.   the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the Sales contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

xiv.    upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties and subject to Court approval,

the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (each a "**Successful Bid**").  In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the particular assets to be sold, the likelihood of the bidder's ability to close a Sale and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to the Debtors' estates.  The bidders submitting such Successful Bids, which may be a Stalking Horse Purchaser, shall each become a "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable.  The Debtors may, in consultation with the Consultation Parties, designate Back-Up Bids (and corresponding Back-Up Bidders) to purchase the applicable Assets in the event that the Successful Bidder or Successful Bidders do not close the Sale; and

xv.    prior to the Sale Hearing, each Successful Bidder shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the applicable Successful Bid was made.

EACH SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND ANY BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.

## 14.    <u>Sale Hearing</u>

Each Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the applicable Stalking Horse Agreement) will be subject to approval by the Court.  The hearing to approve each Successful Bid and any Back-Up Bid (the "**Sale Hearing**") shall take place on **February 27, 2020, at 2:00 p.m. (ET)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Chapter 11 Cases.  **For the avoidance of doubt, by no later than the time of announcement of any Baseline Bid for the Auction, the Debtors may determine, in consultation with the Consultation Parties, to withdraw the Assets or any subset thereof, from the Auction and sale process, and adjourn the Sale Hearing with respect to the withdrawn Assets on the terms set forth herein.**

At the Sale Hearing, the Debtors will seek entry of an order that, among other things:

i.      authorizes and approves each Sale to a Successful Bidder (and, if applicable, the Back-Up Bidder), pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement or Purchase Agreement executed by the Successful Bidder (and, if applicable the Back-Up Bidder), and that the Assets being transferred in such Sale shall be transferred free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code, with such Encumbrances attaching to the sale or transfer proceeds, if any, with the same validity, extent, and priority as had attached to such sold Assets immediately prior to such sale or transfer;

ii.     unless otherwise ordered by the Court, directing that all Encumbrances on the Assets that are sold shall attach to the cash proceeds generated from the sale of such Assets in the same order of priority as they existed prior to the consummation of such sale;

iii.    finding that each Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

iv.     as appropriate, exempting the Sale(s) and conveyance(s) of the applicable Assets from any transfer tax, stamp tax, or similar tax, or deposit under any applicable bulk sales statute.

## 15.    **Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale by **February 28, 2020**, or such date as may be extended by the Debtors, in consultation with the Consultation Parties, and with the agreement of the applicable Back-Up Bidder, the Back-Up Bid will be deemed to be the Successful Bid, the applicable Back-Up Bidder will be deemed to be a Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the applicable Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties, as soon as practicable, but not later than **February 29, 2020**, which deadline may be extended by the Debtors, in consultation with the Consultation Parties, to **March 31, 2020**.

## 16.    **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or a Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing.  The deposit of each Successful Bidder or, if a Sale is closed with the relevant Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for applicable Sale.  If a Successful Bidder (or, if a Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) fails to consummate a Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up

Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

**17.    Notice and Consultation Parties**

(a)    The term "**Notice Parties**" as used in these Bidding Procedures shall mean:

    (i)    the Debtors, Attn: Charles Goad (chuck.goad@fticonsulting.com); and

    (ii)    counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Attn: M. Blake Cleary, Esq., Sean T. Greecher, Esq., and Ian J. Bambrick, Esq; (mbcleary@ycst.com, sgreecher@ycst.com, and ibambrick@ycst.com).

(b)    The term "**Consultation Parties**" as used in these Bidding Procedures shall mean:

    (i)    counsel to the administrative agent for the Debtors' prepetition lenders, Chapman & Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080, Attn: Stephen R. Tetro II, Esq., and Aaron M. Krieger, Esq. (stetro@chapman.com and akrieger@chapman.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward and Morgan L. Patterson (matthew.ward@wbd-us.com and morgan.patterson@wbd-us.com); and

    (ii)    counsel to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases, Pachulski Stang Ziehl &Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Colin R. Robison, Esq. (bsandler@pszjlaw.com, rfeinstein@pszj law.com, and crobinson@pszj law.com) (the "**Creditors' Committee**").

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

If a member of the Creditors' Committee submits a Qualifying Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; *provided* that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

In the event that any Consultation Party (other than the Creditors' Committee) or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged, and released without further action; *provided* that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

18.    <u>**Reservation of Rights**</u>

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

**EXHIBIT B**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EARTH FARE, INC., *et al.*,[1] | ) | Case No. 20-10256 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Docket Ref. Nos. 33, 58, 62, & 70** |
|  | ) |  |

## ORDER (A) APPROVING DE MINIMIS ASSET SALE PROCEDURES; (B) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF; (C) AUTHORIZING THE DEBTORS TO ENTER INTO ASSET PURCHASE AGREEMENTS WITH STALKING HORSE BIDDERS; AND (D) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF THE DEBTORS' REMAINING ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES AS WELL AS THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon consideration of the motion (the "**Motion**")[2] of Earth Fare, Inc. and EF Investment Holdings, Inc. (each a "**Debtor**" and, collectively, the "**Debtors**") for the entry of this Order, among other things: (a) approving the De Minimis Asset Sale Procedure; (b) authorizing and approving the Bidding Procedures, attached hereto as **EXHIBIT A**, and the Assumption and Assignment Procedures, and the form and manner of notice thereof; (c) authorizing, but not directing, the Debtors to enter into Purchaser Agreements with one or more Stalking Horse Purchasers subject to Court approval of any Bid Protections; and (d) scheduling the Sale Hearing for the Court's consideration of the sale of the applicable Assets free and clear of the Encumbrances, and authorizing the assumption and assignment of the Selected Target Contracts

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084). The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

[2] Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion.

