IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EARTH FARE, INC. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10256 (KBO)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 16, 52, 61, 132, 133, & 203** |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO ASSUME THE STORE CLOSING AGREEMENT, (B) AUTHORIZING AND APPROVING STORE CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (C) APPROVING DISPUTE RESOLUTION PROCEDURES, (D) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES ESSENTIAL TO STORE CLOSINGS, AND (E) APPROVING THE DEBTORS' STORE CLOSING PLAN**

Upon the *Debtors' Emergency Motion for Interim and Final Orders (A)(1) Confirming, on an Interim Basis, that the Store Closing Agreement Is Operative and Effective and (2) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (B) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, (C) Approving Dispute Resolution Procedures, (D) Authorizing Customary Bonuses to Employees Essential to Store Closings, and (E) Approving the Debtors' Store Closing Plan* [Docket No. 16] (the "**Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") and pursuant to sections 105(a), 363, 365, and 554 of the Bankruptcy Code and Bankruptcy Rules 6003, 6004, and 6007; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084). The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion or the Interim Order, as applicable.

25965694.17

*Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having previously entered that certain *Interim Order (A) Confirming, on an Interim Basis, that the Store Closing Agreement Is Operative and Effective; (B) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims and Encumbrances; (C) Approving Dispute Resolution Procedures; and (D) Approving the Debtors' Store Closing Plan* [Docket No. 61] (the "**Interim Order**"); and this Court having found that due and sufficient notice of the Motion has been given under the particular circumstances and that no other or further notice of the Motion need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interest of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

      **FOUND, CONCLUDED, AND DETERMINED that:**[3]

      A.    The Debtors have advanced sound business reasons for assumption of the Store Closing Agreement as set forth in the Motion and at the hearing, and assumption of the Store

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact

25965694.17

Closing Agreement is a reasonable exercise of the Debtors' business judgment and is in the best interest of the Debtors and their estates.

        B.      The Store Closing Agreement was negotiated, proposed, and entered into without collusion, in good faith, and from arm's length bargaining positions.

        C.      The Sale Guidelines, as described in the Motion and attached as <u>Exhibit 1</u> hereto, are reasonable and will maximize the returns on the Store Assets for the benefit of the Debtors' estates and creditors.

        D.      The Closing Sales, in accordance with the Sale Guidelines and with the assistance of the Consultant, will provide an efficient means for the Debtors to liquidate and dispose of the Store Assets as quickly and effectively as possible, and are in the best interest of the Debtors' estates.

        E.      The Resolution Procedures are fair and reasonable, and comply with applicable law.

        F.      The Debtors have represented that, pursuant to the Motion, they are not seeking to either sell or lease personally identifiable information during the course of the Closing Sales at the Closing Stores; *provided, however*, that the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

        G.      The Debtors and the Consultant may sell the Store Assets free and clear of all liens, claims, and encumbrances as provided for herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those

---

constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

25965694.17

holders of any such liens, claims, and encumbrances who did not object, or who withdrew their objections, to the entry of this Final Order are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of any such liens, claims, and encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having such liens, claims, and encumbrances attach to the proceeds of the sale of the applicable Store Assets with the same validity and priority and to the same extent and amount that any such liens, claims, and encumbrances had with respect to such Store Assets.

   H. In accordance with paragraph 29 of the Interim Order, the Consultant has filed declarations disclosing connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases [Docket Nos. 132 & 133].

   I. The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

   J. The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

   1. The Motion is GRANTED on a final basis, as set forth herein.

   2. The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Order. The failure to specifically include any particular provision of the Store Closing Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Store Closing Agreement and all of its provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Final Order. To the extent that there is any conflict between this Final Order, the Sale Guidelines, and the Store Closing Agreement, the terms

25965694.17

of this Final Order shall control over all other documents (subject to Paragraph 23 of this Final Order), and the Sale Guidelines (as modified by any Side Letter Agreement (as that term is defined in Paragraph 23 of this Final Order) entered into by and between the Consultant and a Landlord of a Closing Store) shall control over the Store Closing Agreement.

