**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| EARTH FARE, INC., *et al.*,[1] | ) ) ) | Case No. 20-10256 (KBO) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) ) ) ) ) ) | **Hearing Date**: March 24, 2020 at 1:00 p.m. (ET) **Objection Deadline**: March 13, 2020 at 4:00 p.m. (ET) |

**DEBTORS' SECOND OMNIBUS MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED
LEASES AND EXECUTORY CONTRACTS EFFECTIVE
AS OF THE REJECTION EFFECTIVE DATE**

> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND
> ITS REJECTED CONTRACT IDENTIFIED ON EXHIBITS 1 AND 2
> TO THE PROPOSED ORDER**

Earth Fare, Inc. ("**Earth Fare**") and EF Investment Holdings, Inc. (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), authorizing, but not directing, the Debtors to (i) reject certain unexpired leases of nonresidential real property set forth on Exhibit 1 to the Proposed Order (the "**Rejected Real Property Leases**") and certain unexpired leases of personal property and certain executory contracts, including any and all amendments thereto, as set forth on Exhibit 2 to the Proposed Order (collectively with the Rejected Real Property Leases, the "**Rejected Agreements**"), effective as of February 28, 2020 (the "**Rejection Effective Date**"); and (ii) abandon, effective as of the Rejection Effective Date, any personal property of the Debtors,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084). The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

including, but not limited to, furniture, fixtures, and equipment (collectively, the "**Personal Property**") that remains, as of the Rejection Effective Date, on any of the premises (the "**Premises**") that are subject to the Rejected Real Property Leases. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.    General Background**

2. On February 4, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.

3. The Debtors have continued in the possession of their properties and the operation of their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

26053660.6

4.      On February 11, 2020, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.

5.      Prior to the Petition Date, the Debtors engaged in a robust marketing process for the sale of their business as a going concern. In parallel, the Debtors commenced various operational cost-savings initiatives to improve liquidity, including the sale of seven of their underperforming stores. Ultimately, the Debtors were unable to generate a buyer for their business as a going concern. Facing tightening liquidity and the maturity of their prepetition loan obligations, the Debtors filed the Chapter 11 Cases with the goal of (i) conducting store closing sales at the Debtors' retail locations (the "**Store Closing Sales**"); (ii) realizing potential value from the balance of the Debtors' assets for the benefit of their creditors; and (iii) minimizing estate obligations to the extent possible.

6.      Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the *Declaration of Charles Goad in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**").[2]

**B.    The Rejected Agreements**

7.      The Debtors are currently in the process of vacating their various retail locations as the Store Closing Sales conclude. By this Motion, the Debtors seek to reject the Rejected Real Property Leases, which cover certain of the Debtors' stores in Georgia, Alabama, and Florida. In

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

26053660.6

addition, the Debtors seek to reject various other personal property leases and executory contracts that are no longer necessary for the operation of the Debtors' business.

8.   The Debtors have evaluated the Rejected Agreements and determined that, as a result of the wind down of the Debtors' operations, the Rejected Agreements are no longer necessary or beneficial to their estates. Thus, the Debtors submit that rejecting the Rejected Agreements is appropriate and, importantly, will avoid further risks or costs that may be associated with the Rejected Agreements on a postpetition basis, if any.

## RELIEF REQUESTED

9.   By this Motion, and in order to preserve and maximize the value of their estates, the Debtors seek to reject the Rejected Agreements, effective as of the Rejection Effective Date, as the Debtors have determined that the Rejected Agreements are no longer integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and present burdensome liabilities. In addition, the Debtors seek to abandon, effective as of the Rejection Effective Date, any Personal Property that remains as of such date on any of the Premises. In light of the Debtors' efforts to preserve and maximize the value of their estates, and to avoid incurring costs and expenses that are no longer integral to the Debtors' business operations and their chapter 11 efforts, the Debtors submit that this related relief is necessary and appropriate.

## BASIS FOR RELIEF

**A.   Rejection of the Rejected Agreements Effective as of the Rejection Effective Date Reflects the Debtors' Sound Business Judgment**

10.  Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-

possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

11. The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

12. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

26053660.6

13. Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Rejected Agreements is in the best interests of the Debtors and their estates, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy Code. *See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. *See, e.g., Sharon Steel Corp.*, 872 F.2d at 39–40.

