## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EARTH FARE, INC., *et al.*,[1] | ) | Case No. 20-10256 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Docket Ref. Nos. 33, 58, 62, 70, 122, 129, 197, 260, 262, 277, & 292** |
|  | ) |  |
|  | ) |  |

### ORDER (A) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' REMAINING ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (B) APPROVING THE ASSIGNMENT AGREEMENT, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF A CERTAIN UNEXPIRED LEASE, AND (D) WAIVING STAY PROVISIONS PURSUANT TO BANKRUPTCY RULES 6004(h) AND 6006(d)

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for an order, under sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1, (a) authorizing and approving, among other things, the sale (the "**Sale**") of the Lease and the Subject Assets (together, the "**Acquired Assets**"), free and clear of all Encumbrances other than those permitted by the Assignment Agreement for the Acquired Assets (the "**Assumed Liabilities and Permitted Exceptions**"); (b) authorizing and approving the Debtors' entry into that certain *Assumption and Assignment of Lease Agreement,* dated March 20, 2020, with ALDI Inc. (the "**Buyer**"), a copy of which is attached hereto as **EXHIBIT A** (the "**Assignment Agreement**"); (c) authorizing and approving the assumption and assignment of the Lease for the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Earth Fare, Inc. (3936) and EF Investment Holdings, Inc. (8084).  The mailing address for each of the Debtors is 220 Continuum Drive, Fletcher, North Carolina 28732.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Assignment Agreement (as defined herein) or, if not defined in the Assignment Agreement, in the Motion. If there is a conflict between terms defined in the Motion and the Assignment Agreement, the Assignment Agreement shall control.

premises located at 2425 Apalachee Parkway, Tallahassee, Florida  (as more specifically described in the Lease and the entirety) in connection therewith (the "**Assumed Lease**"); and (d) waiving the stay provisions of Bankruptcy Rules 6004(h) and 6006(d) in accordance therewith; the Court having entered an order approving the bid procedures (the "**Bidding Procedures**") and granting related relief on February 14, 2020 [Docket No. 122] (the "**Bidding Procedures/De Minimis Asset Sale Order**"); the Debtors having cancelled the Auction in accordance with the Bidding Procedures; the Debtors having identified the bid by the Buyer as the highest or otherwise best bid for the Acquired Assets; the Court having conducted a hearing on the Motion on March 24, 2020 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto, the *Declaration of Charles Goad in Support of the Sales* [Docket No. 287], the statements of counsel, and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (b) found that, after the marketing process conducted in accordance with the Bidding Procedures/De Minimis Asset Sale Order, the Buyer has submitted the highest or otherwise best bid for the Acquired Assets; adequate and sufficient notice of the Bidding Procedures, the Assignment Agreement, and all transactions contemplated thereunder and in this Order (the "**Sale Order**") having been given in the manner directed by the Court in the Bidding Procedures/De Minimis Asset Sale Order; reasonable and adequate notice of the Motion having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; jurisdiction existing for the Court to consider the Motion and the relief requested thereby in relation to the

Sale; and after due deliberation on the foregoing and upon the arguments and statements in support of the relief requested by the Motion in relation to the Sale presented at the hearing before the Court, it appears that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest, that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein, and that good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS**:[3]

A.       **Jurisdiction and Venue**.  This Court has jurisdiction to consider the relief requested by the Motion in relation to the Sale under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.  This is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.       **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

C.       **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

D.     **Notice**.  Actual written notice of the Sale, the Motion, and the time and place of the Sale Hearing (the "**Sale Notice**") was provided to the following parties: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to the Debtors' prepetition lenders; (3) all parties known by the Debtors to assert a lien on any of the Assets; (4) all persons known or reasonably believed to have expressed an interest in acquiring all or a portion of the Assets in the Debtors within the twelve (12) months prior to the Petition Date; (5) the Office of the United States Attorney for the District of Delaware; (6) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (7) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (8) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (9) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (10) all of the Debtors' other known creditors and equity security holders, including the Counterparty; (11) all other parties that had filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date, and (12) proposed counsel to the Official Committee of Unsecured Creditors.  *See* Docket No. 129.  The Sale Notice and the Bidding Procedures/De Minimis Asset Sale Order were also posted on the website of the Debtors' claims and noticing agent.

