# **EXHIBIT A**

**Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT OF LEASE AGREEMENT

THIS ASSUMPTION AND ASSIGNMENT OF LEASE AGREEMENT (this "Agreement") is made as of this 20 day of March, 2020, by and among Earth Fare, Inc., a Delaware corporation ("Assignor"), and ALDI Inc., a Illinois corporation ("Assignee").

### RECITALS

**I.     The Leases**

Assignor, a debtor in possession, is a tenant under that certain real property lease and a party to certain documents related to such lease, all as described on **Exhibit A** attached hereto (the "Lease"). The landlord for the Lease is described in **Exhibit A** (the "Landlord").

**II.    Assignor's Bankruptcy Case**

On February 4, 2020, Assignor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code, 11 U.S.C. §§ 101 - 1330 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Assignor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in Assignor's Chapter 11 case.

**III.   Assignor's Assignment/Transfer of the Leases and Related Assets**

Assignee is desirous of having Assignor assign to Assignee, on the terms and conditions set forth herein and subject to approval by the Bankruptcy Court, all of Assignor's right, title and interest of any kind or nature in and to the Lease including, without limitation, the right to possession. Assignee intends to accept assignment of the Lease and to occupy and use the premises subject to the Lease (the "Leased Premises") in the operation of the Assignee's prototypical "ALDI Food Market" retail grocery store and other uses as are incidental to the operation of a retail grocery store or for any other lawful retail purposes allowed by the Lease (the "Intended Use").

The Lease consists solely and exclusively of the documents listed on the attached **Exhibit A**, and the documents provided to Assignee by Assignor in connection with this Agreement are full and complete copies of the same. With respect to the Lease, there are no other or further documents (of record or otherwise) creating obligations or establishing rights as between the Assignor and the respective Landlord with respect to Assignor's use and occupancy of the Leased Premises other than listed on **Exhibit A**.

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

### AGREEMENT

Pursuant to the terms and for the consideration set forth in this Agreement, on the Effective Date (as defined herein), Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to



the Lease (the "Assignment"), and Assignee hereby accepts the Assignment; provided, however, that any security deposit or prepaid rent presently on account with the Landlord will be utilized by Assignor to reduce arrearages, if any, under the Lease, with any balance refunded to the Assignor, and the Assignee will replace to the Landlord any required security deposit under the Lease. Assignee hereby recognizes and acknowledges that, unless otherwise modified by the Sale Order (as defined herein) the Landlord's rights to full performance of all terms, conditions and covenants of the Lease remain in effect on and after the Effective Date. Except to the extent otherwise agreed in writing by a Landlord or provided in the Sale Order, Assignee assumes all of the terms, conditions and covenants of the Lease as tenant under the Lease. Further, pursuant to section 365(f) of the Bankruptcy Code, on and after the Effective Date, Assignor and Assignor's estate shall be relieved from any and all liability for any breach of the Lease occurring after the Adjustment Date (as defined herein). The Assignee shall not be responsible for and is not assuming any liabilities that arose prior to the Adjustment Date that remain unsatisfied as of the Effective Date, including but not limited to, personal injury or property damage claims that accrued or arose before the Adjustment Date.

        A.     Consideration - The total consideration for the Assignment to be paid by Assignee to Assignor is $350,000.00 (the "Purchase Price"), subject to reduction by the Adjustment Amount (as defined herein), which Purchase Price is payable at the Closing (as defined herein). Upon execution of this Agreement, Assignee shall pay to Assignor a deposit equal to ten percent (10%) of the Purchase Price (the "Deposit"). At the Closing, Assignee shall pay the balance of the Purchase Price to Assignor. The Deposit and the balance of the Purchase Price shall be paid by certified or bank check made payable to Assignor, or by wire transfer to the account of Assignor, pursuant to written wire instructions to be provided by Assignor. Said funds are to be released and paid as directed by an order of the Bankruptcy Court approving the Assignment to Assignee on the terms and conditions set forth in this Agreement.

Assignor and Assignee acknowledge that, under the terms of this Agreement that the Purchase Price shall be reduced by an amount equal to the sum of the following items (the "Adjustment Amount"): (i) the amount of Cure Costs (as defined herein) for the Lease in connection with Assignor's assumption and assignment of the Lease to Assignee; and (ii) the amount of Estimated Year-End Adjustments (as defined herein) for the Lease.

        B.     Closing and Effective Date of Assignment – Unless otherwise agreed to in writing by Assignee, the closing of the Assignment (the "Closing") shall take place one (1) business day following approval by the Bankruptcy Court and the entry of the order approving the assumption, assignment, and sale of the Lease to Assignee (the "Sale Order"), provided there is no stay pending appeal. The Closing shall take place at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 or at such other place as agreed to by the parties. The effective date of the Assignment shall be the date of the Closing (the "Effective Date").