25992686.10

in connection therewith; and this Court having reviewed the Motion; and upon the First Day

Declaration and upon the record of the hearing and all of the proceedings had before this Court;

and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334 and the Amended Standing Order.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408

and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter

a final order consistent with Article III of the United States Constitution.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

D.      The Debtors have demonstrated that good and sufficient notice of the relief

granted by this Bidding Procedures/De Minimis Asset Sale Order has been given and no further

notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by

this Bidding Procedures/De Minimis Asset Sale Order has been afforded to those parties entitled

to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Stalking Horse Notice, as described in the Motion, is appropriate and

reasonably calculated to provide all interested parties with timely and proper notice of:  (a) the

identity of the Stalking Horse Purchaser or Stalking Horse Purchasers, including any affiliations

with the Debtors; (b) the Assets that are the subject of each Stalking Horse Agreement; (c) a

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

copy of each Stalking Horse Agreement(s); (d) the purchase price provided in each Stalking

Horse Agreement; (e) any proposed Bid Protections; and (f) the deposit paid by the Stalking

Horse Purchaser(s)

F.        The De Minimis Asset Sale Notice, as described in the Motion, is appropriate and

reasonably calculated to provide all interested parties with timely and proper notice of:  (i) the

identity of the applicable De Minimis Asset Purchaser, including any affiliations with the

Debtors; (ii) the Assets that are the subject of each De Minimis Asset Sale Notice;

(iii) significant terms of the proposed De Minimis Asset sale; and (iv) the purchase price

provided by each De Minimis Asset Purchaser.  No other or further notice will be required of the

foregoing.

G.        The Bidding Procedures and the De Minimis Asset Sale Procedures are (i) fair,

reasonable, and appropriate and (ii) designed to maximize recovery with respect to the Assets.

H.        The Assumption and Assignment Procedures and the De Minimis Asset Sale

Procedures provided for herein and the Assumption Notice are reasonable and appropriate and

consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

The Assumption and Assignment Procedures, the De Minimis Asset Sale Procedures, and the

Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties

to assert any Contract Objections.

I.        Entry of this Bidding Procedures/De Minimis Asset Sale Order is in the best

interests of the Debtors, their estates, their creditors, and all other interested parties, and the legal

and factual bases set forth in the Motion, the First Day Declaration, and at the hearing on the

Motion establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.        Those portions of the Motion seeking approval of (a) the De Minimis Asset Sale Procedures, (b) the Bidding Procedures, (c) the Assumption and Assignment Procedures, (d) the date and time of the Sale Hearing, (e) the procedures regarding entry into Stalking Horse Agreements, and (f) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Stalking Horse Notice, the Assumption Notice, the De Minimis Asset Sale Notice, substantially in the form attached to the Motion as **EXHIBIT IV**, and the Sale Notice, substantially in the form attached to the Motion as **EXHIBIT III** (subclauses (a)–(e) above, collectively, the "**Bidding and Auction Process/De Minimis Asset Sale Procedures**"), are hereby GRANTED to the extent set forth herein.

2.        Any objections to the Motion as it pertains to the Bidding and Auction Process/De Minimis Asset Sale Procedures or the relief granted by this Bidding Procedures/De Minimis Asset Sale Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

## I.        DE MINIMIS ASSET SALE PROCEDURES

3.        With regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers (each a "**De Minimis Asset Purchaser**") with an aggregate selling price equal to or less than $100,000, the following De Minimis Asset Sale Procedures are hereby approved:

    a.    The Debtors are authorized to consummate such transaction(s) if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interest of their estates without further order of the Court or notice to any party (other than notice to the De Minimis Notice Parties as set forth herein).

    b.    Any such transaction(s) shall be free and clear of all liens, with such liens attaching to the sale or transfer proceeds, if any, with the same validity,

extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer.

c.    At least eight (8) calendar days prior to the proposed closing of any De Minimis Asset Sale, the Debtors shall give written notice of each sale substantially in the form attached to the Motion as **EXHIBIT IV** (the "**De Minimis Asset Sale Notice**") by email, if available, and overnight delivery to (i) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases, Pachulski Stang Ziehl &Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Colin R. Robison, Esq. (bsandler@pszjlaw.com, rfeinstein@pszj law.com, and crobinson@pszj law.com); (ii) counsel to the administrative agent for the Debtors' prepetition lenders, Chapman & Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080, Attn: Stephen R. Tetro II, Esq., and Aaron M. Krieger, Esq. (stetro@chapman.com and akrieger@chapman.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward and Morgan L. Patterson (matthew.ward@wbd-us.com and morgan.patterson@wbd-us.com); (iii) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov); (iv) any known affected creditor asserting a lien on the De Minimis Asset subject to sale; (v) any Counterparty to an executory contract or unexpired lease (each, a "**Target Contract**," and collectively, the "**Target Contracts**") the Debtors seek to assume and assign pursuant to the De Minimis Asset Sale Notice and their counsel if known by the Debtors; and (vi) parties known by the Debtors, Streambank, or A&G to have an interest in the applicable Asset (collectively, the "**De Minimis Notice Parties**").

d.    The content of the De Minimis Asset Sale Notice shall consist of (i) identification of the De Minimis Assets being sold or transferred, (ii) identification of the De Minimis Asset Purchaser and their relationship (if any) to the Debtors, (iii) the selling price, (iv) any liabilities assumed in such De Minimis Asset Sale, and (v) the significant terms of the sale or transfer agreement, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers, and liquidators.

e.    For each of the Target Contracts to be sold pursuant to these procedures, a "**De Minimis Asset Sale Adequate Assurance Package**" will be sent to the applicable Counterparty, and their counsel if known by the Debtors, contemporaneously with the service of the De Minimis Asset Sale Notice via email, where available, and overnight mail to the applicable Counterparties without the need for any applicable Counterparty to execute a confidentiality agreement, provided that such Counterparty

agrees to keep the De Minimis Adequate Assurance Package confidential and only use or disclose the information as may be necessary to conduct due diligence on the proposed De Minimis Asset Purchaser or object to a proposed assignment of its Target Contract.  The De Minimis Adequate Assurance Package must include financial statements, tax returns, bank account statements (to the extent such financial statements, tax returns, and bank account statements exist), any other information related to the proposed business to be conducted at the premises and any other documentation that the Debtors deem appropriate.