**A.   Assumption of the Store Closing Agreement by the Debtors**

3.   The Store Closing Agreement, a copy of which is attached to this Final Order as <u>Exhibit 2</u>, is hereby assumed pursuant to section 365 of the Bankruptcy Code. The Debtors are authorized to act and perform in accordance with the terms of the Store Closing Agreement, including, making payments required by the Store Closing Agreement to the Consultant on a weekly basis as provided for in the Store Closing Agreement without the need for any application of the Consultant or a further order of this Court.

4.   Notwithstanding any provision of this Final Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to or bidding on the Debtors' assets not subject to the Store Closing Agreement ("**Additional Assets**") pursuant to a consulting agreement, agency agreement, or otherwise. The Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, *provided* that such guarantee, transaction, or acquisition is approved by separate order of this Court.

**B.   Authority to Engage in the Closing Sales at the Closing Stores**

5.   The Debtors are authorized, pursuant to section 105(a) and section 363(b)(1) of the Bankruptcy Code, to continue to conduct the Closing Sales at the Closing Stores in accordance with this Final Order, the Sale Guidelines, the Store Closing Agreement, and any

25965694.17

Side Letter Agreement. As part of the Closing Sales, the Debtors and Consultant are authorized to sell Non-Inventory. Subject to the restrictions set forth in this Final Order and the Sale Guidelines, the Debtors and the Consultant are authorized to take any and all actions as may be necessary or desirable to implement the Store Closing Agreement and the Closing Sales; and each of the transactions contemplated by the Store Closing Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Store Closing Agreement or the Closing Sales prior to the date of this Final Order, are approved and ratified.

6. The Sale Guidelines are approved.

7. The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

8. All entities that are presently in possession of some or all of the Store Assets in which the Debtors hold an interest that are or may be subject to the Store Closing Agreement or this Final Order hereby are directed to surrender possession of such Store Assets to the Debtors or the Consultant.

9. Except as provided herein, neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any Landlord, to conduct the Closing Sales at the Closing Stores and to take any related actions authorized herein.

C. **Conducting the Closing Sales at the Closing Stores**

10. All newspapers and other advertising media in which the Closing Sales may be advertised and all Landlords of the Closing Stores are directed to accept this Final Order as binding authority authorizing the Debtors and the Consultant to conduct the Closing Sales and the sale of the Store Assets pursuant to the Store Closing Agreement and the Sale Guidelines,

25965694.17

including, without limitation, to conduct and advertise the sale of the Store Assets in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, the Store Closing Agreement, and any Side Letter Agreement.

11. The Debtors and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Store Closing Agreement and, notwithstanding any applicable non-bankruptcy laws, to conduct the Closing Sales without the need for a further order of this Court as provided in this Final Order, the Store Closing Agreement, or the Sale Guidelines, as may be modified by a Side Letter Agreement, including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," "winter clearance outlet," or similar themed sale through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of sign walkers, and street signage.

12. Except as expressly provided in the Store Closing Agreement or this Final Order, the sale of the Store Assets shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, license, reciprocal easement agreement, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Closing Sales (including the sale of the Store Assets), the necessity of obtaining any third party consents, the abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Closing Sales. Breach of any such provisions in these Chapter 11 Cases in conjunction with the Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Closing Sales are

conducted in accordance with the terms of this Final Order, any Side Letter Agreement, and the Sale Guidelines.

13. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Store Assets, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising, and the Debtors and the Consultant are unable to resolve the matter with the disputing party consensually, any party may request a telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the next regularly scheduled omnibus hearing and (b) within four (4) business days of such request. Until such a hearing, no party shall interfere with the Closing Sales' conduct in accordance with this Final Order. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

14. Except as provided in this Final Order, the Sale Guidelines, or any Side Letter Agreement, and except with respect to any Governmental Unit (as to which the Resolution Procedures shall apply), no person or entity, including, but not limited to, any Landlord, licensor, property owner, property manager, service provider, utility provider, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the Closing Sales or the sale of the Store Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign walkers) of the Closing Sales, and all such parties and persons of every nature and description, including, but not limited to, any Landlord, licensor, service provider, utility, and creditor, as well as all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Closing Sales or (b) instituting any action or proceeding in any court (other than

25965694.17

this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the Landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Closing Sales or other liquidation sales at the Closing Stores or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

15. In accordance with and subject to the terms and conditions of the Store Closing Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, all FF&E (as defined in the Store Closing Agreement), and other assets of the Debtors for the purpose of conducting the Closing Sales free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Final Order.