14. As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative claim exposure in the Chapter 11 Cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Rejected Agreements are burdensome and provide no economic value to their estates. The Rejected Agreements are unnecessary to the continued operations of the Debtors' business and, if not rejected, could potentially be a drain on the Debtors' estates and a hindrance to their chapter 11 efforts. The Debtors also believe that any continued expense in maintaining the Rejected Agreements and attempting to market such agreements would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Rejected Agreements and unnecessarily deplete assets of the Debtors' estates, to the detriment of creditors. In contrast, rejection of the Rejected Agreements will represent a significant cost savings to the Debtors' estates moving forward.

26053660.6

15. To avoid paying any unnecessary expenses related to the Rejected Agreements, the Debtors seek to reject the Rejected Agreements effective as of the Rejection Effective Date. The Court has routinely authorized a debtor's retroactive rejection of unexpired leases. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection permitted effective as of the date of the motion or the date the premises surrendered). Generally, courts have permitted retroactive rejection of an unexpired lease when the non-debtor party to the agreement was given definite notice of the intention to reject. *See, e.g., In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006).

16. The facts in the Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Rejected Leases effective as of the Rejection Effective Date. Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for leases that are not necessary to the Debtors' operations. Moreover, the counterparties to the Rejected Agreements (collectively, the "**Counterparties**") will not be unduly prejudiced if the Rejected Agreements are rejected as of the Rejection Effective Date because the Debtors have served this Motion on the Counterparties and/or their agents or representatives by overnight delivery and, where possible, electronic mail, stating that the Debtors intend to reject the Rejected Agreements effective as of the Rejection Effective Date.

17. Furthermore, with respect to the Rejected Leases, the Debtors have, on or before the Rejection Effective Date, turned over the keys to the Premises to each Counterparty or its representative and abandoned the premises, and in conjunction therewith indicated that they were unequivocally surrendering possession as a result thereof. Finally, the Debtors discussed the relief requested herein with the Committee and the Committee consents to such relief.

18. Therefore, as it is in the Debtors' and their estates' best interest to eliminate the potential incurrence of administrative claims against their estates, and to avoid the potential accrual of any further obligations under the Rejected Leases, the Debtors respectfully submit that the retroactive rejection of the Rejected Leases as of the Rejection Effective Date is appropriate.

19. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Agreements under section 365(a) of the Bankruptcy Code, effective as of the Rejection Effective Date, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the Proposed Order is appropriate.

**B.  Authorizing the Debtors to Abandon Any Personal Property Remaining at the Premises as of the Rejection Effective Date Is Appropriate**

20. In the event that any Personal Property remains on any of the Premises as of the Rejection Effective Date, the Debtors request authority to abandon the Personal Property, pursuant to section 554(a) of the Bankruptcy Code, with such abandonment being effective as of the Rejection Effective Date.

21. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the circumstances.

22. The Debtors submit that any abandoned Personal Property is of inconsequential value or burdensome to the Debtors' estates to remove. Among other things, the Debtors believe

that the cost of retrieving, marketing, and reselling the abandoned Personal Property outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Personal Property. As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Personal Property, effective as of the Rejection Effective Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

## RESERVATION OF RIGHTS

23.     Nothing contained herein should be construed as a waiver of any of the Debtors' rights, defenses, or counterclaims with respect to any of the Rejected Agreements. Nor does anything contained herein constitute an acknowledgement that a particular Rejected Agreement constitutes an unexpired lease of nonresidential real property under section 365 of the Bankruptcy Code, and has not otherwise expired by its own terms or upon agreement of the parties as of the date hereof.

## NOTICE

24.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) proposed counsel to the Committee; (iii) counsel to the Debtors' prepetition lenders; (iv) the Counterparties (via overnight delivery); and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

26053660.6

## **CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: February 28, 2020<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Allison S. Mielke*<br>Pauline K. Morgan (No. 3650)<br>M. Blake Cleary (No. 3614)<br>Sean T. Greecher (No. 4484)<br>Shane M. Reil (No. 6195)<br>Allison S. Mielke (No. 5934)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>EF@ycst.com<br><br>*Counsel to the Debtors*<br>*and Debtors-in-Possession* |

26053660.6