E.     The Sale Notice was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Sale Hearing.

F.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice under the circumstances of the Motion, Assignment Agreement, Sale Hearing, and the transactions contemplated thereby, has been provided in accordance with the Bidding Procedures/De Minimis Asset Sale Order, sections 105(a), 363, and

365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.  The Debtors have complied with all obligations to provide notice of the Sale as required by the Bidding Procedures/De Minimis Asset Sale Order.  The notice described above was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Assignment Agreement, or Sale Hearing is or shall be required.  The disclosures made by the Debtors concerning the Motion, Assignment Agreement, and Sale Hearing were good, complete, and adequate.

G.      In accordance with the Bidding Procedures/De Minimis Asset Sale Order, the Debtors served a notice [Docket No. 70] (the "**Assumption Notice**") of the potential assumption and assignment of the Assumed Lease upon the non-debtor counterparty to the Assumed Lease set forth on **EXHIBIT B**.  The Assumption Notice identified the sole and exclusive amounts that the Debtors proposed to pay in connection with the assumption of the Assumed Lease (the foregoing amounts as stated in the Assumption Notice—as set forth on, and modified by, **EXHIBIT B**—collectively referred to as the "**Cure Amount**").  The Assumption Notice stated that the affected counterparty would be forever barred and estopped from asserting any other claims arising under the Lease prior to the date of assumption and would be deemed to consent to the assumption of the Assumed Lease unless an objection was timely filed.

H.      The service and provision of the Assumption Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Assumed Lease or establishing a Cure Amount for the Assumed Lease.  The non-debtor counterparty to the Assumed Lease has had an adequate opportunity to object to assumption and assignment of the Assumed Lease and the Cure Amount set forth in the Assumption Notice (including objections related to the adequate assurance of

future performance and objections based on whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of section 365(c)(1) of the Bankruptcy Code.  The deadline (the "**Contract Objection Deadline**") to file an objection to the Debtors' ability to assume and assign the Assumed Lease or to the stated Cure Amount (a "**Contract Objection**") has expired with no objection having been filed.

I.        **Corporate Authority**.    Through this Sale Order, the Debtors' sale of the Acquired Assets is duly and validly authorized by all necessary corporate action and the Debtors have all the power and authority necessary to consummate the transactions contemplated by the Assignment Agreement.

J.        **Sale in Best Interests of the Debtors' Estates**.  Good and sufficient reasons for approval of the Assignment Agreement and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates.

K.        Time is of the essence in consummating the Sale.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

L.      The consummation of the Sale and the assumption and assignment of the Assumed Lease are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

M.      **Highest or Otherwise Best Offer**.  The Assignment Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Assignment Agreement constitutes the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

N.      **Good Faith of Buyer and Sellers**.  The Assignment Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions and is substantively and procedurally fair to all parties. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures/De Minimis Asset Sale Order, and, among other things: (a) the Debtors and the Buyer complied with the provisions in the Bidding Procedures/De Minimis Asset Sale Order; (b) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures/De Minimis Asset Sale Order; and (c) all payments to be made by the Buyer in connection with the Sale have been disclosed.  The Buyer is purchasing the Acquired Assets, in accordance with the Assignment Agreement, in good faith and is a good faith buyer within the

meaning of section 363(m) of the Bankruptcy Code.  The Buyer is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with these Chapter 11 Cases.  None of the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Assignment Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among potential bidders.

O.        **Consideration**.   The consideration provided by the Buyer pursuant to the Assignment Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined and used in each of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.

P.        **No Fraudulent Transfer**.  The Assignment Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Assignment Agreement fraudulently for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims.

Q.        **No Successor**.  The transactions contemplated under the Assignment Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer with the Debtors or

26054005.2

their estates; there is not substantial continuity between the Buyer and the Debtors; there is no continuity of enterprise between the Debtors and the Buyer; the Buyer is not a mere continuation of the Debtors or their estates; and the Buyer is not a successor or assignee of the Debtors or their estates for any purpose. Except for the Assumed Liabilities and Permitted Exceptions, the (i) transfer of the Acquired Assets to the Buyer and (ii) assumption, as applicable, and assignment to the Buyer of the Assumed Lease, do not and will not subject the Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the date of the closing of the Sale (the "**Closing Date**") or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of antitrust or successor or transferee liability.

R.     **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any Encumbrance therein or thereon other than the Assumed Liabilities and Permitted Exceptions, with such Encumbrances to attach to the proceeds of the Sale with the same validity, force, and effect, and in the same order of priority, that such Encumbrances now have against the Acquired Assets or their proceeds.