        C.     Bankruptcy Court Approval - This Agreement is contingent upon Assignor obtaining the Sale Order from the Bankruptcy Court (a) authorizing: (1) Assignor to enter into this Agreement and (2) the assumption, assignment, and sale of the Lease pursuant to this Agreement and (b) establishing the amount necessary to cure all defaults under the Lease. If the Bankruptcy Court does not approve this Agreement for any reason, other than a material



breach of this Agreement by Assignee, then all escrowed funds shall be immediately released to Assignee, and Assignee shall have no further action or actions, cause or causes of action, complaints, suits, debts, judgments, claims and demands whatsoever against Assignor.

If the Assignee fails to close for any reason other than a material breach of this Agreement by Assignor, then Assignee's Deposit shall become non-refundable and shall be forfeited to Assignor as liquidated damages. Assignor shall have **forty-five (45) days**, subject only to an extension agreed to in writing by Assignee, from the date that this Agreement is fully executed to obtain the Sale Order from the Bankruptcy Court authorizing Assignor to enter into this Agreement and the assumption, assignment, and sale of the Lease. If the Sale Order is not obtained within the aforesaid time period, all escrowed funds, including the Deposit, shall be released to Assignee and Assignee and Assignor shall have no further no further action or actions, cause or causes of action, complaints, suits, debts, judgments, claims and demands whatsoever against one another.

D.  Section 363 Sale. Assignor has marketed the Lease for sale pursuant to the Bankruptcy Court approved bidding procedures (the "Bidding Procedures") seeking to assume, assign and sell the Lease free and clear of all liens, encumbrances, security interests, pledges, claims and/or other interests, pursuant to sections 363 and 365 of the Bankruptcy Code, with all such interests to attach to the proceeds paid to Assignor (the "Sale"). The Assignee is the only party to submit a bid for the Lease. Accordingly, pursuant to the Bidding Procedures, the Assignee is the successful bidder for the Lease.

E.  Cure Costs and Estimated Year-End Adjustments. The Assignor agrees that it will promptly take such commercially reasonable actions as are necessary to obtain a final Sale Order. Subject to entry of the Sale Order, unless otherwise agreed in writing by the Assignor and Assignee, all cure costs required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Lease as finally determined by the Bankruptcy Court (the "Cure Costs") shall be paid by Assignee at Closing in the form of a reduction of the Purchase Price so that the Lease may be assumed by the Assignor and assigned to Assignee (subject to provision by Assignee of adequate assurance of future performance as may be required under section 365 of the Bankruptcy Code) in accordance with the provisions of section 365 of the Bankruptcy Code and this Agreement.

Assignee shall also be liable for all obligations with respect to the Lease from midnight of the date immediately prior to the date of Closing (the "Adjustment Date") forward including, but not limited to, accrued but unbilled adjustments for CAM, real estate taxes and insurances (the "Estimated Year-End Adjustments"); provided however, the Assignor and Assignee shall use reasonable best efforts and act in good faith to agree upon the calculation of the amount of the Estimated Year-End Adjustments for the Lease. Payment of Estimated Year-End Adjustments shall be in the form of a reduction of the Purchase Price.

Payment of Cure Costs to the Landlord together with the assumption and assignment of the Lease to Assignee pursuant to this Agreement shall relieve Assignee of all liability arising under the Lease on account of any and all claims or defaults accruing prior to the Effective Date.