f.      If (i) no objections from the De Minimis Notice Parties are received by the Debtors or filed with the Court within seven (7) days after service of such De Minimis Asset Sale Notice (or such longer period as agreed to by the Debtors) and, (ii) to the extent the sale involves a Target Contract, no objections from the Counterparties to the Target Contracts are received by the Debtors or filed with the Court within seven (7) calendar days after service of the De Minimis Asset Sale Adequate Assurance Package (or such longer period as agreed to by the Debtors), then the Debtors are authorized to immediately consummate such sale or transfer; provided that in the event a De Minimis Asset Purchaser requests an order of the Court approving an assumption and assignment, the Debtors shall be permitted to obtain such order through the filing of a certification of counsel.

g.      If (i) any De Minimis Notice Party timely gives notice of an objection to the De Minimis Asset Sale or files an objection to any such sale or transfer with the Court within seven (7) days after service of such De Minimis Asset Sale Notice (or such longer period as agreed to by the Debtors) or (ii) any Counterparty timely gives notice of an objection to the De Minimis Asset Purchaser's adequate assurance of future performance or files an objection to the De Minimis Asset Purchaser's adequate assurance of future performance with the Court within seven (7) calendar days after service of the De Minimis Asset Sale Adequate Assurance Package (or such longer period as agreed to by the Debtors), then the relevant De Minimis Asset shall only be sold or transferred upon submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court after notice and a hearing.  Any filed objection or notice of an objection shall be served via email on the Objection Notice Parties, as defined below.

h.      In the event a hearing is required to resolve an objection and a written objection has not otherwise been filed with the Court, the objecting party shall file an objection within seven (7) calendar days of a demand by the Debtors and such objection shall be heard at the next scheduled omnibus hearing date that is at least seven (7) calendar days from the date of the filing of such objection or such other date set by the Court based upon the exigencies of the circumstances surrounding such assignment.

4.      The Debtors shall provide a written report or reports, within thirty (30) days after each calendar month (to the extent De Minimis Asset Sales were consummated for the relevant month), concerning any such sales or transfers made in accordance with the relief requested in this Motion (including the names of the purchasing parties and the types of amounts of the sales) to the De Minimis Notice Parties and those parties requesting notice under Bankruptcy Rule 2002.

5.      The Debtors may withdraw from any De Minimis Sale prior to the consummation of the assumption and assignment of a Target Contract, in their sole discretion, in the event that there is a dispute regarding a cure amount or adequate assurance of future performance, which cannot be resolved in a manner that is satisfactory to the Debtors.

6.      Notwithstanding anything set forth to the contrary in a sale or transfer agreement, all De Minimis Asset Purchasers understand and agree that the Debtors are conveying their rights to the Target Contract as is, without warranties or representations of any kind, whether express or implied.

## II.      BIDDING PROCEDURES & AUCTION

7.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures/De Minimis Asset Sale Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety as if fully set forth in this Bidding Procedures/De Minimis Asset Sale Order.  The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Bidding Procedures/De Minimis Asset Sale Order.

8.      Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information,

the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures or the Sale, provided that the information was provided in accordance with this Bidding Procedures/De Minimis Asset Sale Order.

9.      For all purposes under the Bidding Procedures:  (a) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and any Stalking Horse Agreement shall be considered a Qualifying Bid; (b) should they decide to credit bid, Secured Creditors shall be deemed Qualifying Bidders and may seek to credit bid some or all of their claims within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by their Secured Claim Documentation; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured and may only credit bid claims secured by a first lien unless the bid is accompanied by a cash bid in an amount sufficient to satisfy all senior liens in such collateral; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets and subsets thereof.

10.      The Bidding Procedures shall apply to the Potential Bidders; the Qualifying Bidders; the submission, receipt, and analysis of all bids relating to the Sale; and the conduct of the Sale and the Auction.

11.      A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in **both** PDF and MS-WORD

format to the Objection Notice Parties so as to be received on or before **February 21, 2020, at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) may not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.**

12.     All persons or entities submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the applicable Purchase Agreement.

13.     If only one Qualifying Bid is submitted for certain Assets on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that this Court approve such Qualifying Bid and the transactions contemplated thereunder for those Assets. In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall conduct the Auction for the subject Assets on **February 25, 2020, at 10:00 a.m. (ET)**, at Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, or such other date and time as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids; *provided* that such other date and time is no earlier than one (1) business day following the delivery of such notice.

14.     Each Auction Bidder shall confirm in writing that:  (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction; and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

15.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best bid for the Assets or subsets thereof.

16.     The Debtors, subject to the terms of this Bidding Procedures/De Minimis Asset Sale Order and the Bidding Procedures, shall have the right as they may reasonably determine, in consultation with the Consultation Parties, to carry out the Bidding Procedures, including, without limitation, to:  (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine the Baseline Bids; (d) determine which bids are the Successful Bids and Back-Up Bids, each as it relates to the Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an Auction and the Sale Hearing in open court without further notice (other than the filing of a notice of such adjournment or cancellation on the docket of these Chapter 11 Cases, which notice may be the hearing agenda in the case of a Sale Hearing) or as provided in this Bidding Procedures/De Minimis Asset Sale Order and in the Bidding Procedures; (g) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion as it relates to a Sale at any time with or without prejudice.

### III.   DESIGNATION OF STALKING HORSE PURCHASERS

17.    In the event that the Debtors, with the consent of the administrative agent for the Debtors' prepetition lenders, enter into a Stalking Horse Agreement on or prior to the Stalking Horse Designation Deadline of **February 19, 2020,** the Debtors shall file with the Court and serve on the Motion Notice Parties a Stalking Horse Notice.  If the Stalking Horse Agreement satisfies the following conditions—(a) the Break-Up Fee does not exceed three percent (3.0%) of the cash purchase price; (b) the Expense Reimbursement does not exceed the lesser of $50,000 and one and a half percent (1.5%) of the cash purchase price (c) the Consultation Parties have provided their affirmative consent to the stalking horse designation; and (d) the Stalking Horse is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel approving the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse without the need for further hearing, which shall be accompanied by a declaration in support of the Debtors' designation.  If a Stalking Horse Purchaser and Stalking Horse Agreement are designated that do not satisfy each of the conditions (a) through (d) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse to be held on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. the day prior to such hearing.