16. The Consultant shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date (as defined in the Store Closing Agreement) in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date until the date of closing of each Closing Store.

17. All sales of Store Assets shall be by cash, the Debtors' validly-issued gift certificates and gift cards, government subsidiary programs, WIC, food stamps, and similar currencies, or nationally recognized bank credit cards (but, for the avoidance of doubt, will not include the Debtors' member or customer appreciation points, rewards, coupons, and other similar programs).

18. All sales of all Store Assets shall be "as is" and final. Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Closing Stores.

25965694.17

19. The Debtors remain responsible for the payment of any and all sales taxes. The Debtors are directed to remit all taxes accruing from the Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.

20. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell all Store Assets pursuant to the Store Closing Agreement and in accordance with the Sale Guidelines and any Side Letter Agreement.  All sales of Store Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of applicable Store Assets with the same validity and priority and to the same extent and in the same amount that any such liens, claims, encumbrances, and other interests had with respect to such Store Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and subject to the Consultant's fees and expenses pursuant to the Store Closing Agreement.

21. To the extent that the Debtors propose to sell or abandon Offered FF&E that may contain any personal or confidential information about the Debtors' employees or customers (the "**Confidential Information**"), the Debtors shall use all commercially reasonable efforts to remove all such the Confidential Information from such Store Assets before they are sold or abandoned.

25965694.17

22. The Debtors and the Consultant are authorized and empowered to transfer Store Assets among the Closing Stores as well as among any of the Debtors' stores that have already closed. The Debtors and the Consultant are authorized to sell or abandon the Debtors' Offered FF&E and abandon all Retained FF&E (as defined in the Store Closing Agreement), in accordance with the terms of the Store Closing Agreement and the Sale Guidelines, including, but not limited to, Closing Store signage. The Store Closing Agreement is amended by this Final Order such that the Offered FF&E includes furniture, fixtures, and equipment owned by the Debtors and to be sold by the Consultant in the Closing Sales wherever those items may be located including, for example, the Debtors' corporate office and stores that have already closed, and the Consultant's sale of these additional items of Offered FF&E are subject to the terms of the Store Closing Agreement in all respects, including but not limited to the FF&E Commission and the reimbursement by the Debtors of Consultant's reasonable expenses associated with the sale of such Offered FF&E and any removal costs.

23. The Consultant and the Landlord of each Closing Store are authorized to enter into a side letter agreement (a "**Side Letter Agreement**") between themselves to modify the Sale Guidelines with respect to a Closing Store and to govern the conduct of the Closing Sales at the applicable Closing Store without further order of the Court, and such Side Letter Agreements shall be binding as among the Consultant and any Landlord; *provided* that nothing in such Side Letter Agreements affects the provisions of paragraphs 13, 24, and 25 of this Final Order. In the event of a conflict between the Sale Guidelines and this Final Order with respect to a Closing Store that is subject to a Side Letter Agreement, the terms of such Side Letter Agreement shall control.

**D.     Resolution Procedures for Disputes Regarding Liquidation Laws**

24. Nothing in this Final Order, the Store Closing Agreement, or the Sale Guidelines releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit

25965694.17

11

under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Store Closing Agreement, or the Sale Guidelines shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtor in possession under the Bankruptcy Code.  Except as otherwise set forth herein, the Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").  Nothing in this Final Order, the Store Closing Agreement, or the Sale Guidelines shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

    25. To the extent that the Closing Sales of Store Assets are subject to any Liquidation Laws, including federal, state, or local statutes, ordinances, rules, or licensing

25965694.17

requirements directed at regulating "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply to the sale of the Store Assets, the Resolution Procedures in this section shall apply:

  a. Provided that the Closing Sales are conducted in accordance with the terms of this Final Order and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Laws and are authorized to conduct the Sales in accordance with the terms of this Final Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Laws.

  b. Within two (2) business days after entry of the Final Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Final Order on the following: (i) the Landlords; (ii) the Attorney General's office for each state in which the Closing Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Closing Sales are being held; and (iv) the division of consumer protection for each state in which the Closing Sales are being held (collectively, the "**Dispute Notice Parties**").