S.     The Buyer would not have entered into the Assignment Agreement and would not consummate the transactions contemplated thereby if the Sale to the Buyer and the assumption of any Assumed Liabilities by the Buyer were not free and clear of all Encumbrances other than the Assumed Liabilities and Permitted Exceptions. The Debtors may sell the Acquired Assets free and clear of any Encumbrances of any kind or nature whatsoever, except as set forth in this Sale Order because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the

Bankruptcy Code has been satisfied.  Each entity with an Encumbrance (other than an Assumed Liability or a Permitted Exception) that is attached to the Acquired Assets to be transferred on the Closing Date:  (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Encumbrances who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances (other than the Assumed Liabilities and Permitted Exceptions) are adequately protected by having their Encumbrances attach to the proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, that such Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

T. **Assumed Lease/Cure/Adequate Assurance**.  The Assumed Lease is an unexpired lease subject to the requirements for assumption and assignment under section 365 of the Bankruptcy Code.  The assumption and assignment of the Assumed Lease pursuant to the terms of this Sale Order is integral to the Assignment Agreement; is in the best interests of the Debtors and their estates, creditors, and all other parties in interest; and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

U. Payment of the Cure Amount shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of section 365(b)(1)(A) and 365(f)(2)(A) of the

26054005.2

10

Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Lease, within the meaning of section 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.

V.       The Buyer's financial wherewithal to consummate the transactions contemplated by the Assignment Agreement and the evidence presented at the Sale Hearing demonstrating the Buyer's ability to perform the obligations under the Assumed Lease after the Closing Date shall constitute adequate assurance of future performance within the meaning of section 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.       **Motion Is Granted**.  The Motion and the relief requested therein is **GRANTED** and **APPROVED**, as set forth herein.

2.       **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or set forth herein are denied and overruled on the merits with prejudice.

3.       **Approval**.  The Assignment Agreement, other ancillary documents, and all of the terms and conditions thereof are approved.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to:  (a) execute the Assignment Agreement along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Assignment Agreement, provided that such additional documents do not materially change the terms of the Assignment Agreement adversely to the Debtors' estates;

(b) consummate the Sale in accordance with the terms and conditions of the Assignment Agreement and the instruments to the Assignment Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Assignment Agreement, including the sale of all the Acquired Assets and the assumption and assignment to the Buyer (in accordance with the Assignment Agreement and sections 363 and 365 of the Bankruptcy Code) of the Assumed Lease together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Assignment Agreement and the Sale.  Any officer of the Debtors is authorized to execute and deliver the Assignment Agreement and the other documents that are necessary to consummate the transactions set forth in the Assignment Agreement.

4. This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of the Debtors, all holders of equity interests in the Debtors, any holders of claims (as defined in section 101(5) of the Bankruptcy Code), Encumbrances, or other interests in, against, or on all or any portion of the Acquired Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, the Acquired Assets, and any trustees subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the Assignment Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyer, and the respective successors and assigns of each of the foregoing.

5. **Transfer of Acquired Assets Free and Clear of Encumbrances**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Buyer in accordance with the Assignment Agreement; such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets;

and such transfer shall vest the Buyer with title in and to the Acquired Assets.  Other than the Assumed Liabilities and Permitted Exceptions, the Buyer shall take title to and possession of the Acquired Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability, and all such Encumbrances shall attach to the proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, that such Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  Unless otherwise expressly included in the definition of Assumed Liabilities or Permitted Exceptions in the Assignment Agreement, the Buyer shall not be responsible for any Encumbrances.

6.    The Debtors, their agents, and all other persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are authorized and directed to surrender possession of such Acquired Assets to the Buyer in accordance with the Assignment Agreement on the Closing Date.  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Acquired Assets (other than the Assumed Liabilities and Permitted Exceptions), if any, as such Encumbrances may have been recorded or may otherwise exist.

7.    If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on or claims against all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities or Permitted Exceptions)

shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all such Encumbrances or other interests that the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors and the Buyer, individually and jointly, are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets.

8.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Debtors' interests in the Acquired Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interest of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Exceptions, shall have been unconditionally released, discharged, and terminated as to the Acquired Assets, and that the conveyances described herein have been effected, with such Encumbrances to attach to the proceeds of the Sale with the same validity, force, and effect, and in the same order of priority, that such Encumbrances now have against the Acquired Assets or their proceeds.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any

lease; and each of the foregoing persons and entities is authorized to accept for filing any and all

of the documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Assignment Agreement.  A certified copy of this Sale Order may be filed

with the appropriate clerk and recorded with the recorder to act to cancel any Encumbrances,

except those assumed as Assumed Liabilities and the Permitted Exceptions.