F.  Sale Order Conditions. The Assignee's obligation under this Agreement

is expressly subject to and conditioned upon the entry of the Sale Order by the Bankruptcy Court in form and substance reasonably satisfactory to Assignee, that shall, among other things, (a) approve, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Assignor of this Agreement, (ii) the sale and assignment of the Lease to Assignee on the terms set forth herein and free and clear of all liens, encumbrances, security interests, pledges, claims and/or other interests, and (iii) the performance by Assignor of its obligations under this Agreement; (b) authorize and empower Assignor to assign to Assignee the Lease; (c) order that, notwithstanding Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, the Sale Order shall take effect immediately upon entry; (d) order that there shall be no rent accelerations, assignment fees, increases or other fees charged or chargeable to Assignee as a result of the sale and assignment of the Lease; (e) include an exhibit stating that the entirety of the documents comprising the Lease is the same as that attached hereto as **Exhibit A** for the Lease; (f) order that the Landlord shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Assignee and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approval of other necessary documents required for the alteration, opening and operating of the Leased Premises by Assignee; (g) authorize the rejection of all license and concession agreements pursuant to which Assignor has granted any party a license, access or right to use all or any portion of the Leased Premises for any purpose whatsoever; (h) find that Assignee is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, not a successor of Assignor, and grant Assignee the protections of section 363(m) of the Bankruptcy Code; (i) find that Assignee shall have no liability or responsibility for any liabilities or other obligation of the Assignor arising under or related to the Lease other than as expressly set forth in this Agreement, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity; (j) find that the sale and assignment contemplated by this Agreement shall not be avoided pursuant to section 363(n) of the Bankruptcy Code; (k) find in form and substance approved by Assignee that, notwithstanding any provision of the Lease, any reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement (each an "REA"), any ground or master lease (a "Master Lease") or local law, including without limitation, a covenant of continuous operation or a "go dark" provision or any requirement to operate under a specific tradename or for a certain use/purpose, the Assignee shall not be required to operate its business in the Leased Premises for any particular use or tradename, or for a period of time after the Closing unless agreed to with the Landlord, but in no event less than the later of (i) 365 days after the Effective Date and the date Assignee receives physical possession of the Leased Premises (subject to force majeure), or (ii) such longer period as provided in the Lease or any other written agreement between Assignor and the Landlord in order to perform alterations and remodeling which shall be done in a manner consistent with the terms of the Lease and to replace and modify existing storefronts, interiors and signage to the extent necessary to operate at the premises under Assignee's applicable trade names consistent with its business operations, and subject to the terms of the Lease, provided that such alterations and remodeling are being diligently pursued and to the extent the consent of a Landlord is required for any such alternation or signage modification, such consent thereto shall not be unreasonably withheld, conditioned, or delayed, including to modifications consistent with Assignee's prototype and not violative of express terms of the Lease or applicable law; (l) find



that the Intended Use is an authorized use under the terms of the Lease and order that the Lease is being sold and assigned to the Assignee free and clear of any use restrictions or limitations contained in the Lease, any REA, any Master Lease, or any other lease agreement or document to the contrary, and any such restriction or limitation is expressly unenforceable as against the Assignee; (m) find that all tenant contributions due and owing under the Lease have been paid in full; (n) order that terms and provisions in the Lease such as "go dark" provisions, alteration restrictions, use restrictions, recapture provisions, clauses which impose a fee or a penalty or a profit sharing upon assignment, clauses which seek to increase the rent or impose a penalty or to modify or terminate the Lease, a Master Lease, or REA as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or prohibit assignment, rights of first refusal or purchase option provisions in favor of third parties, continuous operating covenants, covenants that any user of the Leased Premises operate under the name of the Assignor and/or operate with a use similar to Assignor's use, and similar provisions contained in any REA or any Master Lease, shall not restrict, limit or prohibit the sale and assignment of the Lease to Assignee, and declare and find such clauses to be anti-assignment clauses within the meaning of section 365(f) of the Bankruptcy Code, (o) order that extension and renewal options contained in the Lease which purport to be personal only to Assignor or any predecessor in interest of Assignor or to be exercisable only by Assignor or any predecessor in interest of Assignor constitute an unenforceable restriction on assignment and may be freely exercised by Assignee to its full extent; and (p) find that all exclusives and use restrictions contained in the Lease benefitting the Assignor continue in full force and effect, notwithstanding any closures or cessations in business operations by Assignee or Assignor.

Assignee agrees that it will promptly take such actions as are reasonably requested by Assignor to assist in obtaining Bankruptcy Court approval of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of (x) demonstrating that Assignee is a "good faith" purchaser under section 363(m) of the Bankruptcy Code, (y) including a determination in the Sale Order that Assignee has not engaged in any conduct that would result in avoidance of the sale and assignment contemplated by this Agreement should be avoided pursuant to section 363(n) of the Bankruptcy Code, and (z) establishing adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code.

   G. <u>Adequate Assurance Data</u> – Assignor acknowledges and agrees that Assignee has provided Assignor with a current financial statement or such other reasonable proof of financial condition of the Assignee which is necessary to satisfy any adequate assurance requirement pursuant to section 365 of the Bankruptcy Code.

   H. <u>Use</u> - Assignee shall use the Leased Premises for the Intended Use.

   I. <u>Subject Assets</u> - Effective as of the Effective Date, Assignor shall tender possession of the Leased Premises, as well as all furniture, fixtures, equipment, inventory, and other personal property located on or about the Leased Premises as of the Effective Date (collectively, the "Subject Assets"). Assignee acknowledges and agrees that (1) Assignor makes no covenant, representation or warranty as to Subject Assets of any kind or nature, or for any purpose, whatsoever, (2) the Subject Assets are to be transferred and conveyed to, and accepted by, Assignee in their present condition on the Effective Date, "as is" and with all known or

5



unknown faults, (3) Assignee hereby assumes the risk that adverse past, present or future physical characteristics and conditions may not have been revealed by any inspection or investigation of the Subject Assets, (4) Assignee hereby waives any and all objections to or claims with respect to the Subject Assets, and (5), effective as of the Effective Date, Assignee assumes from Assignor all of Assignor's rights, title, and interest in and to the Subject Assets.