### IV.   ASSUMPTION AND ASSIGNMENT PROCEDURES

18.    The following Assumption and Assignment Procedures are hereby approved:

a.    On or before **February 14, 2020** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to a Target Contract—, and their counsel if known by the Debtors, a notice,

substantially in the form attached to the Motion as **EXHIBIT II** (the "**Assumption Notice**").

b.     The Assumption Notice shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts.

c.     If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "**Additional Contracts**"), as soon as practicable thereafter and in no event less than one (1) business day before the commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within two (2) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than two (2) days after the Assumption Notice Deadline.  In either case, service of an Assumption Notice after the Assumption Notice Deadline shall be via overnight mail.

d.     Within four (4) hours of the conclusion of the Auction, the Debtors shall file with the Court, serve via email where available, and post to the Claims Agent Website a notice identifying the Successful Bidder(s) (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Target Contracts (as defined below), and (iii) the proposed assignee(s) of such Selected Target Contracts.

e.     No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty, and their counsel if known by the Debtors, and all parties requesting notice under Bankruptcy Rule 2002.

f.     If a Counterparty objects to (i) the Cure Amount for its Target Contract or (ii) the Debtors' ability to assume and assign the Target Contract, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**"). Any Contract Objection shall:  (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on February 21, 2020** (the "**Contract Objection Deadline**"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the

Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, any pecuniary losses resulting therefrom, and the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Purchaser and a De Minimis Asset Purchaser shall must be filed not later raised at than e commencement of, Febo or prior to the uary 26, 2020, at 4:00 p.m. (ET)Sale Hearing. Objections to adequate assurance of future performance by a De Minimis Asset Purchaser shall be governed by the De Minimis Asset Sale Procedures set forth below.

g.    The "**Objection Notice Parties**" are as follows: (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary, Esq., Sean T. Greecher, Esq., and Ian J. Bambrick, Esq. (mbcleary@ycst.com, sgreecher@ycst.com, and ibambrick@ycst.com); (ii) proposed counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases, Pachulski Stang Ziehl &Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Colin R. Robison, Esq. (bsandler@pszjlaw.com, rfeinstein@pszj law.com, and crobison@pszj law.com); (iii) counsel to the administrative agent for the Debtors' prepetition lenders, Chapman & Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080, Attn: Stephen R. Tetro II, Esq., and Aaron M. Krieger, Esq. (stetro@chapman.com and akrieger@chapman.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward and Morgan L. Patterson (matthew.ward@wbd-us.com and morgan.patterson@wbd-us.com); (iv) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy, Esq. (Jane.M.Leamy@usdoj.gov); and (v) counsel to each Stalking Horse Purchaser, if any.

h.    At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "**Selected Target Contract**," and collectively, the "**Selected Target Contracts**"). The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately selected as Selected Target Contracts.

i.    If no Contract Objection is timely received with respect to a Selected Target Contract, then upon the closing of the Sale and payment of any

Cure Amounts set forth in the Assumption Notice: (i) the Counterparty to such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Target Contract and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the applicable Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling notwithstanding anything to the contrary in such Selected Target Contract or any other related document and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

j.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the applicable Successful Bidder or fixed by the Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder provided that any undisputed portion of the cure amount is paid upon the effective date of the assumption and assignment of the Selected Target Contract and any disputed portion of the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.  To the extent the parties are unable to consensually resolve a Cure Dispute, the Debtors shall file and serve a notice for a hearing for the Court to consider the applicable Cure Dispute at the next scheduled omnibus hearing, which shall be at least fourteen (14) days from the date of the filing of the notice unless the Debtors and the objecting Counterparty agree to an earlier hearing.  The disputed portion of a cure amount shall be paid to the applicable Counterparty within seven (7) calendar days of the resolution of the Cure Dispute.

k.     Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired

leases of the Debtors are determined to be Target Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the impacted Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than seven (7) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order and paragraph 14(i) above.

19.    Other than as provided by the De Minimis Asset Sale Procedures, the Debtors' decision to assume and assign any Target Contract is subject to this Court's further approval and the closing of the Sale.  Accordingly, other than as provided by the De Minimis Asset Sale Procedures, absent this Court's approval and the closing of the Sale, no Target Contracts shall be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

20.    The Assumption and Assignment Procedures are appropriate and fair to all Counterparties.  The Assumption Notice is:  (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to any Successful Bidder some or all of the Target Contracts and (ii) afford the Counterparties the opportunity to exercise any rights impacted by the Motion and the relief granted by this Bidding Procedures/De Minimis Asset Sale Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

21.    The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease, or other agreement is, in fact, an executory

contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of all parties with respect thereto shall be reserved.

22.    As part of its bid, each Qualifying Bidder must provide the Debtors information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to such potential bidder; (b) the name of the proposed counterparty that will act as the assignee of any Target Contract; and (c) a contact person for the proposed assignee that the Counterparty may directly contact in connection with the adequate assurance of future performance.    To the extent available, the Adequate Assurance Information may also include (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns, and annual reports.    Furthermore, given that the Debtors will submit evidence at the Sale Hearing that all requirements for the assumption and assignment of the Selected Target Contracts have been satisfied, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

23.    The Debtors, the Consultation Parties, and the Counterparties to any Target Contracts included in an applicable bid shall keep confidential all Adequate Assurance Information provided to them and shall be permitted to use and disclose such Adequate Assurance Information only as provided in this Bidding Procedures/De Minimis Asset Sale Order unless the Qualifying Bidder that provided such Adequate Assurance Information otherwise consents in writing.    Each Counterparty in receipt of Adequate Assurance Information

shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Paragraph. Such Counterparty may not use or disclose, except to representatives, attorneys, advisors, and financing sources (collectively, "**Representatives**"), any confidential Adequate Assurance Information for any purpose other than:  (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; (b) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance; and (c) if the proposed assignee is successful and becomes a party to the Target Contract, on a confidential basis, in the ordinary course of the contractual relationship.  Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). This Bidding Procedures/De Minimis Asset Sale Order authorizes the filing of any such Assignment Objections under seal, and on the docket with such non-public information redacted, without further order of this Court; *provided*, that unredacted versions of such Assignment Objections shall be served upon the Debtors, Consultation Parties, and the U.S. Trustee, with a copy to the Court's chambers; *provided, further*, that parties shall have a period of ten (10) business days after the filing of any redacted Assignment Objection to object to the sealing of any information.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Bidding Procedures/De Minimis Asset Sale Order.