  c. To the extent that there is a dispute arising from or relating to the Closing Sales, the Interim Order, or this Final Order, as applicable, the Store Closing Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Laws (a "**Reserved Dispute**"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. If a governmental unit filed a Dispute Notice (as defined in the Interim Order) within ten (10) days of service of the Interim Order and sent such Dispute Notice to the Dispute Notice Parties as required by the Interim Order, and the Debtors, the Consultant, and the Governmental Unit are unable to resolve the Reserved Dispute within fourteen (14) days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "**Dispute Resolution Motion**").

  d. In the event that a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors or any other interested party from asserting (i) that the provisions of any Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of the Interim Order or this

25965694.17

13

       Final Order, as applicable, nor the conduct of the Debtors pursuant to the Interim Order or this Final Order, as applicable, violates such Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Closing Sales pursuant to this Final Order, absent further order of the Court. Upon the entry of this Final Order the Court grants authority for the Debtors and the Consultant to conduct the Closing Sales pursuant to the terms of this Final Order the Store Closing Agreement, and the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such Liquidation Laws by the Bankruptcy Code. Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

    e. If, at any time, a dispute arises between the Debtors or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Law, and subject to any provisions contained in this Final Order related to the Liquidation Laws, then any party to that dispute may utilize the provisions of subparagraphs 26(c) and (d) of the Interim Order by serving a notice to the other party and proceeding thereunder in accordance with those subparagraphs. Any determination with respect to whether a particular law is a Liquidation Law shall be made *de novo.*

26.    Subject to paragraphs 24 and 25 above, each and every federal, state, or local agency, departmental unit, or governmental unit with regulatory authority over the Closing Sales, and all newspapers and other advertising media in which the Closing Sales are advertised, shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Closing Sales.

**E.    Miscellaneous**

27.    This Final Order and the terms and provisions of the Store Closing Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Consultant, and their respective affiliates, successors, and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Store Assets,

25965694.17

notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity, or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Final Order and the terms and provisions of the Store Closing Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order that may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Store Closing Agreement, as well as the rights and interests granted pursuant to this Final Order and the Store Closing Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Consultant, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these Chapter 11 Cases shall be and hereby is authorized, but not required, to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Final Order and the Store Closing Agreement, and Consultant and the trustee shall be and hereby are authorized to perform under the Store Closing Agreement upon the appointment of the trustee without the need for further order of this Court.

28. The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Store Closing Agreement.

29. All amounts due to the Consultant under the Store Closing Agreement shall be earmarked and paid by the Debtors from the proceeds of the Closing Sales (including from the sale of Merchandise, DSD Merchandise, Non-Inventory, and Offered FF&E) and shall not be

reduced or capped by the terms or conditions of any pre- or post-petition financing facilities, restrictions on the use of cash collateral, or orders related thereto.

30. On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee or the official committee of unsecured creditors, if any, the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Closing Sales that are prepared by the Debtors, their professionals, or the Consultant, provided that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Closing Sales.

31. To the extent that the Debtors are subject to any state "fast pay" laws in connection with the Closing Sales, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll and (b) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

32. The Debtors are authorized, but not directed, to implement and make payments under the Store Closing Bonus Plan.

33. Except with respect to the Store Closing Agreement, nothing in this Final Order or the Motion shall be deemed to constitute a postpetition assumption of any agreement under section 365 of the Bankruptcy Code.

34. The parties to the Store Closing Agreement may non-materially modify, amend, and supplement the Store Closing Agreement and related documents in accordance with the terms thereof without further order of this Court.

35. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Final Order that are dishonored or rejected.

36. The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

37. Except as relates to the Consultant under the terms of the Store Closing Agreement, notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

38. The requirements of Bankruptcy Rule 6007(a) are waived, to the extent applicable to the relief provided for herein.

39. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

40. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

41. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

42. This Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Final Order or the Store Closing Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict, or in any way limit the Closing Sales in accordance with the Sale Guidelines, or any other disputes related to the Closing Sales. No parties or person shall take any action against the Debtors, the Consultant, the Closing Sales, or any Landlord, as applicable, until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: February 26th, 2020　　　　　　　　　　KAREN B. OWENS
Wilmington, Delaware　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

25965694.17