9. **Prohibition of Actions Against Buyer**.  Except with respect to the Assumed

Liabilities and Permitted Exceptions, or as otherwise expressly provided for in this Sale Order or

the Assignment Agreement, all persons and entities holding Encumbrances or other interests of

any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether

legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent,

liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or

in any way relating to the Acquired Assets or the transfer of the Acquired Assets to the Buyer in

accordance with the Assignment Agreement are forever barred, estopped, and permanently

enjoined from asserting against the Buyer, its successors or assigns, its property or the Acquired

Assets, such persons' or entities' Encumbrances in and to the Acquired Assets, including,

without limitation, the following actions:  (a) commencing or continuing, in any manner, any

action or other proceeding against the Buyer, its successors, assets, or properties; (b) enforcing,

attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against

the Buyer, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any

Encumbrance against the Buyer, its successors, their assets, or their properties; (d) asserting any

setoff or right of subrogation of any kind against any obligation due the Buyer or its successors;

(e) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Sale Order, other orders of the Court, or the agreements

or actions contemplated or taken in respect thereof; or (f) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

10.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, or governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Assignment Agreement.

11.    All persons and entities are forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Assignment Agreement and this Sale Order.

12.    The Buyer has given substantial consideration under the Assignment Agreement for the benefit of the Debtors, their estates, and their creditors.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Encumbrances against any of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities or Permitted Exceptions. The consideration provided by the Buyer for the Acquired Assets under the Assignment

Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

13.　　Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtors from pursuing an action against the Buyer arising under the Assignment Agreement or the related documents or (ii) any administrative agencies, governmental, tax, or regulatory authorities, secretaries of state, or other federal, state, or local officials from properly exercising their police and regulatory powers.

14.　　**Assumption and Assignment of the Lease**.　The Debtors are authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyer, in accordance with the Assignment Agreement, effective upon the Closing Date and payment of the Cure Amount by the Buyer as set forth on **EXHIBIT B**, the Assumed Lease free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Exceptions) and (b) execute and deliver to the Buyer such documents or other instruments as are necessary to assign and transfer the Assumed Lease (and the Assumed Liabilities) to the Buyer in accordance with the Assignment Agreement.

15.　　With respect to the Assumed Lease set forth on **EXHIBIT B**:　(a) the Assumed Lease is an unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume the Assumed Lease set forth on **EXHIBIT B** in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign the Assumed Lease set forth on **EXHIBIT B** in accordance with sections 363 and 365 of the Bankruptcy Code to the Buyer; (d) any provisions in the Assumed Lease (or state or local law or ordinances) that prohibit or condition the assignment of the Assumed Lease or allow the party to the Assumed Lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition

upon the assignment of the Assumed Lease, constitute unenforceable anti-assignment provisions that are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Lease, in accordance with the Assignment Agreement, have been satisfied; (f) the Assumed Lease shall be transferred and assigned to and following the Closing Date, shall remain in full force and effect for the benefit of the Buyer in accordance with the Assignment Agreement, notwithstanding any state or local law or ordinances or any provision in the Assumed Lease (including those of the type described in sections 363(l), 365(b)(2), and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer (including but not limited to, "go dark" provisions, alteration restrictions, use restrictions, recapture provisions, clauses which impose a fee or a penalty or a profit sharing upon assignment, clauses which seek to increase the rent or impose a penalty or to modify or terminate the Assumed Lease as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or prohibit assignment, rights of first refusal or purchase option provisions in favor of third parties, continuous operating covenants, and covenants that any user of the Leased Premises operate under the name of the Debtors and/or operate with a use similar to the Debtors' use) and the Debtors shall be relieved from any further liability with respect to the Assumed Lease after such assignment to and assumption by the Buyer in accordance with the Assignment Agreement; and (g) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of and in the Assumed Lease, including the right of the Buyer to exercise to its fullest extent any extension and renewal options contained in the Assumed Lease which purport to be personal only to the Debtors or any predecessor in interest of the Debtors or to be exercisable