J. <u>Initial Rent</u> - Upon the Closing, Assignee shall be responsible for, and shall pay, rent and other obligations and charges due under the Lease to the Landlord in accordance with the terms of the Lease from and after the Adjustment Date.

K. <u>Further Assurances</u> – At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee the Assignor's rights under the Lease.

L. <u>Commission</u> - With the exception of consulting fees payable solely by Assignor to A&G Realty Partners, LLC ("<u>Broker</u>"), Assignor and Assignee each hereby represent and warrant to each other that it has not dealt or negotiated with, or engaged on its own behalf or for its benefit, any broker or finder in connection with this transaction, other than the Broker. Assignor and Assignee hereby agree to indemnify and hold harmless the other party from and against any and all claims, demands, causes of action, losses, costs and expenses (including attorneys' fees) and other liabilities arising from the indemnifying party's breach of the preceding representation and warranty. This paragraph shall survive Closing.

M. <u>Miscellaneous</u>

(1) This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and to the extent permissible and not inconsistent with the laws of the State of Delaware, under the laws of the state where the Leased Premises is located. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes hereunder, and they each hereby consent to such jurisdiction.

(2) This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof, except the Lease and all amendments thereto.

(3) Assignor may assign Assignor's rights and obligations hereunder to any trustee appointed by the Bankruptcy Court. Assignee may not assign Assignee's rights and obligations hereunder to any party without Assignor's consent and, following Bankruptcy Court approval, any assignment of this Agreement by Assignee must also be permitted by the terms of the Lease or agreed to by Landlord.

(4) This Agreement may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement, and shall become effective when one or more counterparts have been signed by each of the parties and



delivered to all the parties.

(5) Any notice, demand, request or other communication that any party hereto may be required or may desire to give hereunder ("Notice" or "Notices") shall be in writing and shall be given as follows: (a) by hand delivery; or (b) by overnight mail via Federal Express or other reputable express courier service:

If to Assignor:

> Earth Fare, Inc.
> 220 Continuum Drive
> Fletcher, North Carolina 28732

With a copy to:

> Young Conaway Stargatt & Taylor, LLP
> Rodney Square
> 1000 North King Street
> Wilmington, Delaware 19801
> Attn: Sean T. Greecher, Esquire

If to Assignee:

> ALDI Inc.
> 1100 E. Warrenville Road, Suite 200
> Naperville, IL 60563
> Attn: Phil Beattie

With a copy to:

> Kayne Law Group
> 612 Park Street, Suite 100
> Columbus, OH 43215
> Attn: Adam L. Smith, Esquire
>
>     -and-
>
> Rubin & Levin, P.C.
> 135 N. Pennsylvania Street, Suite 1400
> Indianapolis, IN 46204
> Attn: James E. Rossow Jr., Esquire

or at such other address or to such other addressee or to such other facsimile number as the party to be served with Notice shall have furnished in writing to the party seeking or desiring to serve Notice as a place for the service of Notice. Notices shall be deemed to have been received (a) on the date delivered if given by hand delivery or (b) on the next business day if given by overnight mail.



*[Remainder of Page Intentionally Left Blank]*



8

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, this Agreement has been duly executed this _____ day of _____, 2020

ASSIGNOR: Earth Fare, Inc., Debtor-in-Possession

By: _____
Name: Chuck Goad
Title: CRO

ASSIGNEE: ALDI Inc.

By: _____
Name: Terry Pfortmiller
Title: Vice President Finance & Administration

9

<u>Exhibit A</u>

**[Lease #550, Apalachee Parkway, Tallahassee, Florida]**

<u>Description of Lease and Related Documents:</u>

1) Lease between PARKWAY TERRACE PROPERTIES, INC. ("<u>Landlord</u>"), and EARTH FARE, INC. ("<u>Tenant</u>"), entered into as of February 26, 2010, for the premises located at 2425 Apalachee Parkway, Tallahassee, Florida ("<u>Leased Premises</u>").



## EXHIBIT B

## Assumed Lease & Cure Amount

| Landlord Name | Store Property | Store Number | Cure Reserve |
|---|---|---|---|
| Parkway Terrace Properties, Inc. | Tallahassee, FL | 550 | $31,044.50 |

26180030.5