## V.    NOTICE PROCEDURES FOR THE SALE AND DE MINIMIS ASSET SALES

24.    The Stalking Horse Notice, the Assumption Notice, the Sale Notice, the Bidding Procedures, the Auction, the Sale Hearing, the Assumption and Assignment Procedures, the De Minimis Asset Sale Notice, the De Minimis Asset Sale Procedures, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the De Minimis Asset Sale Procedures.

25.    The assumption and assignment to the Successful Bidder of the Target Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and such notice and objection periods are hereby approved.

26.    Within two (2) business days of the entry of this Bidding Procedures/De Minimis Asset Sale Order, the Debtors shall serve the Sale Notice on: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to the administrative agent for the Debtors' prepetition lenders; (3) all parties known by the Debtors to assert a lien on any of the Assets; (4) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets in the Debtors within the twelve (12) months prior to the Petition Date; (5) the Office of the United States Attorney for the District of Delaware; (6) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (7) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (8) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (9) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (10) all of the Debtors' other known creditors and equity security holders, including the Counterparties; (11) all other parties that had filed a

notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date; and (12) proposed counsel to the Official Committee of Unsecured Creditors (collectively, the "**Sale Notice Parties**").

27.     The Debtors shall post any Stalking Horse Notice, the Sale Notice, De Minimis Asset Sale Notice, and this Bidding Procedures/De Minimis Asset Sale Order on the website of the Debtors' claims and noticing agent, at https://dm.epiq11.com/case/EFI/.

**VI.     SALE HEARING**

28.     The Debtors will file and serve a proposed Sale Order **on or before 4:00 p.m. (ET) on February 20, 2020**.  Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on February 24, 2020** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Objection Notice Parties.

29.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and to the consummation and performance of the Sale contemplated by a Purchase Agreement with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

30.    The Debtors shall have until **5:00 p.m. (ET) on the day prior to the Sale Hearing** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

31.    The Sale Hearing shall be held before this Court on **February 27, 2020, at 2:00 p.m.** (prevailing Eastern Time) before the Honorable Karen B. Owens, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

**VII.    MISCELLANEOUS**

32.    The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

33.    In the event that there is a conflict between this Bidding Procedures/De Minimis Asset Sale Order and the Bidding Procedures, this Bidding Procedures/De Minimis Asset Sale Order shall control and govern.

34.    Prior to mailing the Assumption Notice, the Sale Notice, and any De Minimis Asset Sale Notice, as applicable, the Debtors may fill-in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Bidding Procedures/De Minimis Asset Sale Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

35.    All persons or entities that participate in the Sale or a De Minimis Asset Sale shall be deemed to have knowingly and voluntarily:  (a) consented to the entry of a final order by this Court in connection with the Motion or this Bidding Procedures/De Minimis Asset Sale Order (including any disputes relating to the bidding process, the Auction, or any Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution;

and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

36.    For the avoidance of doubt, the Assets shall not include any of the Rejected Leases or Personal Property addressed by, and defined in, that certain *Debtors' First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Unexpired Leases* Nunc Pro Tunc *to the Petition Date* [Docket No. 11] and this Order does not govern or control, in any way, such Rejected Leases and Personal Property.

37.    For purposes of section 363(b)(1) of the Bankruptcy Code, if the Debtors seek to transfer any personally identifiable information about individuals through or in connection with a Sale or De Minimis Asset Sale, the Debtors will promptly alert the United States Trustee appointed in these Chapter 11 Cases, who will determine whether appointment of a consumer privacy ombudsman is required.

38.    This Bidding Procedures/De Minimis Asset Sale Order shall be effective immediately upon entry and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Bidding Procedures/De Minimis Asset Sale Order and may, in their reasonable discretion and without further delay, take any action and perform any act authorized or approved under this Bidding Procedures/De Minimis Asset Sale Order.  Further, to the extent applicable, the requirements of Bankruptcy Rule 6006(e) are hereby waived.

39.    The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

40.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

# **EXHIBIT A**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EARTH FARE, INC., *et al.*,[1] | Case No. 20-10256 (KBO) |
| Debtors. | (Jointly Administered) |
| | Docket Ref. Nos. 33, 58, 62, 70, & {●} |

## BIDDING PROCEDURES

On February 4, 2020 (the "**Petition Date**"), Earth Fare, Inc. ("**Earth Fare**") and EF Investment Holdings, Inc. (each a "**Debtor**" and, collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On February 14, 2020, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. {●}] (the "**Bidding Procedures/De Minimis Asset Sale Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**") to be employed by the Debtors in connection with a sale of substantially all of their assets, including but not limited to the tradename and related intellectual property, non-residential real property leases (the "**Real Property Leases**"), executory contracts, furniture, fixtures and equipment, liquor licenses, and any other miscellaneous assets (collectively, the "**Assets**"), or components thereof.