only by the Debtors or any predecessor in interest of the Debtors and any and all exclusives and use restrictions contained in the Assumed Lease benefitting the Debtors shall continue in full force and effect, notwithstanding any closures or cessation in business operations by the Debtors or the Buyer.  For the avoidance of doubt, notwithstanding any provision in the Assumed Lease, any REA, Master Lease or local law, including without limitation, a covenant of continuous operation or a "go dark" provision or any requirement to operate under a specific tradename or for a certain use/purpose, the Buyer shall not be required to operate its business in the Leased Premises for any particular use or tradename, or for a period of time after the Closing Date unless agreed to with the counterparty to the Assumed Lease, but in no event less than the later of (i) 365 days after the Effective Date of the Assignment Agreement and the date the Buyer receives physical possession of the Leased Premises (subject to force majeure), or (ii) such longer period as provided in the Assumed Lease or any other written agreement between the Debtors and the counterparty to the Assumed Lease.  Moreover, the Buyer's intended use for the Leased Premises to operate its prototypical "ALDI Food Market" retail grocery store and other uses that are incidental to the operation of a retail grocery store is an authorized use under the terms of the Assumed Lease and the Assumed Lease is being sold and assigned to the Buyer free and clear of any use restrictions or limitations contained in the Assumed Lease, any REA, any Master Lease, or any other lease agreement or document to the contrary, and any such restriction or limitation is expressly unenforceable as against the Buyer.

16.     All defaults or other obligations of the Debtors under the Assumed Lease set forth on **EXHIBIT B** arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as practicable by

payment of the Cure Amount.  To the extent that the counterparty to the Assumed Lease did not object to the Debtors' assumption and assignment of the Assumed Lease or to its Cure Amount by the Contract Objection Deadline, such counterparty is deemed to have consented to the applicable Cure Amount and to the assumption and assignment of the Assumed Lease to the Buyer in accordance with the Assignment Agreement and this Sole Order.

17.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a lease amendment entered into by the counterparty to the Assumed Lease (any such amendment being deemed approved by this Sale Order), the Cure Amount provided on **EXHIBIT B** reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Lease, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Buyer of the Assumed Lease in accordance with the Assignment Agreement.

18.     Upon the Debtors' assignment of the Assumed Lease to the Buyer under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amount as set forth herein, no default shall exist under the Assumed Lease, and the counterparty to the Assumed Lease shall not be permitted (a) to declare a default by the Buyer under the Assumed Lease or (b) otherwise take action against the Buyer as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assumed Lease.  The non-Debtor party to the Assumed Lease is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, including those constituting Excluded Liabilities or, against the Buyer any counterclaim, defense, setoff, recoupment, or any

other Claim arising prior to or existing as of the Closing Date asserted or assertable against the Debtors or (ii) imposing or charging against the Buyer any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Buyer of the Assumed Lease in accordance with the Assignment Agreement.  The validity of such assumption and assignment of the Assumed Lease shall not be affected by any dispute between the Debtors and the non-Debtor party to the Assumed Lease relating to such contract's Cure Amount.

19.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of the Assumed Lease shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Lease.

20.     Except as provided in the Assignment Agreement or this Sale Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of claims for Assumed Liabilities are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

21.     **Good Faith**.  The transactions contemplated by the Assignment Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Lease) with the Buyer, unless such authorization is duly stayed pending such appeal.

22.     There has been no showing that the Debtors or the Buyer engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed

under section 363(n) of the Bankruptcy Code.  The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

23.    **Rejection of License and Concession Agreements**.  All license and concession agreements pursuant to which the Debtors have granted any party a license, access, or right to use all or any portion of the premises covered by the Assumed Lease are hereby rejected.

24.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Assignment Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Assignment Agreement be authorized and approved in their entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Assignment Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.  All of the provisions of this Sale Order are non-severable and mutually dependent. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

25.    **Non-Material Modifications**. The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, on notice to the Committee, without further order of the Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

26.    **Subsequent Plan Provisions**.    Nothing contained in any chapter 11 plan confirmed in these Chapter 11 Cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including any order dismissing any of these Chapter 11 Cases or any

26054005.2

22

order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from the provisions of the Assignment Agreement or this Sale Order.

27.    **Resolution of Objections**.    A continued hearing with respect to unresolved assumption objections shall be held on April 8, 2020 at 1:00 p.m. (ET) (the "**Continued Hearing**").

28.    **No Stay of Order**.    Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the Sale as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

29.    **Calculation of Time**.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.    **Retention of Jurisdiction**.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Assignment Agreement, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or that has been assigned by the Debtors to the Buyer in accordance with the Assignment Agreement and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not

limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the Assignment Agreement; (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; (c) protect the Buyer against any Encumbrances or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Lease.

**Dated: March 25th, 2020**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

26054005.2