**Any party interested in bidding on the Assets should contact (i) for real-property, Joseph M. McKeska at A&G Real Estate Partners at (630) 366-2304 or by email at jmckeska@agrep.com, (ii) for furniture, fixtures, and equipment, Kevin Pangrcic at Hilco Fixtures at 248-631-9346 or by email at kpangrcic@gmail.com and (iii) for intangible property Richelle Kalnit at Hilco Streambank at 212.993.7214 or by email at rkalnit@hilcoglobal.com.**

### 1.    Summary of Important Dates

| | |
|---|---|
| Deadline to Serve Assumption Notice | February 14, 2020 |
| Stalking Horse Designation Deadline | February 19, 2020 |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084).  The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

| Deadline to file proposed Sale Order | February 20, 2020, at 4:00 p.m. (ET) |
|---|---|
| Bid Deadline | February 21, 2020, at 5:00 p.m. (ET) |
| Deadline to Object to Assumption Notice | February 21, 2020, at 4:00 p.m. (ET) |
| Deadline to Serve Adequate Assurance Information | February 22, 2020 |
| Deadline to Object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | February 24, 2020, at 4:00 p.m. (ET) |
| Auction Commencement | February 25, 2020, at 10:00 a.m. (ET) |
| Deadline to Object to Adequate Assurance of Stalking Horse Purchaser | February 26, 2020, at 4:00 p.m. (ET) |
| Deadline to Object to Conduct of Auction, Designation of Successful Bidders, and Adequate Assurance | February 26, 2020, at 4:00 p.m. (ET)At the commencement of the Sale Hearing |
| Sale Hearing | February 27, 2020, at 2:00 p.m. (ET) |

### 2.    Assets to be Sold

The Debtors are offering for sale all of the Assets.[2]  Potential Bidders (as defined below) may bid on all or any number or combination of the Assets.

### 3.    Participation Requirements

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder.**"  To become a Qualifying Bidder, a Potential Bidder must submit to the Debtors and their advisors:

(a)    documentation identifying the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Sale;

(b)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

---

[2]  The Debtors may withdraw any Asset for sale or provide a different process if the Debtors, in consultation with the Consultation Parties, reasonably believe that the recovery on such assets may be meaningful improved if sold pursuant to different procedures than the ones set forth herein.

(c)     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a bona fide interest in consummating a Sale; and

(d)     sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a Sale; and

(e)     a non-binding written indication of interest identifying the Stores in which the party is interest in purchasing.

Notwithstanding the foregoing, a counterparty to a Real Property Lease (each a "**Lease Counterparty**") bidding thereon (a "**Landlord Lease Bid**") shall not be required to comply with subparagraph (b) above.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, each of the Consultation Parties (as defined below), or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated Sale.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any designated Stalking Horse Purchaser (as defined below) shall be considered a Qualifying Bidder and a Stalking Horse Agreement (as defined below) shall be considered a Qualifying Bid (as defined below); and (ii) the Debtors may consider a combination of bids for the Assets in determining whether the Potential Bidders constitute Qualifying Bidders.

**4.     Stalking Horse Designation**

On or prior to **February 19, 2020** (the "**Stalking Horse Designation Deadline**"), the Debtors may, in consultation and with consent of the Consultation Parties, enter into an agreement or agreements (each a "**Stalking Horse Agreement**") with an interested bidder or interested bidders to serve as stalking horse bidders (each a "**Stalking Horse Purchaser**") to acquire applicable Assets without the need for further notice and hearing; *provided*, *however*, that (a) any break-up fee (a "**Break-Up Fee**") does not exceed three percent (3.0%) of the cash purchase price; (b) any expense reimbursement (an "**Expense Reimbursement**" and collectively with any associated Break-Up Fee, the "**Bid Protections**") does not exceed the lesser of $50,000 and one and a half percent (1.5%) of the cash purchase price; and (c) the Stalking Horse Purchaser is not an insider (as defined in Section 101(31) of the Bankruptcy Code).  If the Debtors designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, in accordance with the proviso at the end of the prior sentence, they shall file for each Stalking Horse Purchaser a Stalking Horse Notice in accordance with the Bidding Procedures/De Minimis Asset Sale Order ~~and~~, submit an order approving the same under certification of counsel, and file a declaration in support of the designation.  In addition, within one (1) day of the entry of any order approving a Stalking Horse Purchaser, the Debtors shall serve via email where available and overnight mail the Adequate Assurance Information (as

defined below) for the Stalking Horse Purchaser on any counterparties to any contracts or leases to be assumed and assigned (or assumed) in connection with the proposed Sale.

The Debtors, however, reserve the right, with the consent of the administrative agent for the Debtors' prepetition lenders, to file a Stalking Horse Notice, on or before the Stalking Horse Designation Deadline, to designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, that do not meet the qualifications in the immediate prior paragraph and seek a hearing on the first date the Court is available that is at least five (5) business days after filing the applicable Stalking Horse Notice, with objections due at 4:00 p.m. the day prior to such hearing. Notwithstanding anything herein to the contrary and for the avoidance of doubt, the designation of any Stalking Horse (i) that is an insider, (ii) that has not otherwise been consented to by each of the applicable Consultation Parties, or (iii) to which clauses (i) and (ii) apply, shall only be authorized and approved after the notice and a hearing provided for in the prior sentence.

### 5.   Bankruptcy Court Jurisdiction

Any Potential Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated Sale documents of the Auction Bidders (as defined below), (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 6.   Form of Agreement

Potential Bidders intending to submit bids must include with their bids an asset purchase agreement (a "**Purchase Agreement**"). The Purchase Agreement shall be: (i) if a Stalking Horse Purchaser has been designated for the applicable Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in a Stalking Horse Agreement, if applicable and include a redline marked against the Stalking Horse Agreement, and (ii) otherwise, in the form of the Purchase Agreement to be provided by the Debtors and include a redline marked against the form Purchase Agreement.

### 7.   Due Diligence

The Debtors will provide any Qualifying Bidder with reasonable access to information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (i) for real-property, Joseph M. McKeska at A&G Real Estate Partners at (630) 366-2304 or by email at jmckeska@agrep.com, (ii) for furniture, fixtures, and equipment, Kevin Pangrcic at Hilco Fixtures at 248-631-9346 or by email at kpangrcic@gmail.com and (iii) for intangible property Richelle Kalnit at Hilco Streambank at 212.993.7214 or by email at rkalnit@hilcoglobal.com.

The due diligence period shall extend through and include the Bid Deadline (as defined below). The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline. The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and a contemplated Sale.

8.    **Bid Requirements**

Other than in the case of a bid submitted by a Stalking Horse Purchaser, to be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    set forth the purchase price to be paid by such Qualifying Bidder for the Assets in question;

(d)    if a bid includes a credit bid under section 363(k), evidence of the amount of the claim, the Assets constituting the collateral securing the claim, and evidence of the grant, perfection, priority, and validity of the lien (the "**Secured Claim Documentation**");

(e)    not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures, such as in section 12 below, and the Bidding Procedures/De Minimis Asset Sale Order);

(f)    state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(g)    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase the applicable Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement, as applicable;

(h)    state that such Qualifying Bidder's offer is formal, binding, and unconditional and is irrevocable until two (2) business days after the closing of the sale of the Assets;

(i)    state that such Qualifying Bidder is financially capable of consummating the Sale contemplated by the bid and provide written evidence in support thereof, which, in the case of a Landlord Lease Bid, such wherewithal shall be limited to any cash consideration included in the Lease Counterparty's bid;

(j)    contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the Sale contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any Target Contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve via email where available and overnight mail, **within one (1) day after such receipt**, such information on any counterparties to any contracts or leases being assumed and assigned (or assumed) in connection with the Sale, which shall be provided to each affected counterparty , and their counsel if known by the Debtors, on a confidential basis (the "**Adequate Assurance Information**");

(k)    identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the contemplated Sale;

(l)    a commitment to close the Sale by **February 28, 2020**, or such other date as agreed to by the Debtors in consultation with the Consultation Parties;

(m)    not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment;

(n)    in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, (B) any Break-Up Fee, (C) any Expense Reimbursement, and (D) the greater of $25,000 and ten percent (10%) of the purchase price under the Stalking Horse Agreement;

(o)    not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

(p)    contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets in question, (ii) has relied solely upon its own independent review, investigation, and inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements,

representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the proposed Sale;

(q)     provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest or best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below) for the applicable Assets;

(r)     include written evidence of authorization and approval with respect to the submission, execution, and delivery of the subject term sheet;

(s)     provide a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be held in a noninterest-bearing escrow account to be identified and established by the Debtors, **provided that with respect to a Landlord Lease Bid, the landlord may deduct from its Deposit the amount of any undisputed monetary obligations that constitute the cure cost for the applicable real property lease (the "<u>Cure Cost</u>")**; and

(t)     provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit.

**Notwithstanding the foregoing, if a Landlord Lease Bid is submitted by a Lease Counterparty, such Lease Counterparty need not comply with subparagraph 8(j) above.**

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is initially deemed not a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to:  (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and a Sale.

### 9.     <u>Bid Deadline</u>

A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in **both** PDF and MS-WORD format to the Objection Notice Parties so as to be received on or before **February 21, 2020, at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties.  To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these

Chapter 11 Cases indicating the same. **Absent consent from the Debtors, in consultation with the Consultation Parties, any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) may not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.**

10.    <u>Evaluation of Qualifying Bids</u>

The Debtors will deliver by no later than 6:00 p.m. (ET) on the day of the Bid Deadline, copies of all bids from Qualifying Bidders to each of the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than 8:00 p.m. (ET) on the day before the commencement of the Auction. In the event that a bid is determined not to be a Qualifying Bid, including with respect to any proposed credit bid amount, the Qualifying Bidder shall be notified by the Debtors and shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors and to provide additional Secured Claim Documentation; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to commencing the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid as to the applicable Assets for purposes of constituting the opening bid of the Auction (each a "**Baseline Bid**" and the Qualifying Bidder submitting each such Baseline Bid, a "**Baseline Bidder**") and shall notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid or Baseline Bids no later than the opening of the Auction.

11.    <u>No Qualifying Bids</u>

If no timely Qualifying Bids—other than any Stalking Horse Purchaser's Qualifying Bid—are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that the Stalking Horse Purchaser (if any) be deemed the Successful Bidder (as defined below) and that the Court approve the Stalking Horse Agreement (if any) and the Sales contemplated thereunder.

12.    <u>Right to Credit Bid</u>

Any party who has a valid, perfected, and enforceable lien on any Assets of the Debtors' estates that is not subject to an objection by the commencement of the Auction (a "**Secured Creditor**") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by the Secured Claim Documentation, provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided*, *further*, that, if the Secured Creditor's lien is subsequently avoided, then such Qualified Bidder shall be subject to disgorgement. **Each Lease Counterparty to a Real Property Lease proposed to be sold or transferred at the Auction (as defined below) may credit bid all or a portion of the applicable Cure Cost. If such Lease Counterparty is the**

**Successful Bidder on the applicable Real Property Lease and it is later determined by this Court or agreement by and among the Debtors and Lease Counterparty that the actual Cure Cost is a lesser amount, then the Lease Counterparty shall pay the difference in cash within seven (7) business days of the entry of the decision of the Court or effective date of the agreement between the Debtors and the Lease Counterparty.**

13.    <u>Auction</u>

If the Debtors timely receive one or more Qualifying Bids for any of the Assets (inclusive of any Stalking Horse Purchaser's Qualifying Bid), then the Debtors shall conduct an auction (the "**Auction**").  Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets or subsets thereof, which will be determined by considering, among other things, the following non-binding factors:

  i.    the terms of the Purchase Agreement requested by each Auction Bidder;

  ii.    the extent to which such terms are likely to delay closing of a Sale, the cost to the Debtors and their estates of such modifications or delay, and any incremental financing being offered to accommodate any delay;

  iii.    the total consideration to be received by the Debtors and their estates;

  iv.    the Sale structure and execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval;

  v.    the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in any applicable Stalking Horse Agreement;

  vi.    the impact on interested parties, including, but not limited to, employees, landlords, and vendors; and

  vii.    any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

  i.    the Auction shall commence on **February 25, 2020, at 10:00 a.m. (ET)** (the "**Auction Date**"), at Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801;

  ii.    only a Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (collectively, the "**Auction Bidders**") shall be entitled to make any bids at the Auction;

iii.    the Auction Bidders shall appear in person at the Auction or through a duly authorized representative;

iv.    only the Debtors, the Auction Bidders, the Consultation Parties, and the Debtors' creditors and equity holders, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any creditors and equity holders desiring to attend the Auction must provide counsel for the Debtors one (1) business day's written notice of their intent to attend the Auction;

v.    the Debtors and their professional advisors shall direct and preside over the Auction in consultation with the Consultation Parties.  The Auction shall be transcribed;

vi.    the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

vii.    bidding shall commence at the amount of the Baseline Bid or Baseline Bids, and the Auction Bidders may submit successive bids in increments of at least the greater of $25,000 and ten percent (10%) of the current highest or best bid (or Baseline **Bid** for the first round) (the "**Bid Increment**"); provided that:  (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest or best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of, if applicable, (A) any Break-Up Fee and (B) any Expense Reimbursement; (iii) any successive bid made by any Stalking Horse Purchaser shall only be required to equal the sum of the amount of (A) the applicable Baseline Bid or the then-highest or best bid, as applicable, plus (B) the Bid Increment, less (C) the sum of the amount of, if applicable, (X) any Break-Up Fee and (Y) any Expense Reimbursement; and (iv) the Debtors, in consultation with the Consultation Parties, reserve the right to modify the Bid Increment during the course of the Auction and shall do so on the record at the Auction;

viii.    the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

ix.    all material terms of the bid that is deemed to be the highest or best bid for the Assets or a specific subset thereof for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest or best bid or bids;

x.    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional

procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures/De Minimis Asset Sale Order, and (ii) disclosed to the Auction Bidders;

xi.  any Potential Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated Sale documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xii.  Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

xiii.  the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the Sales contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

xiv.  upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties and subject to Court approval,

the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (each a "**Successful Bid**").  In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the particular assets to be sold, the likelihood of the bidder's ability to close a Sale and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to the Debtors' estates.  The bidders submitting such Successful Bids, which may be a Stalking Horse Purchaser, shall each become a "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable.  The Debtors may, in consultation with the Consultation Parties, designate Back-Up Bids (and corresponding Back-Up Bidders) to purchase the applicable Assets in the event that the Successful Bidder or Successful Bidders do not close the Sale; and

xv.   prior to the Sale Hearing, each Successful Bidder shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the applicable Successful Bid was made.

EACH SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND ANY BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.

**14.    Sale Hearing**

Each Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the applicable Stalking Horse Agreement) will be subject to approval by the Court.  The hearing to approve each Successful Bid and any Back-Up Bid (the "**Sale Hearing**") shall take place on **February 27, 2020, at 2:00 p.m. (ET)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Chapter 11 Cases.  **For the avoidance of doubt, by no later than the time of announcement of any Baseline Bid for the Auction, the Debtors may determine, in consultation with the Consultation Parties, to withdraw the Assets or any subset thereof, from the Auction and sale process, and adjourn the Sale Hearing with respect to the withdrawn Assets on the terms set forth herein.**

At the Sale Hearing, the Debtors will seek entry of an order that, among other things:

i.    authorizes and approves each Sale to a Successful Bidder (and, if applicable, the Back-Up Bidder), pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement or Purchase Agreement executed by the Successful Bidder (and, if applicable the Back-Up Bidder), and that the Assets being transferred in such Sale shall be transferred free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code, with such Encumbrances attaching to the sale or transfer proceeds, if any, with the same validity, extent, and priority as had attached to such sold Assets immediately prior to such sale or transfer;

ii.    unless otherwise ordered by the Court, directing that all Encumbrances on the Assets that are sold shall attach to the cash proceeds generated from the sale of such Assets in the same order of priority as they existed prior to the consummation of such sale;

iii.    finding that each Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

iv.    as appropriate, exempting the Sale(s) and conveyance(s) of the applicable Assets from any transfer tax, stamp tax, or similar tax, or deposit under any applicable bulk sales statute.

### 15.    **Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale by **February 28, 2020**, or such date as may be extended by the Debtors, in consultation with the Consultation Parties, and with the agreement of the applicable Back-Up Bidder, the Back-Up Bid will be deemed to be the Successful Bid, the applicable Back-Up Bidder will be deemed to be a Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the applicable Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties, as soon as practicable, but not later than **February 29, 2020**, which deadline may be extended by the Debtors, in consultation with the Consultation Parties, to **March 31, 2020**.

### 16.    **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or a Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing.  The deposit of each Successful Bidder or, if a Sale is closed with the relevant Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for applicable Sale.  If a Successful Bidder (or, if a Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) fails to consummate a Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up

Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

     **17.**     <u>**Notice and Consultation Parties**</u>

(a)     The term "**Notice Parties**" as used in these Bidding Procedures shall mean:

     (i)     the Debtors, Attn: Charles Goad (chuck.goad@fticonsulting.com); and

     (ii)     counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Attn: M. Blake Cleary, Esq., Sean T. Greecher, Esq., and Ian J. Bambrick, Esq; (mbcleary@ycst.com, sgreecher@ycst.com, and ibambrick@ycst.com).

(b)     The term "**Consultation Parties**" as used in these Bidding Procedures shall mean:

     (i)     counsel to the administrative agent for the Debtors' prepetition lenders, Chapman & Cutler LLP, 111 West Monroe Street, Chicago, IL 60603-4080, Attn: Stephen R. Tetro II, Esq., and Aaron M. Krieger, Esq. (stetro@chapman.com and akrieger@chapman.com) and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward and Morgan L. Patterson (matthew.ward@wbd-us.com and morgan.patterson@wbd-us.com); and

     (ii)     counsel to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases, Pachulski Stang Ziehl &Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Colin R. Robison, Esq. (bsandler@pszjlaw.com, rfeinstein@pszj law.com, and crobinson@pszj law.com) (the "**Creditors' Committee**").

     For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

     If a member of the Creditors' Committee submits a Qualifying Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; *provided* that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

     In the event that any Consultation Party (other than the Creditors' Committee) or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged, and released without further action; *provided* that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

18.    <u>**Reservation of Rights**</u>

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

25992686.10